USDC SCAN INDEX SHEET











BRADLEY

HOFFENBERG

TLW
3:96-CV-01023
*1*
*CMP.*

ORIGINAL

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

1

2

Timothy C. Karen, Esq., SBN 117071
Mary Smigielski, Esq., SBN 167829
LAW OFFICES OF TIMOTHY C. KAREN
12702 Via Cortina, Suite 100
Del Mar, California  92014
(619) 259-7790

Attorneys for Plaintiffs



FILED

JUN - 7 1996

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY_____DEPUTY

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

WILLIAM D. and EDITH L. BRADLEY, )
RALPH BROCKMAN, STANLEY BRUSKIN, )
JAMES W. BUCHANAN III, ROBERT )
and BARBARA BURNS, AURELIO )
CACCOMO, RICHARD H. COOPER, JOHN )
P. and BARBARA L. CUTLER, MARTIN )
and JOAN DOLIN, NORMAN EISNER, )
DOUGLAS and DALE FAUSER, JEROME )
M. and STEPHEN L. FELDMAN, )
MICHAEL FLYNN, BARBARA L. )
FOSTER, JAMES R. FRANKLIN, )
ISRAEL GARTNER, RUTH NIEMCZYK, )
NATHAN REINER, GREG L. and )
CONNIE M. GODDARD, individually )
and for C&G ENTERPRISES, LTD., )
ROBERT W. GOLEMBSKI, KENNETH C. )
and JOAN P. GRIFFITH, LLOYD and )
JENNIE GROSS, STUART J. and )
BETTY F. HEPBURN, EVERETT )
JOHNSON, individually and for )
EJF, LTD., E. LYLE JOHNSON, )
INC., EVERETT JOHNSON, INC. )
EMPLOYEES PENSION PLAN and )
EVERETT JOHNSON, INC. DEFINED )
BENEFIT PENSION, MICHAEL A. )
JOHNSON, WALTER and LOIS M. )
KANE, DONALD B. KIEY, D.D.S., )
WILLIAM G. and JACQUELINE )
LEONARD, L. DEAN and DIANE LUKE, )
STELIO MANGIOLA, M.D., JONAS )
STULMAN, individually and for )
MONTCLAIR INVESTMENT CO., PAUL )
B. ODOM, as Trustee of the P.B. )
ODOM III TRUST, MICHAEL )
PALMISANO, ROGER M. and CRYSTAL )
L. PALMISANO, FRED D. PANEPUCCI, )
WILLIAM R. PATZER, HARVEY )
PERETZ, D.D.S., RUSSELL A. and )
JUDITH A. REUTER, STEVE )

Case No.  '96 1023 J POR

COMPLAINT FOR DAMAGES AND FOR:

1.  ACTUAL AND CONSTRUCTIVE
    FRAUD/BREACH OF FIDUCIARY
    DUTY/STOCKBROKER MALPRACTICE

2.  FRAUD IN THE SALE OF
    SECURITIES AND THE SALE OF
    UNREGISTERED SECURITIES

3.  DECLARATORY RELIEF

4.  CONVERSION

5.  UNFAIR BUSINESS PRACTICES

6.  NEGLIGENCE

7.  FEDERAL SECURITIES LAW
    VIOLATIONS

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

1  RUBENSTEIN, individually and for )
2  PERSHING-DLJSC, FAO STEVE )
   RUBENSTEIN IRA, PAULINE SCHAFER, )
3  ROBERT G. and GAIL G. SCHLENZIG, )
   THOMAS A. and CAROLE F. )
4  SCRAMUZZO, CARROLL V. SORELLE, )
   individually and for C.V. )
5  SORELLE & COMPANY, DONALD M. )
   SWEAZY, HAROLD FOREMAN and )
6  JEROME FOREMAN for WILSHIRE )
   ASSOCIATES, and JANE D. WITHERS, )
7                                    )
           Plaintiffs,              )
8                                    )
9  v.                               )
                                     )
10 STEVEN HOFFENBERG A/K/A BARRY )
   COHEN, PROFESSIONAL BUSINESS )
11 BROKERS, INC., HOFFENBERG FAMILY )
   TRUST, ANDOVER SECURITIES, a )
12 Missouri corporation, GARY )
   BOHLING, BIEDENHARN INVESTMENT )
13 GROUP INC., a corporation, JAY )
   BIEDENHARN, JAMES MCCURRY, )
14 WILLIAM E. POWDRILL III, )
   CAMBRIDGE CAPITAL MANAGEMENT, a )
15 Michigan corporation, CAMBRIDGE )
   FINANCIAL SERVICES, INC., a )
16 Michigan corporation, JEFFREY A. )
   EGAN, DANIEL P. THOMAS, COAST )
17 SECURITIES, a corporation, GARY )
   HANADEL, CONSOLIDATED INVESTMENT )
18 SERVICES, a Colorado )
   corporation, DENNIS M. )
19 EICHINGER, JAMES L. FAINTER, )
   CHARLOTTE S. RIVIERA, COOPER )
20 INVESTMENT PARTNERS, formerly )
   COOPER-DAVIS, LTD., an Illinois )
21 corporation, PETER COOPER, CRAIG )
   OVERMEYER, DOUGHERTY, DAWKINS, )
22 INC., formerly DOUGHERTY, )
   DAWKINS, STRAND AND BIGELOW )
23 INCORPORATED, a Minnesota )
   corporation, J. JOE MILLER, )
24 ENRIGHT FINANCIAL ADVISORS, a )
   New Jersey corporation, STEVEN )
25 ENRIGHT, GARY BOHLING FINANCIAL )
   GROUP, a corporation, HARBOUR )
26 INVESTMENTS, INC., a Wisconsin )
   corporation, TERRANCE P. JANKE, )
27 KURZ-LIEBOW & COMPANY, INC., a )
   New York corporation, HERBERT )
28 SARAGA, JACQUES SARTISKY, GENEVA )
   SECURITIES, an Illinois )
   corporation, HERBERT FISHMAN, I )

                  (ii)

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

1  DO ENTERPRISES, INC., dba GENEVA )
2  INVESTMENT GROUP, an Illinois )
   corporation, MICHAEL D. OLESEN, )
3  GILL AND ASSOCIATES, INC., a )
   Colorado corporation, TED GILL, )
4  HALPERT & CO., formerly HALPERT )
   OBERST & COMPANY, a New Jersey )
5  corporation, NANCY LYNN BARRETT, )
   JEFFREY A. ULLMAN, MICHAEL )
6  GOLDSTEIN, ALAN GUDZ, DANIEL )
   LENNON, SCOTT MARGOLIS, ALAN )
7  HALPERT, ALLAN ROSENBERG, JAY R. )
   OBERST, BERNARD SCHNITZER, )
8  RICHARD M. WASSERMAN, WILLIAM F. )
   BROWN, JEFFREY A. FLADELL, )
9  PATRICK J. TIEDEMANN, LINDA D. )
   PYNAPPEL, KITTLAUS COMPANY, a )
10 corporation, KARL KITTLAUS, )
   MARTIN KAIDEN CO., INC., a New )
11 York corporation, MARTIN KAIDEN, )
   P.A.S., INC., formerly PARK )
12 AVENUE SECURITIES, an Oklahoma )
   corporation, JAMES S. STANLEY, )
13 P R O F E S S I O N A L   B U S I N E S S )
   C O N S U L T A N T S, an Illinois )
14 corporation, DAVID J. WELLEHAN, )
   SCHNEIDER SECURITIES, INC., a )
15 Colorado corporation, SCOTT S. )
   MCGOUGH, JOHN SULLIVAN, BARBARA )
16 KELLEY, CENTER CITY PLANNING, a )
   New York corporation, JOSEPH A. )
17 C L A I R   I I I,   T . L .   S M I T H )
   SECURITIES, a Texas corporation, )
18 FRED R. LEFEVRE, US CLEARING )
   WEST, SEATTLE, a corporation, )
19 DON JONES, VAUTRAIN NELSON )
   LEFEVRE, ENDSLEY AND DURHAM, )
20 INC., a Texas corporation, KIRBY )
   ENDSLEY, )
21                                      )
           Defendants.                 )
22                                      )
   _____ )

23

24     Plaintiffs demand a jury trial and allege:

25

26 / / /

27 / / /

28 / / /

                        (iii)

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6617

# I.
## NATURE OF CASE

1.    This lawsuit is brought on behalf of the named Plaintiffs, who are investors in certain unregistered securities issued by Towers Financial Corporation: promissory notes and Series 1991-A Asset Backed and Guaranteed Bonds ("Notes") sold to United States residents between February 15, 1989 and February 9, 1993 and to non-United States residents between February 1, 1991 and February 9, 1993.

2.    The total Note offerings, which raised approximately $245 million, formed the core of the largest Ponzi scheme in United States history.  Although Towers Financial Corporation held itself out as a healthy and growing concern, it actually was a company failing on a massive scale and kept afloat only through the infusions of cash provided by the Note offerings.

3.    As a result of Defendants' conduct alleged herein, Plaintiffs were induced to purchase Notes and/or roll over or reinvest the principal of such investments in additional Note purchases when the Notes they had purchased matured.  Unbeknownst to the Plaintiffs, the source of the "interest" they received on their Notes was the principal paid by later Note investors.  When the Towers Financial Corporation fraud collapsed in 1993, the worthlessness of the Note investments was revealed.

# II.
## JURISDICTION AND VENUE

4.    This action asserts claims under section 12(1) and (2) and section 15 of the Securities Act of 1933, 15 U.S.C. §§ 77e, 77l(1) and (2), and 77o; section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Securities and Exchange Commission Rule Lob-5 promulgated thereunder, 17 C.F.R. § 240.10b-5; section 20 of the Exchange

- 2 -

Act, 15 U.S.C. § 78t; the applicable state "blue sky" statutes; and the common law for fraud, negligent misrepresentation, negligence, breach of fiduciary duty and declaratory relief.

5.    This Court has jurisdiction over the federal claims herein under section 22(a) of the Securities Act, 15 U.S.C. § 77v(a); section 27 of the Exchange Act, 15 U.S.C. § 76aa.  The Court has supplemental jurisdiction over the state law claims herein under 28 U.S.C. § 1367.

### III.
### THE PARTIES

**A.    Plaintiffs**

6.    Plaintiffs, whether individual or legal entity, are investors in certain unregistered securities issued by Towers Financial Corporation: promissory notes and Series 1991-A Asset Backed and Guaranteed Bonds ("Notes") sold to United States residents between February 15, 1989 and February 9, 1993 and to non-United States residents between February 1, 1991 and February 9, 1993.

**B.    Defendants**

**The Tower Financial Organization
And Related Individuals and Entities**

7.    Towers Financial Corporation ("Towers") is a Delaware corporation headquartered in New York, New York which operated through subsidiaries such as Towers Credit Corporation, Towers Collection Services, Inc., Towers Healthcare Receivables Funding Corporation, Towers Healthcare Receivables Funding Corporation II, Towers Healthcare Receivables Funding Corporation III, Towers Healthcare Receivables Funding Corporation IV, and Towers Healthcare Receivables Funding Corporation V.  Towers also conducted its own operations, including the purchase and collection of certain accounts receivable.

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

8.    Towers Credit Corporation ("Towers Credit") is a Towers subsidiary whose business was the purchase of commercial accounts receivable and collection of same for its own account.

9.    Towers Collection Services, Inc. ("Towers Collection") is a Towers subsidiary whose business was the collection of past-due accounts receivable for third parties on a contingency basis.

10.    Towers Healthcare Receivables Funding Corporation ("THRFC I"), Towers Healthcare Receivables Funding Corporation II ("THRFC II"), Towers Healthcare Receivables Funding Corporation III ("THRFC III"), Towers Healthcare Receivables Funding Corporation IV ("THRFC IV"), and Towers Healthcare Receivables Funding Corporation V ("THRFC V") (collectively, the "Healthcare Subsidiaries") are five Towers subsidiaries, incorporated in Delaware, whose business was the factoring of healthcare accounts receivable and which offered and sold five issues of bonds to institutional investors in the total amount of approximately $196 million.

11.    In March 1993, Towers and its subsidiaries, including Towers Credit, Towers Collection, and the Healthcare Subsidiaries, filed for bankruptcy and are currently operating under the protection of chapter 11 of the Bankruptcy Code. But for the imposition of the automatic stay under section 362 of the Bankruptcy Code, Towers, Towers Credit, Towers Collection, and the Healthcare Subsidiaries would all be named as Defendants herein.

12.    Defendant STEVEN HOFFENBERG ["HOFFENBERG"] a/k/a BARRY COHEN, a resident of New York, New York, was Chief Executive Officer, President, and Chairman of the Board of Directors of Towers and President of Towers Credit and the Towers subsidiary TFC Funding Corporation.

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
1202 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

- 4 -

13.   Defendants PROFESSIONAL BUSINESS BROKERS, INC. and the HOFFENBERG FAMILY TRUST are entities through which HOFFENBERG controlled the majority of Towers' common stock.  HOFFENBERG is the president of PROFESSIONAL BUSINESS BROKERS, INC., which owns over 70 percent of Towers' outstanding stock.  PROFESSIONAL BUSINESS BROKERS, INC. is owned by the HOFFENBERG FAMILY TRUST, of which HOFFENBERG is the trustee.

14.   Defendants HOFFENBERG, PROFESSIONAL BUSINESS BROKERS, INC., the HOFFENBERG FAMILY TRUST, are hereafter referred to as the "Towers Defendants."

## The Financial Advisor Defendants

15.   Plaintiffs have named as Defendants in this action the stockbrokers, financial advisors and brokerage houses that recommended and sold the Towers Notes to Plaintiffs, as well as certain shareholders, officers, directors, managers, registered principals, controlling persons, who either directly caused the injuries and damages alleged herein or encouraged, controlled, ratified, conspired with, failed to control or authorized the acts and omissions of the direct perpetrators of the acts and omissions causing injury herein [collectively hereinafter referred to as the "Financial Advisor Defendants"].  The Financial Advisor Defendants are identified below.  As of the date of the filing of this action, Plaintiffs have not ascertained all of the entities and individuals who shareholders, officers, directors, managers, registered principals, controlling persons, who either directly caused the injuries and damages alleged herein or encouraged, controlled, ratified, conspired with, failed to control or authorized the acts and omissions of the direct perpetrators of the acts and omissions causing injury herein and will amend this complaint to state the true identities of same when such information is ascertained.

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

16. Defendant ANDOVER SECURITIES, INC. ["ANDOVER"], is a duly organized Missouri corporation and is a securities broker-dealer and member of the National Association of Securities Dealers which is based in Kansas City, Missouri who offered and sold Towers Notes. GARY BOHLING ["BOHLING"] was a stockbroker employed by ANDOVER who recommended and sold $55,000 worth of note(s) to LLOYD and JENNIE GROSS and $50,000 worth of note(s) to RICHARD H. COOPER. The acts and omissions of BOHLING were within the course and scope of his agency for defendant ANDOVER and at all times relevant herein, BOHLING was acting under the supervision, direction and control of and with the express and implied authorization of the shareholders, directors, registered principals and other management level officials of ANDOVER.

17. Defendant BIEDENHARN INVESTMENT GROUP INC., is a duly organized corporation and is a securities broker-dealer and member of the National Association of Securities Dealers which is based in Shreveport, Louisiana who offered and sold Towers Notes. JAY BIEDENHARN was a stockbroker employed by BIEDENHARN INVESTMENT GROUP INC. who recommended and sold $100,000 worth of note(s) to RALPH BROCKMAN. The acts and omissions of JAY BIEDENHARN were within the course and scope of his agency for defendant BIEDENHARN INVESTMENT GROUP INC. and at all times relevant herein, JAY BIEDENHARN was acting under the supervision, direction and control of and with the express and implied authorization of the shareholders, directors, registered principals and other management level officials of BIEDENHARN INVESTMENT GROUP INC. Plaintiffs are informed and believe that Defendants JAMES MCCURRY and WILLIAM E. POWDRILL III are owners and/or registered principals and/or control persons and/or and alter-egos of BIEDENHARN INVESTMENT GROUP INC. and said Defendants encouraged and/or authorized and/or assisted and/or

- 6 -

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
1702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

participated in and ratified the wrongful conduct alleged herein and are directly and secondarily liable for the acts and omissions of BIEDENHARN INVESTMENT GROUP INC. and its agents, representatives, and employees as alleged herein.

18.    Defendant CAMBRIDGE FINANCIAL SERVICES, INC. ["CAMBRIDGE"], is a duly organized Michigan corporation and is a securities broker-dealer and member of the National Association of Securities Dealers which is based in Birmingham, Michigan.  Plaintiffs are informed and believe that CAMBRIDGE CAPITAL MANAGEMENT, a duly organized Michigan corporation, is successor in interest to the liability of CAMBRIDGE. JEFFREY A. EGAN ["EGAN"] and DANIEL P. THOMAS ["THOMAS"] were stockbrokers employed by CAMBRIDGE who recommended and sold $75,000 worth of note(s) to WILLIAM D. AND EDITH L. BRADLEY.  The acts and omissions of EGAN and THOMAS were within the course and scope of their agency for defendant CAMBRIDGE and at all times relevant herein, EGAN and THOMAS were acting under the supervision, direction and control of and with the express and implied authorization of the shareholders, directors, registered principals and other management level officials of CAMBRIDGE.

19.    Defendant COAST SECURITIES ["COAST"], is a duly organized corporation and is a securities broker-dealer and member of the National Association of Securities Dealers which is based in Falmouth, Massachusetts who offered and sold Towers Notes.  GARY HANADEL ["HANADEL"] was a stockbroker employed by COAST who recommended and sold $60,000 worth of note(s) to JANE D. WITHERS. The acts and omissions of HANADEL were within the course and scope of his agency for defendant COAST and at all times relevant herein, HANADEL was acting under the supervision, direction and control of and with the express and implied

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

1
authorization of the shareholders, directors, registered principals
2
and other management level officials of COAST.
3
    20.  Defendant CONSOLIDATED INVESTMENT SERVICES ["CONSOLIDATED"],
4
is a duly organized Colorado corporation and is a securities broker-
5
dealer and member of the National Association of Securities Dealers
6
which is based in Littleton, Colorado who offered and sold Towers Notes.
7
DENNIS M. EICHINGER ["EICHINGER"] was a stockbroker employed by
8
CONSOLIDATED who recommended and sold $86,000 worth of note(s) to JAMES
9
R. FRANKLIN and $217,000 worth of note(s) to ROBERT G. and GAIL G.
10
SCHLENZIG.  JAMES L. FAINTER ["FAINTER"] and CHARLOTTE S. RIVIERA
11
["RIVIERA"] were stockbrokers employed by CONSOLIDATED who recommended
12
and sold $50,000 worth of note(s) to BARBARA L. FOSTER.  The acts and
13
omissions of EICHINGER, FAINTER and RIVIERA were within the course and
14
scope of his agency for defendant CONSOLIDATED and at all times relevant
15
herein, EICHINGER, FAINTER and RIVIERA were acting under the supervision,
16
direction and control of and with the express and implied authorization
17
of the shareholders, directors, registered principals and other
18
management level officials of CONSOLIDATED.
19
    21.  Defendant COOPER INVESTMENT PARTNERS, INC., formerly COOPER-
20
DAVIS, LTD., is a duly organized Illinois corporation and is a securities
21
broker-dealer and member of the National Association of Securities
22
Dealers which is based in Chicago, Illinois who offered and sold Towers
23
Notes.  PETER COOPER ["COOPER"] was a stockbroker employed by COOPER-
24
DAVIS who recommended and sold $100,000 worth of note(s) to ROBERT W.
25
GOLEMBSKI.  CRAIG OVERMEYER ["OVERMEYER"] was a stockbroker employed
26
by COOPER-DAVIS who recommended and sold $200,000 worth of note(s) to
27
WILLIAM R. PATZER.  The acts and omissions of COOPER and OVERMEYER were
28
within the course and scope of their agency for defendant COOPER-DAVIS

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

and at all times relevant herein, COOPER and OVERMEYER were acting under the supervision, direction and control of and with the express and implied authorization of the shareholders, directors, registered principals and other management level officials of COOPER-DAVIS.

22.  Defendant DOUGHERTY, DAWKINS, INC. ["DOUGHERTY"], formerly DOUGHERTY, DAWKINS, STRAND AND BIGELOW INCORPORATED, is a duly organized Minnesota corporation and is a securities broker-dealer and member of the National Association of Securities Dealers which is based in Minneapolis, Minnesota who offered and sold Towers Notes. J. JOE MILLER ["MILLER"] was a stockbroker employed by DOUGHERTY who recommended and sold $79,000 worth of note(s) to L. DEAN and DIANE LUKE. The acts and omissions of MILLER were within the course and scope of his agency for defendant DOUGHERTY and at all times relevant herein, MILLER was acting under the supervision, direction and control of and with the express and implied authorization of the shareholders, directors, registered principals and other management level officials of DOUGHERTY.

23.  Defendant ENRIGHT FINANCIAL ADVISORS ["ENRIGHT FINANCIAL"], is a duly organized New Jersey corporation and is a securities broker-dealer and member of the National Association of Securities Dealers which is based in Westwood, New Jersey who offered and sold Towers Notes. STEVEN ENRIGHT ["ENRIGHT"] was a stockbroker employed by ENRIGHT FINANCIAL who recommended and sold $100,000 worth of note(s) to STANLEY BRUSKIN. The acts and omissions of ENRIGHT were within the course and scope of his agency for defendant ENRIGHT FINANCIAL and at all times relevant herein, ENRIGHT was acting under the supervision, direction and control of and with the express and implied authorization of the shareholders, directors, registered principals and other management level officials of ENRIGHT FINANCIAL.

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

24.   Defendant GARY BOHLING FINANCIAL GROUP ["GBFG"], is a duly organized corporation and is a securities broker-dealer and member of the National Association of Securities Dealers which is based in Clinton, New York who offered and sold Towers Notes.  GARY BOHLING ["BOHLING"] was a stockbroker employed by GBFG who recommended and sold $100,000 worth of note(s) to MICHAEL PALMISANO and $35,000 worth of note(s) to ROGER M. and CRYSTAL L. PALMISANO.  The acts and omissions of BOHLING were within the course and scope of his agency for defendant GBFG and at all times relevant herein, BOHLING was acting under the supervision, direction and control of and with the express and implied authorization of the shareholders, directors, registered principals and other management level officials of GBFG.

25.   Defendant HARBOUR INVESTMENTS, INC. ["HARBOUR"], is a duly organized Wisconsin corporation and is a securities broker-dealer and member of the National Association of Securities Dealers which is based in Madison, Wisconsin who offered and sold Towers Notes.  TERRANCE P. JANKE ["JANKE"] was a stockbroker employed by HARBOUR who recommended and sold $50,000 worth of note(s) to DONALD B. KIEY, D.D.S.  The acts and omissions of JANKE were within the course and scope of his agency for defendant HARBOUR and at all times relevant herein, JANKE was acting under the supervision, direction and control of and with the express and implied authorization of the shareholders, directors, registered principals and other management level officials of HARBOUR.

26.   Defendant KURZ-LIEBOW & COMPANY, INC. ["KURZ-LIEBOW"], is a duly organized New York corporation and is a securities broker-dealers and member of the National Association of Securities Dealers which is based in New York, New York who offered and sold Towers Notes.  HERBERT SARAGA ["SARAGA"] was a stockbroker employed by KURZ-LIEBOW who

- 10 -

recommended and sold $150,000 worth of note(s) to JEROME M. and STEPHEN L. FELDMAN. JACQUES SARTISKY ["SARTISKY"] was a stockbroker employed by KURZ-LIEBOW who recommended and sold $50,000 worth of note(s) to NORMAN EISNER. The acts and omissions of SARAGA and SARTISKY were within the course and scope of their agency for defendant KURZ-LIEBOW and at all times relevant herein, SARAGA and SARTISKY were acting under the supervision, direction and control of and with the express and implied authorization of the shareholders, directors, registered principals and other management level officials of KURZ-LIEBOW.

27. Defendant GENEVA SECURITIES ["GENEVA"], is a duly organized Illinois corporation and is a securities broker-dealer and member of the National Association of Securities Dealers which is based in Schaumberg, Illinois who offered and sold Towers notes. HERBERT FISHMAN ["FISHMAN"] was a stockbroker employed by GENEVA who recommended and sold $230,000 worth of note(s) to ROBERT and BARBARA BURNS and $200,000 worth of note(s) to THOMAS A. and CAROLE F. SCRAMUZZO. The acts and omissions of FISHMAN were within the course and scope of his agency for defendant GENEVA and at all times relevant herein, FISHMAN was acting under the supervision, direction and control of and with the express and implied authorization of the shareholders, directors, registered principals and other management level officials of GENEVA.

28. Defendant I DO ENTERPRISES, INC. ["I DO"], dba GENEVA INVESTMENT GROUP, is a duly organized Illinois corporation and is a securities broker-dealer and member of the National Association of Securities Dealers which is based in Geneva, Illinois who offered and sold Towers notes. MICHAEL D. OLESEN ["OLESEN"] was a stockbroker employed by GENEVA who recommended and sold $75,000 worth of note(s) to FRED D. PANEPUCCI. The acts and omissions of OLESEN were within

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

the course and scope of their agency for defendant I DO and at all times relevant herein, OLESEN was acting under the supervision, direction and control of and with the express and implied authorization of the shareholders, directors, registered principals and other management level officials of I DO.

29.    Defendant GILL AND ASSOCIATES, INC., is a duly organized Colorado corporation and is a securities broker-dealer and member of the National Association of Securities Dealers which is based in Denver, Colorado who offered and sold Towers Notes. TED GILL ["GILL"] was a stockbroker employed by GILL AND ASSOCIATES, INC. who recommended and sold $250,000 to CARROLL V. SORELLE and $10,000 worth of note(s) to C.V. SORELLE & COMPANY. The acts and omissions of GILL were within the course and scope of his agency for defendant GILL AND ASSOCIATES, INC. and at all times relevant herein, GILL was acting under the supervision, direction and control of and with the express and implied authorization of the shareholders, directors, registered principals and other management level officials of GILL AND ASSOCIATES, INC.

30.    Defendant HALPERT & CO. ["HALPERT"], formerly HALPERT, OBERST & COMPANY, is a duly organized New Jersey corporation and is a securities broker-dealer and member of the National Association of Securities Dealers which is based in Millburn, New Jersey who offered and sold Towers Notes. NANCY LYNN BARRETT ["BARRETT"] was a stockbroker employed by HALPERT who recommended and sold $100,000 worth of note(s) to STELIO MANGIOLA, M.D. JEFFREY A. ULLMAN ["ULLMAN"] was a stockbroker employed by HALPERT who recommended and sold $75,000 worth of note(s) to JOHN P. and BARBARA L. CUTLER. MICHAEL GOLDSTEIN ["GOLDSTEIN"] was a stockbroker employed by HALPERT who recommended and sold $200,000 worth of note(s) to DOUGLAS and DALE FAUSER. ALAN GUDZ ["GUDZ"] was a

- 12 -

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

1 stockbroker employed by HALPERT who recommended and sold $35,000 worth

2 of note(s) to ISRAEL GARTNER and RUTH NIEMCZYK and $35,000 worth of

3 note(s) to ISRAEL GARTNER and NATHAN REINER. DANIEL LENNON ["LENNON"]

4 was a stockbroker employed by HALPERT who recommended and sold $44,000

5 worth of note(s) to MONTCLAIR INVESTMENT CO. and $90,000 worth of note(s)

6 to JONAS STULMAN. SCOTT MARGOLIS ["MARGOLIS"] was a stockbroker employed

7 by HALPERT who recommended and sold $100,000 worth of note(s) to HARVEY

8 PERETZ, D.D.S. ALAN HALPERT was a stockbroker employed by HALPERT who

9 recommended and sold $100,000 worth of note(s) to PERSHING-DLJSC, FAO

10 STEVE RUBENSTEIN IRA. ALLAN ROSENBERG ["ROSENBERG"] was a stockbroker

11 employed by HALPERT who recommended and sold $25,000 worth of note(s)

12 to PAULINE SCHAFER, $25,000 worth of note(s) to MARTIN and JOAN DOLIN,

13 and $400,000 worth of note(s) to WILSHIRE ASSOCIATES. The acts and

14 omissions of BARRETT, ULLMAN, GOLDSTEIN, GUDZ, LENNON, MARGOLIS, ALAN

15 HALPERT and ROSENBERG were within the course and scope of their agency

16 for defendant HALPERT and at all times relevant herein, BARRETT, ULLMAN,

17 GOLDSTEIN, GUDZ, LENNON, MARGOLIS, ALAN HALPERT and ROSENBERG were acting

18 under the supervision, direction and control of and with the express

19 and implied authorization of the shareholders, directors, registered

20 principals and other management level officials of HALPERT. Plaintiffs

21 are informed and believe that Defendants ALAN HALPERT, JAY R. OBERST,

22 BERNARD SCHNITZER, RICHARD M. WASSERMAN, WILLIAM F. BROWN, JEFFREY A.

23 FLADELL, PATRICK J. TIEDEMANN and LINDA D. PYNAPPEL are owners and/or

24 registered principals and/or control persons and/or and alter-egos of

25 HALPERT, and said Defendants encouraged and/or authorized and/or assisted

26 and/or participated in and ratified the wrongful conduct alleged herein

27 and are directly and secondarily liable for the acts and omissions of

28 HALPERT and its agents, representatives, and employees as alleged herein.

- 13 -

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

31.   Defendant KITTLAUS COMPANY, is a duly organized corporation and is a securities broker-dealer and member of the National Association of Securities Dealers which is based in Chicago, Illinois who offered and sold Towers Notes.  KARL KITTLAUS ["KITTLAUS"] was a stockbroker employed by KITTLAUS COMPANY who recommended and sold $50,000 worth of note(s) to RUSSELL A. and JUDITH A. REUTER.  The acts and omissions of KITTLAUS were with the course and scope of his agency for defendant KITTLAUS COMPANY and at all times relevant herein, KITTLAUS was acting under the supervision, direction and control of and with the express and implied authorization of the shareholders, directors, registered principals and other management level officials of KITTLAUS COMPANY.

32.   Defendant MARTIN KAIDEN CO., INC. ["MKC"], is a duly organized New York corporation and is a securities broker-dealer and member of the National Association of Securities Dealers which is based in New York, New York who offered and sold Towers Notes.  MARTIN KAIDEN ["KAIDEN"] was a stockbroker employed by MKC who recommended and sold $50,000 worth of note(s) to JAMES W. BUCHANAN III, $50,000 worth of note(s) to JEROME M. and STEPHEN L. FELDMAN,  $75,000 worth of note(s) to C&G ENTERPRISES, LTD., $25,000 worth of note(s) to GREG L. and CONNIE M. GODDARD, $65,000 worth of note(s) to WALTER and LOIS M. KANE, $100,000 worth of note(s) to EJF, LTD., $300,000 worth of note(s) to E. LYLE JOHNSON, INC., $200,000 worth of note(s) to EVERETT JOHNSON, $100,000 worth of note(s) to EVERETT JOHNSON, INC. EMPLOYEES PENSION PLAN, and $100,000 worth of note(s) to EVERETT JOHNSON, INC. DEFINED BENEFIT PENSION.  The acts and omissions of KAIDEN were within the course and scope of his agency for defendant MKC and at all times relevant herein, KAIDEN was acting under the supervision, direction and control of and with the express and implied authorization of the shareholders,

- 14 -

directors, registered principals and other management level officials of MKC.

33.    Defendant P.A.S., INC. ["PAS"], formerly PARK AVENUE SECURITIES, is a duly organized Oklahoma corporation and is a securities broker-dealer and member of the National Association of Securities Dealers which is based in Oklahoma City, Oklahoma who offered and sold Towers Notes. JAMES S. STANLEY ["STANLEY"] was a stockbroker employed by PAS who recommended and sold $100,000 worth of note(s) to the P.B. ODOM III TRUST. The acts and omissions of STANLEY were within the course and scope of his agency for defendant PAS and at all times relevant herein, STANLEY was acting under the supervision, direction and control of and with the express and implied authorization of the shareholders, directors, registered principals and other management level officials of PAS.

34.    Defendant PROFESSIONAL BUSINESS CONSULTANTS ["PBC"], is a duly organized Illinois corporation and is a securities broker-dealer and member of the National Association of Securities Dealers which is based in Oakbrook, Illinois who offered and sold Towers Notes. DAVID J. WELLEHAN ["WELLEHAN"] was a stockbroker employed by PBC who recommended and sold $100,000 worth of note(s) to AURELIO M. CACCOMO. The acts and omissions of WELLEHAN were within the course and scope of his agency for defendant PBC and at all times relevant herein, WELLEHAN was acting under the supervision, direction and control of and with the express and implied authorization of the shareholders, directors, registered principals and other management level officials of PBC.

35.    Defendant SCHNEIDER SECURITIES, INC. ["SCHNEIDER"], is a duly organized Colorado corporation and is a securities broker-dealer and

member of the National Association of Securities Dealers which is based in Denver, Colorado who offered and sold Towers Notes. SCOTT S. MCGOUGH ["MCGOUGH"] and JOHN SULLIVAN ["SULLIVAN"] were stockbrokers employed by SCHNEIDER who recommended and sold $125,000 worth of note(s) to MICHAEL A. JOHNSON. BARBARA KELLEY ["KELLEY"] was a stockbroker employed by SCHNEIDER who recommended and sold $50,000 worth of note(s) to DONALD M. SWEAZY. The acts and omissions of MCGOUGH, SULLIVAN and KELLEY were within the course ans scope of their agency for defendant SCHNEIDER and at all times relevant herein, MCGOUGH, SULLIVAN and KELLEY were acting under the supervision, direction and control of and with the express and implied authorization of the shareholders, directors, registered principals and other management level officials of SCHNEIDER.

36.    Defendant CENTER CITY PLANNING ["CENTER"], is a duly organized New York corporation and is a securities broker-dealer and member of the National Association of Securities Dealers which is based in Suffern, New York who offered and sold Towers Notes. JOSEPH A. CLAIR III ["CLAIR"] was a stockbroker employed by CENTER who recommended and sold $75,000 worth of note(s) to MICHAEL FLYNN. The acts and omissions of CLAIR were within the course and scope of his agency for defendant CENTER and at all times relevant herein, CLAIR was acting under the supervision, direction and control of and with the express and implied authorization of the shareholders, directors, registered principals and other management level officials of CENTER.

37.    Defendant T.L. SMITH SECURITIES ["T.L. SMITH"], is a duly organized Texas corporation and is a securities broker-dealer and member of the National Association of Securities Dealers which is based in Fort Worth, Texas who offered and sold Towers Notes. FRED R. LEFEVRE ["LEFEVRE"] was a stockbroker employed by T.L. SMITH who recommended

- 16 -

and sold $100,000 worth of note(s) to WILLIAM G. and JACQUELINE LEONARD. The acts and omissions of LEFEVRE were within the course and scope of his agency for defendant T.L. SMITH and at all times relevant herein, LEFEVRE was acting under the supervision, direction and control of and with the express and implied authorization of the shareholders, directors, registered principals and other management level officials of T.L. SMITH.

38.    Defendant TRANSCO SECURITIES ["TRANSCO"], is a duly organized corporation and is a securities broker-dealer and member of the National Association of Securities Dealers who offered and sold Towers Notes. ED SHUHART ["SHUHART"] was a stockbroker employed by TRANSCO who recommended and sold $45,000 worth of note(s) to ILA MAY HOLMES. The acts and omissions of SHUHART were within the course and scope of his agency for defendant TRANSCO and at all times relevant herein, SHUHART was acting under the supervision, direction and control of and with the express and implied authorization of the shareholders, directors, registered principals and other management level officials of TRANSCO.

39.    Defendant US CLEARING WEST, SEATTLE ["US CLEARING"], is a duly organized corporation and is a securities broker-dealer and member of the National Association of Securities Dealers which is based in Seattle, Washington who offered and sold Towers Notes.    DON JONES ["JONES"] was a stockbroker employed by US CLEARING who recommended and sold $50,000 worth of note(s) to KENNETH C. and JOAN P. GRIFFITH. The acts and omissions of JONES were within the course and scope of his agency for defendant US CLEARING and at all times relevant herein, JONES was acting under the supervision, direction and control of and with the express and implied authorization of the shareholders,

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

- 17 -

directors, registered principals and other management level officials of US CLEARING.

40.    Defendant VAUTRAIN NELSON LEFEVRE ENDSLEY AND DURHAM, INC. ["VAUTRAIN"], is a duly organized Texas corporation and is a securities broker-dealer and member of the National Association of Securities Dealers which is based in Fort Worth, Texas who offered and sold Towers notes. KIRBY ENDSLEY ["ENDSLEY"] was a stockbroker employed by VAUTRAIN who, along with LEFEVRE, who was a stockbroker employed by T.L. SMITH, recommended and sold $150,000 worth of note(s) to STUART J. and BETTY F. HEPBURN.  The acts and omissions of ENDSLEY were within the course ans scope of his agency for defendant VAUTRAIN and at all times relevant herein, ENDSLEY was acting under the supervision, direction and control of and with the express and implied authorization of the shareholders, directors, registered principals and other management level officials of VAUTRAIN.

41.    A conspiracy, common scheme, enterprise, and course of conduct commenced, by express or tacit agreement, as early as in or about 1988 and, during its course, involved all Defendants identified above. Defendants continued the conspiracy, common scheme, enterprise, and course of conduct until at least February 9, 1993.  The conspiracy, common scheme, enterprise, and course of conduct was designed to and did (a) deceive the investing public, including the Plaintiffs regarding Towers and Towers' business, management, financial condition, and future prospects; (b) allow worthless securities to be sold during the period of the fraudulent scheme of Defendants; (c) bring Towers' securities onto the market which were not entitled to be marketed; and (d) cause Plaintiffs to purchase the Notes. Defendants directed themselves toward these common goals by virtue of their mutual understanding and agreement.

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

Defendants accomplished their conspiracy, common scheme, enterprise, and course of conduct by marketing, artificially inflating, and maintaining the terms of the Notes throughout the period of the fraudulent scheme of Defendants; by concealing from Plaintiffs the true financial condition of Towers and the worthlessness of the Notes; and by maintaining and advancing the Towers Ponzi scheme at the expense of Plaintiffs. Each of the Defendants knowingly and intentionally agreed to commit and committed acts in furtherance of the conspiracy, which acts are more fully set forth below.

42.   Towers began offering Notes to the public in or about 1986. These sales were not registered as required under state blue sky laws or other registration laws. Moreover, the offering materials employed to effect the sales were grossly misleading. These initial Note sales attracted the attention and prompted serious concerns on the part of the Securities and Exchange Commission ("SEC") and various state securities officials.

43.   On August 4, 1988, the SEC sued HOFFENBERG for offering and selling unregistered securities. A Final Consent Judgment of Permanent Injunction and Order (the "SEC Injunction") was entered on November 16, 1988 as to HOFFENBERG prohibiting him from further violating section 5 of the Securities Act.

**The Offer And Sale Of Unregistered Securities.**

44.   Beginning in about February 1989, HOFFENBERG and various brokerage houses, including the Defendants herein, proceeded to sell over $245 million in Notes in violation of the blue sky laws and in direct violation of the SEC Injunction.

45.   The Notes were offered and sold to United States residents pursuant to five offering memoranda dated February 15, 1989, February

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

20, 1990, October 1, 1990, October 15, 1991, and March 23, 1992, respectively (the "Domestic Memoranda") and to non-United States residents pursuant to a so-called Explanatory Memorandum (collectively, the "Offering Memoranda").

46.   The Notes offered to United States residents had maturity terms of one or two years and paid interest at annual rates ranging from 12 to 14 percent for one-year Notes and from 14 to 16 percent for two-year Notes. Although these Notes were purportedly for sale in units of $50,000 or $100,000, Towers routinely sold them in fractions of such units.

47.   The Notes offered to non-United States residents had maturity terms ranging from one to seven years and paid interest at annual rates ranging from 14 to 16 1/2 percent. Although these Notes were purportedly for sale in units of $100,000, Towers routinely sold them in fractions of such units.

48.   The Notes were offered and sold to residents of at least 40 states. Many of these investors are unsophisticated and live on fixed incomes. The offer and sale of the Notes was effected through a general solicitation.   Towers sold the Notes in violation of blue sky registration requirements.

**Fraud In The Offer And Sale of Securities.**

49.   The Notes were sold through fraudulent means. In soliciting investments in the Notes, the Towers Defendants and the Financial Advisor Defendants disseminated the offering Memoranda, Towers "annual reports," and a variety of uniform and standardized written offering materials for the purpose of inducing investors to believe the Notes were sound, legitimate investment vehicles and Towers was a prosperous, dynamic and growing concern. In fact, Towers was a fraudulent enterprise which

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

sustained itself through the infusion of cash raised through the fraudulent solicitation of investments from Noteholders and others.

50. Towers' business, the collection and financing of accounts receivable, was secondary in importance to Towers' primary objective, which was to provide a vehicle for the personal enrichment of HOFFENBERG and other participants in the fraud, at any cost. To sustain a steady flow of new cash, Towers contrived to create through various means an image of Towers and its investments which was entirely false. Throughout the period of the fraudulent scheme of Defendants, Towers lost substantial sums through mismanagement, the diversion of funds to the personal benefit of HOFFENBERG and others, and the generally unprofitable character of Towers' business activity.

51. To prevent the discovery of the illegal scheme in which Defendants engaged, Towers made payments to investors which were denominated "interest" payments, when in fact those payments merely represented the return to investors of a portion of their principal or improperly diverted proceeds of offerings of other Towers securities, specifically, "Bonds" sold by Towers.

52. To mislead the public and law enforcement and regulatory agencies with jurisdiction over financial matters, the Towers Defendants committed perjury, falsified business records, distributed sham financial statements, misled state and federal officials, and otherwise engaged in a pattern of criminal conduct. HOFFENBERG was the subject of grand jury indictments in the Northern District of Illinois and the Southern District of New York in April 1994, charging a variety of crimes, including criminal securities fraud in connection with the sale of the Notes.

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

53. The fraud Towers perpetuated on the Noteholders could not have been achieved without the active and culpable participation of brokerage houses, stockbrokers, accountants, lawyers and other persons and entities ostensibly independent from Towers. The allegations which follow detail the criminal conduct of the Towers Defendants, and, by way of illustration, some of the fraudulent practices in which Towers engaged, and the basis upon which the Noteholders claim the Towers Defendants, Professional Defendants, and Financial Advisor Defendants actively participated in the fraud perpetuated upon the Noteholders by Towers.

## The Scheme of Fraud

54. But for the Defendants' culpable conduct, the Notes would not and could not have been marketed. A market existed in the Notes as a result of the Individual Defendants, fraud and fraudulent course of conduct, and Plaintiffs relied on the existence of this market in purchasing the Notes. If the financial information and other misrepresented facts had been properly disclosed, the Offering Memoranda would have disclosed that the Notes were worthless and could never have been marketed.

55. By continuing to issue Offering Memoranda and Annual Reports containing such misrepresentations, the Individual Defendants actively concealed from Note investors the truth about their investments. Thus, investors who purchased Notes pursuant to one Offering Memorandum continued to be misled by the Offering Memoranda and Annual Reports issued after their purchases into believing that Towers' financial condition was stable or improving, when it was not.

56. Defendant HOFFENBERG was Chief Executive Officer, President, and Chairman of the Board of Directors of Towers and President of Towers

- 22 -

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

Collection and TFC Funding Corporation.  HOFFENBERG directly owns 10 percent of Towers' common stock and additionally owns or controls 61.4 percent of the stock through PROFESSIONAL BUSINESS BROKERS, INC., a corporation owned by the HOFFENBERG FAMILY TRUST, of which he is the trustee.  Through PROFESSIONAL BUSINESS BROKERS, INC., the HOFFENBERG FAMILY TRUST received a percentage of Towers' gross revenues ostensibly pursuant to an agreement stemming from the 1986 sale of TFC Funding Corporation and Towers Credit to Towers.

57.   HOFFENBERG founded Towers and was intimately involved in its daily operations.  HOFFENBERG participated in the drafting of the offering materials, including the Offering Memoranda and the Annual Reports, and signed messages to investors which were prominently featured in the Annual Reports.

58.   HOFFENBERG participated in the negotiation of contracts for Towers, and in negotiations and communications with state and federal regulatory authorities. HOFFENBERG exercised control over Towers' bank accounts, including the escrow accounts established with the proceeds of the Note offerings and the special interest-bearing, lock-box accounts established with the proceeds of the foreign Note offerings.  He further participated in the preparation of Towers' financial statements, including determination of the amount of "excess profits" appropriated by Towers from the offering proceeds.  HOFFENBERG directed and had complete knowledge of the scheme to defraud investors.

**The Offering Memoranda**

59.   The Offering Memoranda represented that Towers would use the funds it raised from Note investors to buy certain types of current accounts receivable or loan portfolios for collection by Towers for its own account.  The Offering Memoranda stated that Towers typically

would acquire accounts receivable at a price of up to 95 percent of their face value, earn a minimum 5 percent "factoring fee" for each receivable collected, and reinvest the proceeds of collection in additional receivables. The Offering Memoranda further stated that Towers expected to compound its "factoring fee" up to six times per year through this purchase and collection of receivables and reinvestment of the collection proceeds in more receivables.

60. In fact, Towers bought few, if any, current accounts receivables with the Note proceeds, buying instead past due, largely uncollectible accounts receivable or loan portfolios at prices substantially lower than 95 percent of the face value of the receivables or portfolios.

61. Instead of using Note investors' funds to purchase accounts receivable, Towers used the money to pay, among other things, interest on the Notes, Towers' expenses, and professional fees. In addition, because the accounts receivable which Towers owned or had contracted to collect on behalf of others were of such poor quality, Towers' cash flow was insufficient to meet its needs and obligations. Thus, Towers resorted to such measures as retaining collection proceeds instead of remitting them to its clients and diverting millions of dollars from the Healthcare Subsidiaries to itself.

62. In addition, the Offering Memoranda stated that the Notes would be fully collateralized by accounts receivable purchased with the Note proceeds and having a total face value substantially in excess of the value of the Notes sold. In reality, the Notes were severely undercollateralized, if collateralized at all, because of the low face amount and quality of accounts receivable purchased by Towers.

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

63.    The Domestic Memoranda, pursuant to which Notes were sold to United States residents, stated that Note proceeds would be deposited in "special escrow" accounts at Chase Manhattan Bank and would remain in such accounts to the extent the funds were not used to purchase accounts receivable or pay certain specified expenses.  The Explanatory Memorandum, pursuant to which Notes were sold to non-United States residents, stated that Towers would keep Note proceeds in special interest-bearing accounts and that proceeds from the collection of accounts receivable purchased with Note proceeds would be deposited under a "lock box" system which Towers had arranged with Chase Manhattan Bank.

64.    As of June 30, 1991, however, although Towers had purchased few accounts receivable with the $124 million it had raised from selling Notes, Towers' bank accounts at Chase Manhattan Bank contained at most $5 million.  As of June 30, 1992, when Towers was reporting Notes outstanding in the total amount of $198 million, its reported cash and cash equivalents amounted to only $32 million.

65.    The Offering Memoranda described the terms purportedly governing Towers' ability to withdraw funds from the "special" accounts at Chase Manhattan Bank to use for its own purposes.  According to the Offering Memoranda, "Excess Profit Amounts" could be withdrawn and used for any corporate purpose only if the face value of accounts receivable purchased with Note proceeds combined with the proceeds from the collection of these receivables exceeded the value of the Notes sold. Although the former never exceeded the latter, Defendant HOFFENBERG routinely caused the "special" bank accounts to be emptied of Note proceeds.  Despite being designated a "Special Escrow Account" in the Offering Memoranda, the accounts maintained by Towers with Chase

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

- 25 -

Manhattan Bank were simple checking accounts to which Towers had unfettered access.

**The Annual Reports**.

66.    The promotional materials distributed to Plaintiffs included Towers' Annual Reports for fiscal years 1988, 1989, 1990 and 1991. Among other things, these Annual Reports contained false and misleading financial statements which falsely reported that Towers was a financially successful and growing company, when, in fact, each year it was incurring very substantial and increasing losses.

67.    For fiscal year 1988, Towers reported net income of $1.4 million, when it had actually incurred a loss of approximately $29 million; total assets of $76 million, when it actually had assets of no greater than $48 million; and shareholders' equity of $6.5 million (restated in 1990 as approximately $5.7 million), when it actually had a deficit of approximately $24.9 million.

288.    For fiscal year 1989, Towers reported net income of $3.5 million, when it actually had incurred a loss of over $28 million; total assets of $122 million, when it actually had assets of no greater than $21 million; and shareholders' equity of $10.3 million (restated in 1990 as approximately $9.4 million), when it actually had a deficit of approximately $53 million.

68.    For fiscal year 1990, Towers reported net income of $3.9 million, when it had actually incurred a loss of approximately $49 million; total assets of $195 million, when it actually had assets of no greater than $29 million or less; and shareholders' equity of $13.4 million, when it actually had a deficit of over $101 million.

69.    For fiscal year 1991, Towers reported net income of $4.3 million, when it actually had incurred a loss of over $47 million; total

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

assets of $513 million, when it actually had assets of no greater than $250 million; and shareholders' equity of $20.1 million, when it actually had a deficit of over $130 million.

70.   For fiscal year 1992, Towers reported net income of $5.4 million, when it actually had incurred a loss of over $95 million; and shareholders' equity of $25.5 million, when it had a deficit of over $242 million.   Thus, by fiscal year 1992, Towers was overstating its shareholders' equity by over $267 million, but the actual inaccuracy was even greater because this figure does not include an allowance for doubtful accounts.

**Towers Accounting Practices.**

71.   Among the bases for these false and misleading financial statements were figures generated by improper accounting procedures such as the following:

1.   **Southwestern Bell Portfolio.**

72.   On or around June 30, 1988, the Towers subsidiary Towers Collection paid less than $300,000 for a portfolio of past-due accounts receivable from Southwestern Bell Yellow Pages, Inc. ("Southwestern Bell") having a face value of approximately $28 million (the "Southwestern Bell portfolio").   Before selling the portfolio to Towers Collection, Southwestern Bell had charged off all of the balances as worthless after private collection agencies, including Towers, had failed to collect on them.   To date, Towers Collection has collected less than $1 million on the Southwestern Bell portfolio.

73.   For fiscal year 1988, Towers improperly recorded income of $19 million from collecting on the Southwestern Bell portfolio, resulting in the overstatement of Towers' income for fiscal year 1988 by that amount.   Towers also improperly recorded the Southwestern Bell portfolio

as valued at $28 million instead of valuing the portfolio at its acquisition cost, causing an overstatement of Towers' fiscal year 1988 accounts receivable by $28 million (less the cost of the portfolio).

### 2. Federal Deposit Insurance Company

74. Towers also inflated the value of its accounts receivable and its income from collecting such receivables by recording loan portfolios originated from banks liquidated by the Federal Deposit Insurance Company ("FDIC loan portfolios") at values far above their acquisition costs and improperly recognizing income from collecting on the FDIC loan portfolios.

75. In fiscal year 1990, Towers paid less than $500,000 for various FDIC loan portfolios having a face value of over $50 million. These portfolios contained nonperforming, distressed loans. For fiscal year 1990, Towers improperly recorded the portfolios as accounts receivable having a value of $24 million and recorded income of $24 million from the portfolios. In fiscal year 1990, however, Towers had received virtually no cash proceeds from these FDIC loan portfolios.

76. In fiscal year 1991, Towers paid approximately $30,000 for additional distressed FDIC loan portfolios having a face value of $6 million. Towers improperly recorded the portfolios as accounts receivable having a value of $6 million and recorded income of $6 million from the portfolios.

77. As a result of Towers' improper recording of FDIC loan portfolios in fiscal years 1990 and 1991, accounts receivable for fiscal year 1991 were overstated by $13 million. In fiscal year 1991, Towers had collected less than $1 million on the FDIC loan portfolios.

78. Towers falsely stated in its 1991 Annual Report: "Income on RTC/FDIC loans is recognized as they are collected." In fact, Towers

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

recorded income in much larger amounts than Towers ever collected in fiscal year 1990 or 1991.

### 3.    Bank Of America Portfolio.

79.    In or around January 1991, Towers paid less than $200,000 for a portfolio of credit-card balances from Bank of America having a face value of approximately $16 million (the "Bank of America portfolio"). Before selling the portfolio to Towers, Bank of America had charged off all of the balances as worthless after other collection agencies had failed to collect on them. In fiscal year 1992, Towers collected little or no amounts on the Bank of America portfolio.

80.    For fiscal year 1991, Towers improperly recorded income of $4 million from the Bank of America portfolio, causing Towers' reported income for fiscal year 1991 to be overstated by that amount. Towers also improperly recorded the Bank of America portfolio as accounts receivable valued at $4 million instead of valuing the portfolio at its acquisition cost, causing an overstatement of Towers' fiscal year 1991 accounts receivable by $4 million (less the cost of the portfolio).

### 4.    Investment In United Diversified.

81.    In its financial statements for fiscal year 1989 through fiscal year 1991, Towers further inflated its assets by improperly recording Towers' investment in United Diversified Corporation ("UDC"), which conducted business through its subsidiaries, Associated Life Insurance Company ("Associated Life") and United Fire Insurance Company ("United Fire").

82.    Towers acquired a controlling interest in UDC in 1987 for $3 million, and Defendant HOFFENBERG became Chairman of the Boards of Directors of UDC, United Fire, and Associated Life.

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6617

83. Towers improperly recorded the purchase cost of $3 million as an investment on its financial statements from fiscal year 1989 through fiscal year 1991. By fiscal year 1989, however, the UDC investment had become seriously impaired and by no later than fiscal year 1991 posed a threat of liability exceeding the purchase cost.

84. In July 1968, the Illinois Director of Insurance (the "Insurance Director") obtained an order placing UDC, United Fire, and Associated Life in conservation. On February 14, 1989, HOFFENBERG agreed in a signed stipulation to the entry of an order liquidating Associated Life and United Fire. The liquidation order was based on HOFFENBERG'S agreement that both companies were insolvent. On March 3, 1989, when the liquidation order was entered, HOFFENBERG lost all control of the companies, and Towers lost any expectation of a return on the investment.

85. On or about June 27, 1991, HOFFENBERG and others were charged by the Insurance Director with having used the insurance companies as an instrumentality of Towers, and, among other things, with having transferred investments and cash of the companies into various HOFFENBERG-controlled brokerage accounts. These transfers began in November 1987 and continued through July 1988. In the civil action Schacht v. Hoffenberg, No. 91-C-4024 (N.D. Ill.), the Insurance Director alleged that Defendants had caused UDC, Associated Life, and United Fire to suffer damages in excess of $4 million, become insolvent, and be placed in conservation and/or liquidation. The complaint sought, among other things, treble damages under RICO. Towers settled this and related actions in 1992 upon Towers' agreement to pay $3.5 million as part of the settlement.

86. It was materially false and misleading for Towers to continue to record its investment in the insurance companies at cost in its

financial statements for fiscal years 1989, 1990, and 1991 without any reserve to reflect both the impairment of the investment or the contingency of Towers' potential liability.    Towers' assets were overstated by at least $3 million in each of those years as a result of Towers' failure to record an appropriate allowance for uncollectible accounts.

87.    Furthermore, Towers did not disclose to potential or actual Note investors the liquidation and conservation proceedings against UDC, Associated Life, and United Fire or the filing of the action Schacht v. Hoffenberg against HOFFENBERG.

5.    **Collection Receivables**

88.    The Towers subsidiary Towers Collection collected past-due accounts receivable for third parties ("collection receivables") for a fee contingent on collection.    Towers Collection paid no money for collection receivables and was obligated to remit all collection proceeds to its clients, except for a certain percentage of the proceeds which Towers Collection retained as its fee.

89.    Towers Collection improperly recorded fee income from collection receivables before performing any significant collection activities and collecting any proceeds.    Because of this improper recognition of fee income, Towers' reported fee income for fiscal year 1989, $36 million, was overstated by at least $10 million.    For fiscal year 1990, Towers reported total fee income of $56 million, of which $22 million was fee income improperly recognized by Towers Collection in the above manner.    For fiscal year 1991, Towers reported total fee income of $97 million, of which $56 million was fee income improperly recognized by Towers Collection.

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

90. Towers' Annual Reports for fiscal years 1988, 1989, and 1990 state that Towers recognized its fees as 30 percent of the amount expected to be collected and that it expected to collect 30 percent of all collection receivables. This was the basis for Towers' accounting rule known as the "30/30 Rule."

91. In no year, however, had Towers collected even close to 30 percent of all of its collection receivables. As of June 30, 1993, for example, Towers had collected only 22 percent of the accounts receivable assigned to Towers for collection in 1988; only 18 percent of the accounts receivable assigned in 1989; 13 percent of the receivables assigned in 1990; 14 percent of the receivables assigned in 1991; and 11 percent of the receivables assigned in 1992.

92. Towers also improperly recorded the collection receivables as Towers' own assets. The collection receivables were not owned by Towers Collection, however, but by Towers Collection's clients, who had assigned them to Towers Collection for collection on their behalf. Not only could Towers Collection not properly record the receivables as assets, but also Towers Collection recorded them at amounts substantially in excess of their value, resulting in an overstatement of Towers' assets of over $200 million by the end of fiscal year 1992.

93. For fiscal year 1989, Towers reported accounts receivable of $112 million, of which approximately $101 million consisted of collection receivables improperly recorded as owned by Towers. For fiscal year 1990, Towers reported accounts receivable of $177 million of which approximately $142 million consisted of improperly recorded collection receivables. For fiscal year 1991, Towers reported accounts receivable of $437 million, of which $246 million consisted of improperly recorded collection receivables.

**THE ROLE PLAYED BY THE FINANCIAL ADVISOR DEFENDANTS IN EFFECTING THE UNLAWFUL AND FRAUDULENT CONDUCT.**

94.   The Financial Advisor Defendants provided the essential link to the investing public which enabled Towers to consummate its unregistered offering and sale of securities, as set forth above. Because of their substantial contacts within the investment community, the Financial Advisors were able to, and did, effect a wide distribution of the confidential offering memoranda to members of the public, including Plaintiffs.

95.   As stated above, Towers purportedly sold the Notes pursuant to a purported exemption from registration under purported exemptions to state blue sky laws.

96.   However, the offering of the Notes was in fact, not exempted under state blue sky laws.  The Financial Advisors contributed to the offering's noncompliance with blue sky laws, and thus the selling of unregistered securities by, _inter alia_, the following acts and commissions:

(a)   Distributing the offering memoranda received by them from Towers to a large and indiscriminate number of offerees;

(b)   Offering and selling the Notes to unsophisticated offerees through a "cold-call" telemarketing campaign, many of whom were living on fixed incomes;

(c)   Failing to appropriately screen potential investors;

(d)   Failing to keep proper records of the exact number and identity of all offerees; and

(e)   Failing to determine whether or not any of the offerees had prior relationships with Towers.

- 33 -

97.    Because the offering of the Notes was a public offering and because the Financial Advisors received substantial commissions from Towers based on the sale of the Notes, the Financial Advisors were underwriters in connection with the offering of the Notes.

98.    The offering of the Notes also failed to comply with state blue sky laws because it was not a limited offering and was sold to more than 35 non-accredited investors (investors with net assets of less than $1 million at the time of their purchase or annual income of less than $200,000 in each of the two years prior to their purchase or combined income with their spouse of less than $300,000 in each of the two years prior to their purchase or not-for-profit organizations, defined benefit plans and trust with assets of less than $5 million at the time of their investment).  In furtherance of the noncompliance with such blue sky laws, the Financial Advisors:

(a)    Sold to non-accredited investors without taking actions to determine the total number of non-accredited investors; and

(b) Caused the Notes to be offered and sold by means of general solicitation.

99.    The Financial Advisors were under a duty, at all relevant times, to investigate the propriety of the foregoing claimed exemptions from registration.  Because of, inter alia, the massive solicitation, the size of the offering, the large number of Financial Advisors involved and their presumed knowledge of the securities laws, the Financial Advisors knew, or were reckless in not knowing that the offering did not comply with the claimed exemptions or was not likely to be in compliance therewith.

100.    The Financial Advisors were under a duty of due diligence to investigate the bona fides of the Towers investment.  In conducting

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

any reasonable due diligence investigation, the Financial Advisors Defendants knew or should have know, <u>inter alia:</u>

(a)   that, in fact, Towers had an extensive history of fraud, securities law violations, consumer fraud allegations, persistent allegations of past diversions of funds from affiliates and subsidiaries, unpaid court judgments, prior bankruptcies and other conduct inconsistent with a creditworthy company, and that state and federal investigations and prosecutions were then underway involving HOFFENBERG, Towers, and/or its affiliates;

(b)   that HOFFENBERG had been previously caused at least four companies he had led to seek bankruptcy protection and that Moody's Investors, Service had declined on this basis to issue a rating for one of the issues of securities when approached to do so by Towers in 1991;

(c)   that Towers as servicer had failed to provide detailed financial reports describing the receivables on a monthly basis as would otherwise have been done if the operation was legitimate;

(d)   that Towers was improperly purchasing from providers receivables which served as collateral for the bonds but were not owned by the providers free from any prior sale, lien, encumbrance or security interest, and, thus, not of adequate strength; and

(e)   that in fact Towers was insolvent and that Towers had abrogated the terms of the indenture agreement with the bond trustee, Shawmut National Bank, a result of which was the genuine and material risk of default on the bonds.

101. The Financial Advisor Defendants should not have recommended the Towers Notes to Plaintiffs as low risk investments in light of such actual or imputed knowledge.

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

102. Regardless of the conduct engaged in, or the degree of knowledge attributable to the Financial Advisors, the Financial Advisors are strictly liable to the Plaintiffs under state blue sky laws, because of the sale of unregistered securities.

103. As set forth above, because the offering of the Notes was in reality a public offering, the Financial Advisors were statutory underwriters and had all of the legal duties and responsibilities of underwriters with respect to an offering of securities. Prior to offering the Notes for sale and soliciting their customers to purchase the Notes, the Financial Advisors had a duty to conduct a due diligence investigation with respect to the Notes and the offering.

104. Adequate investigation by any Broker-Dealer would have revealed that the offering memoranda and Towers' financial statements contained the misrepresentations and omissions of material fact alleged herein.

105. The Financial Advisors solicited sales of the Notes by means of the false and misleading offering memoranda and financial statements and by means of other written sales materials (including sales and marketing brochures and form prospecting letters) and oral statements to prospective purchasers.

106. The written and oral sales representations made by the Financial Advisors contained the same misrepresentations and omissions as the offering memoranda, and these written and oral representations were in all material respects consistent with the offering memoranda. Further, any oral statements made by the Financial Advisors were part of a uniform and standardized sales presentation, which was based upon written sales and marketing brochures, including sales materials which were distributed internally to Financial Advisors only, for use in making oral representations to prospective purchasers.

- 36 -

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

107. The Financial Advisors, in soliciting purchases of the Notes, were motivated by a desire to serve their own financial interests. The Financial Advisors were paid substantial commissions on sales of the Notes and therefore, had every incentive to maximize the sales volume.

108. As a result of the foregoing, the Financial Advisors have breached their duties to Plaintiffs, inducing Plaintiffs to purchase the Notes, to their detriment, and are liable therefor.

109. In making their investment decisions, Plaintiffs relied on the express and implied representations by the Financial Advisors that the Towers Notes were bona fide, low risk securities which were legally being sold under the applicable state and federal securities laws, and Plaintiffs relied upon the reputations of the Defendants. As a direct and proximate result thereof, Plaintiffs were damaged. Had Plaintiffs known of the material adverse information not disclosed by the Defendants, they would not have purchased the Notes.

110. Plaintiffs each purchased Tower Notes upon the advice and recommendation of the Financial Advisor Defendants as alleged above. Prior to the purchase of the Notes, each Plaintiff informed the particular Financial Advisor Defendants, in substance, that such Plaintiff did not want any risky or speculative investments and was only interested in conservative investments. The Defendant Financial Advisors, and each of them, impliedly or expressly represented to such Plaintiff that they, and each of them, possessed expert education, skill, experience, and knowledge necessary to provide expert and competent advice, counselling, guidance and ancillary services in connection with personal financial planning and the provision of services in connection with the analysis, acquisition, and management of investment products

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

suitable for Plaintiff's needs. Each such Defendant Financial Advisor Defendant also impliedly or expressly represented to the client Plaintiff that thorough advance due diligence research and investigation into Tower Financial and Defendant HOFFENBERG had been conducted by the Financial Advisor Defendant to establish conclusively that the Notes were a sound, prudent, low risk investment. Each Plaintiff placed trust and confidence in the particular Financial Advisor Defendant as an expert financial planner and relied upon the Defendants' due diligence, research and investigation in Tower Financial, STEVEN HOFFENBERG and the Notes and followed the recommendation of the Financial Advisor to purchase the Notes.

111. In actuality, the Tower Notes were not low or no risk, but were illegally sold sham investments which were part of a ponzi scheme. In or about March of 1993, Tower Financial filed bankruptcy, causing a loss to Plaintiffs of 100% of their Note investments.

112. Plaintiffs would not have purchased the Tower Note investments if Plaintiffs had known that the Notes were sold illegally as part of a large scale ponzi scheme or that the Notes were not low risk, bona fide conservative investments. Unbeknownst to Plaintiffs, in fact, each of these investments presented a very high degree of risk of loss of principal and high fees and commissions and other and further features which rendered the investments highly unsuitable for plaintiffs and in conflict with the express representations of the financial advisor Defendants and with the express goals stated by Plaintiffs. The financial advisor Defendants, and each of them, knew that the investments were ill-advised for Plaintiffs. Despite their knowledge, Defendants, and each of them, recommended the investments to Plaintiffs as conservative. The falsity of the representations and the unsuitability

of their recommendations and the injury which would foreseeably befall Plaintiffs were well known to the Defendants, yet Defendants, and each of them, authorized and ratified the false representations and recommendations despite such knowledge.

113. Plaintiffs were in fact ignorant that they had even suffered losses of principal until March of 1993, when Tower Financial filed bankruptcy.

114. As a further direct and proximate result of the aforementioned conduct of Defendants, and each of them, and from their realization that they were defrauded, Plaintiffs have suffered anxiety, worry, mental and emotional distress, and other incidental damages and out-of-pocket expenses, including attorneys' fees, all to Plaintiffs' general damage in a sum to be determined at the time of trial, but in any event, a sum in excess of the jurisdictional requirements of the above-entitled court.

115. Defendants' conduct as described herein was done with a conscious disregard for Plaintiffs' rights and with the intent to vex, injure or annoy Plaintiffs, such as to constitute oppression, fraud or malice under California Civil Code 3294, entitling Plaintiffs to punitive damages in an amount appropriate to punish or set an example of Defendants.

116. Furthermore, Defendants' conduct described herein was done with a conscious disregard for Plaintiffs' rights and with the intent to vex, injure or annoy plaintiffs, thereby entitling Plaintiffs to prejudgment interest on all sums awarded at the time of trial in an amount to be determined in accordance with California Civil Code 3291.

117. The acts and omissions of Defendants were engaged in with

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

fraud, oppression and malice so as to justify an award of punitive damages according to proof.

118. All applicable statutes of limitations were tolled as to this action by the filing on February 9 or 10, 1993 of <u>Gold, et al. v. Towers Financial Corporation, Inc. et al.</u>, which was later consolidated for all purposes with other similar class action lawsuits in the case of <u>In Re Towers Financial Corporation Noteholders Litigation</u>, United States District Court, Southern District of New York, Master File No. 93 Civ. 0810 (WK) ["class action"]. The class action is a putative class action covering all of the causes of action alleged herein and Plaintiffs are putative class members of such class action, but have elected by the filing of this lawsuit to bring their own private action for relief and have, or will, opt-out of any class certified as to the defendants in this action.

CLAIMS FOR RELIEF

First Cause Of Action<br>(For Violation of Sections 12(1) Of The Securities Act<br>Against Selling Defendants)

119. Plaintiffs refer to and incorporate by reference herein each and every allegation set forth above.

120. Defendants were sellers and offerors of securities within the meaning of section 12(i) of the Securities Act, 15 U.S.C. § 771(l).

121. Defendants, directly, or indirectly made use of means or instruments of transportation or communication in interstate commerce or of the mails to sell and offer to sell securities when no registration statement was filed or was in effect as to such securities when no exemption from registration was available.

122. Plaintiffs purchased the notes in the offering and at such time were innocent of all comparative negligence.

LAW OFFICES OF TIMOTHY C. KAREN<br>VILLA CORTINA, SUITE 100<br>12702 VIA CORTINA<br>DEL MAR, CALIFORNIA 92014<br>TELEPHONE (619) 259-7790<br>FACSIMILE (619) 259-6817

123. Plaintiffs seek to recover the full amount of consideration paid for said securities, with interest thereon, upon tender of such securities, which tenders are hereby made, or in the alternative, seek damages sustained as a result of the sale of such securities.

124. This claim under section 12(i) is brought on behalf of all Plaintiffs members who purchased Notes from the Selling Defendants on or after February 9, 1992.

<u>Second Cause Of Action</u>
(For Violation Of Sections 12(2) Of The Securities Act Against Selling Defendants)

125. Plaintiffs refer to and incorporate by reference herein each and every allegation set forth above.

126. Defendants, severally and in concert, directly and indirectly participated in a continuous course of conduct, by the use of the mails, wires, and other means and instrumentalities of communication and transportation and interstate commerce, and offered for sale, sold and were the proximate cause and substantial and necessary factors in the sale of the Notes to the Plaintiffs, by means of written promotional materials, oral communications, in violation of Section 12(2) of the Securities Act.

127. The domestic offering memoranda contained untrue statements of material facts, and omitted to state material facts necessary to make the statements made not misleading, in light of the circumstances under which they were made, as set forth above.

128. Plaintiffs accordingly seek to recover the full amount of the consideration paid for those securities, together with interest thereon upon tender of such securities, which tender is hereby made, or in the alternative, seek damages sustained as a result of the sale of such securities.

- 41 -

129. At the time of their purchases, Plaintiffs were without knowledge of the facts concerning the wrongful conduct alleged herein and, due to Defendants' concealment of those facts, were not given reason to suspect wrongdoing and inquire into those facts prior to February 9, 1993, at the earliest. The filing of the class action tolled the statute of limitations on this cause of action.

Third Cause Of Action
(Violations of Section 15 of the Securities Act
Controlling Person Liability)

130. Plaintiffs refer to and incorporate by reference herein each and every allegation set forth above.

131. Defendants other than the actual stockbroker who recommended and sold the investments to Plaintiffs are liable to plaintiffs as controlling persons under Section 15 of the Securities Act for all the unlawful acts set forth herein which constituted violations of Sections 12(1) and (2) of the Securities Act because each such Defendant possessed, directly or indirectly, the power to influence and exercised the same, to direct the activities conducted by or attributable to the entities which they control.

132. By reason of the foregoing, plaintiffs are entitled to damages from these Defendants in an amount to be proven at trial and such other and further relief as the Court deems proper.

Fourth Cause Of Action
(For Violations of Section 10(b) of
the Exchange Act and Rule 10b-5(a), (b) and (c)
Against All Defendants)

133. Plaintiffs refer to and incorporate by reference herein each and every allegation set forth above.

134. Commencing some time prior to the commencement of the issuance of the Notes and continuing until the end of 1992, Defendants

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

participated in the conception and/or implementation of the fraudulent scheme alleged herein, _i.e._, to issue market and sell the Towers Notes by (i) engaging in devices, schemes and/or artifices to defraud; and (ii) engaging in acts, practices and a common course of business which operated as a fraud or deceit upon plaintiffs in connection with their purchases of Towers Notes.

135. At all relevant times, the true nature of the Towers Notes and the risks associated with an investment in the Notes were fraudulently concealed from and/or misrepresented to plaintiffs by defendants, each of whom participated in , controlled, approved and/or acquiesced in the fraudulent acts, practices and courses of conduct complained of herein, including the making and/or dissemination of false and misleading statements to the investing public and/or state or federal governmental regulatory entities, as alleged herein.

136. Among these fraudulent acts, practices and courses of conduct were (1) the failure to disclose the fact that the investments were sold in violation of state and federal securities laws, (2) the true nature of the operations and finances of Towers and its subsidiaries (e.g., the Ponzi scheme detailed throughout the Complaint); (3) the failure to disclose the systematic and blatant violations of the controlling provisions of the Towers Bond Indentures, which foreseeably led the Trustee to declare a default on the Bonds, the resulting default on the Notes, and the collapse of the Ponzi scheme; (4) the making of false and/or deceptively incomplete statements to state and/or federal regulatory agencies or entities for the purpose and with the effect of improperly securing regulatory approval and/or exemptions from various registration requirements; and/or (5) the failure to correct the false and misleading statements to investors and/or regulators.

- 43 -

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

137. Defendants knew or were reckless in not knowing that, but for the fraudulent scheme described herein, the Towers Notes would not have been marketable or sellable, i.e., Defendants fraudulently created a market for the Notes.

138. Similarly, Defendants knew or recklessly disregarded that, but for their fraudulent scheme, as alleged herein, including Defendants, false and misleading statements to state and/or federal regulators, Defendants could not have secured either (1) regulatory approval for the issuance of the Notes and/or (2) exemptions from the registration requirements of the SEC and/or the states in which the Notes were marketed and sold. As a result, Defendants' fraudulent scheme constituted a fraud on the regulatory process and/or the registration process.

139. Plaintiffs relied on the integrity of the market, the Offering Memoranda, the regulatory process and/or the registration process in deciding to purchase the Towers Notes insofar as they relied on the fact that (1) the Notes were entitled to be marketed; (2) the Offering Memoranda contained complete and accurate disclosures; (3) the Notes were properly entitled to regulatory approval; and/or (4) the Notes were properly entitled to an exemption from registration.

140. Defendants knew or recklessly disregarded that their acts would wrongfully enable the Notes to be successfully issued, marketed and sold; that plaintiffs would rely on the integrity of the market, the regulatory process and/or the registration process for the Notes in deciding to purchase the Notes; that the Notes were not properly entitled to be issued, marketed or sold; and that plaintiffs would be damages thereby.

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

141. Had plaintiffs known the material adverse information which was not disclosed by defendants to the investing public and/or regulators, they would not have purchased the Notes.

142. As a result of the wrongful conduct alleged herein, plaintiffs have suffered damages in an amount to be proven at trial.

143. By reason of the foregoing, defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5(a), (b) and (c) promulgated thereunder and plaintiffs are entitled to damages in an amount to be proven at trial.

144. Plaintiffs were not aware of any facts constituting the violations of Section 10(b) and Rule 10b-5 alleged herein i.e., that the Notes were not entitled to (1) be marketed or sold; (2) regulatory approval or (3) exceptions from registration until, at the very earliest, December 1992, when Shawmut sent Notices of Default to each of the Healthcare Subsidiaries, upon Shawmut's receipt of Towers' 1992 Annual Report which gave the first public notice of towers' and the Healthcare Subsidiaries, violations of the Indenture Covenants. The class action tolling the statute of limitations in this case was commenced within one year of the date that Plaintiffs became aware of the facts constituting the violations alleged herein and within three years of the date plaintiffs purchased their Notes. As a result, the claims alleged in this Count were brought within the applicable statute of limitations.

### Fifth Cause Of Action
(Violation of Section 20 of the Exchange Act
Controlling Person Liability)

145. Plaintiffs refer to and incorporate by reference herein each and every allegation set forth above.

- 45 -

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

146. The Defendants other than the actual stockbrokers who recommended and sold the investments to Plaintiffs are liable to plaintiffs as controlling persons under Section 20 of the Exchange Act for all the unlawful acts set forth herein which constituted violations of Section 10(b) of the Exchange Act because each such Defendant possessed, directly or indirectly, the power to influence and exercised the same, to direct the activities conducted by or attributable to the entities which they control in connection with the fraudulent plan and scheme alleged throughout this Complaint.

147. By reason of the foregoing, plaintiffs are entitled to damages from these Defendants in an amount to be proven at trial and such other and further relief as the Court deems proper.

<u>Sixth Caues Of Action</u>
(Actual and Constructive Fraud/Breach of Fiduciary Duty And Breach of Trust Relationship Against All Defendants)

148. Plaintiffs refer to and incorporate by reference herein each and every allegation contained above.

149. Plaintiffs, having reasonably placed their trust and confidence in Defendants so as to create a confidential, fiduciary and trustee-beneficiary relationship, reasonably relied upon the misrepresentations, omissions and fraudulent recommendations of Defendants, as alleged above, to their damage. Defendants misrepresented the nature and quality of the recommended investments and knowingly placed Plaintiffs into unsuitable investments in order to earn a higher commission, with a conscious disregard for Plaintiffs' rights, and with full knowledge of the harm that would befall Plaintiffs as a result of her advice and fraudulent assurances.

150. The conduct of defendants constituted actual and constructive fraud and a breach of fiduciary duty and breach of the duties owed by

- 46 -

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

a trustee to a beneficiary, all proximately causing the injuries and damages alleged herein.

151. Plaintiffs were blamelessly ignorant of the true nature of such investments and the injuries that they had suffered until within the applicable statute of limitations for this action.

Seventh Cause Of Action
(Fraud On a Senior Citizen)

152. Plaintiffs refer to and incorporate by reference herein each and every allegation contained above.

153. Those Plaintiffs who were over the age of 65 years at the time of the fraud and are entitled to recover their actual investment losses, trebled under C.C. §3345, along with an award of attorneys fees, under the Elder Abuse and Dependent Adult Civil Protection Act Welf. and Inst. Code Section 15600.

Eighth Cause Of Action
(Declaratory Relief)

154. Plaintiffs refer to and incorporate by reference herein each and every allegation contained above.

155. A present controversy exists between certain Plaintiffs and certain Defendants in that Plaintiffs are informed and believe the following:

a. Some Defendants will seek to avoid liability for their fraud by pointing to adhesion contracts of indemnity or disclaimers signed or received by Plaintiff in connection with the sale of the securities in issue herein. Plaintiffs contend that such adhesion contracts are void or voidable, because use of such disclaimers to avoid liability for fraud violate public policy and Civil Code §1668.

b. Some Defendants will raise by way of a defense to this action various statutes of limitations. Plaintiffs anticipate that

- 47 -

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

1  Defendants will claim that when Defendants provided Plaintiffs with

2  complicated prospectuses or subscription agreements containing

3  disclaimers or disclosures, Plaintiffs were placed on notice of the

4  unsuitability of their investments or the lies of Defendants, and when

5  Defendants sent various post transaction confirmations or statements

6  to Plaintiffs, Plaintiffs became aware of the losses that they had

7  suffered, so as to trigger the statutes of limitations.  Plaintiffs

8  contend that due to Plaintiffs' lack of sophistication and/or age and/or

9  poor health and the fraudulent misrepresentations and concealments of

10  Defendants, and the ongoing fiduciary duty and trustee-beneficiary

11  relationship which at all times existed between Plaintiffs and Defendants

12  in this case, they neither read nor comprehended any such writings and

13  had no actual knowledge of the information contained therein and were

14  legally excused from any constructive knowledge of information contained

15  therein, and in any event, any and all applicable statutes of limitations

16  were tolled during the time when Plaintiffs continued to be represented

17  by Defendants and during the pendency of <u>In Re Towers Financial</u>

18  <u>Corporation Noteholders Litigation</u>, United States District Court,

19  Southern District of New York, Master File No. 93 Civ. 0810 (WK).

20      156. Plaintiffs require the Court to adjudicate these controversies

21  and order declaratory relief as to these controversies.

22                  <u>Ninth Cause Of Action</u>
23        (Unfair Business Practices Against All Defendants)

24      157. Plaintiffs refer to and incorporate by reference herein each

25  and every allegation contained above.

26      158. That the wrongful acts and omissions of the Defendants as

27  aforesaid involve unlawful, unfair, or fraudulent business practices

28  and other acts prohibited by Business and Professions Code §§17500-17535

- 48 -

and therefore constitute unfair competition prohibited by Business and Professions Code §17200 et seq.

159. As a result of Defendants acts and omissions of unfair competition perpetrated upon Plaintiffs, Defendants have been unjustly enriched, and has wrongfully profited by such unjust enrichment in an amount not less than the amount of Plaintiffs' monetary losses as alleged above, plus interest at the legal rate, all in an amount to be shown according to proof.

160. The acts and omissions of Defendants were undertaken with a conscious disregard for the rights of Plaintiffs, so as to justify an award of punitive damages in favor of Plaintiffs in an amount to be shown according to proof.

Tenth Cause Of Action
(Fraud In The Offer And Sale of Securities Against All Defendants)

161. Plaintiffs refer to and incorporate by reference herein each and every allegation contained above.

162. The transactions alleged above constituted the offer and sale to Plaintiffs of securities through the making of oral or written untrue statements of material fact or the omission of material facts necessary in order to make statements, in light of the circumstances under which they were made, not misleading, all in violation of Corporations Code §§ 25401, 25501, 25504, 25504.1 and 25504.2 and or other similar state blue shy laws.

163. That as a result of the above described acts, Defendants are liable to Plaintiffs, who are entitled to, and hereby do, rescind the above described investments and seek restitution of the funds and damages.

Eleventh Cause Of Action

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

(Sale of Unregistered Securities Against All Defendants)

164. Plaintiffs refer to and incorporate by reference herein each and every allegation contained above.

165. The securities sold to Plaintiffs were required to be qualified under Corporations Code §§25111, 25112, or 25113 or exempted under Section 25100, et seq., but were not so qualified or exempted, and thus, the sale of the securities violated Corporations Code §25110 and/or Corporations Code §25503 or similar state blue sky laws.

166. That as a result of the above described acts, Defendants are liable to Plaintiffs, and Plaintiffs are entitled to, and hereby do, rescind the above securities purchases and seek restitution and damages.

Twelfth Cause Of Action
(Professional and Ordinary Negligence Against All Defendants)

167. Plaintiffs refer to and incorporate by reference herein each and every allegation contained above.

168. The misrepresentations, acts and omissions of the Defendants, and each of them, were professionally and ordinarily negligent, both in taking affirmative action to recommend and sell the subject investments to Plaintiffs, but also for failing to properly supervise the sales activities of employees and registered representatives involved in the sale of the investments to Plaintiffs, all so as to proximately cause the injuries and damages alleged herein.

169. Plaintiffs, having reasonably placed their trust and confidence in Defendants, and each of them, so as to create a fiduciary relationship, reasonably relied upon the intentional misrepresentations and omissions and negligent recommendations of Defendants and the negligent supervision of employees and registered representatives of Defendants as alleged herein. Defendants misrepresented the nature

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6617

and quality of the recommended investments and knowingly placed Plaintiffs into unsuitable investments in order to earn a higher commission, with a reckless disregard for Plaintiffs' rights, and with full knowledge of the harm that would befall Plaintiffs as a result of their advice and false assurances.

170. The conduct of defendants, and each of them, constituted negligence, either professional or ordinary, all proximately causing the injuries and damages alleged herein.

171. Plaintiffs were blamelessly ignorant of the true nature of such investments and the injuries that they had suffered until within the applicable statute of limitations for this action.

172. As a direct and proximate result of the aforementioned wrongful conduct of Defendants, and each of them, Plaintiffs have suffered investment losses for a total amount to be shown at the time of trial.

173. As a further direct and proximate result of the aforementioned conduct of Defendants, and each of them, and from their realization that they were defrauded, Plaintiffs have suffered anxiety, worry, mental and emotional distress, and other incidental damages and out-of-pocket expenses, including attorneys' fees, all to Plaintiffs' general damage in a sum to be determined at the time of trial, but in any event, a sum in excess of the jurisdictional requirements of the above-entitled court.

174. Defendants' conduct as described herein was done with a conscious disregard for Plaintiffs' rights and with the intent to vex, injure or annoy Plaintiffs, such as to constitute oppression, fraud or malice under California Civil Code § 3294, entitling Plaintiffs to punitive damages in an amount appropriate to punish or set an example of Defendants.

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

175. Furthermore, Defendants' conduct described herein was done with a conscious disregard for Plaintiffs' rights and with the intent to vex, injure or annoy plaintiffs, thereby entitling Plaintiffs to prejudgment interest on all sums awarded at the time of trial in an amount to be determined in accordance with California Civil Code § 3291.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

1. Economic damages of not less than $5,461,000 plus interest at the legal rate, together with general, special, compensatory, incidental, consequential, economic and/or treble damages as applicable to each particular cause of action as has been alleged and interest in a sum to be determined at the time of trial;

2. Judgments of rescission together with an award against each Defendant receiving money from Plaintiffs together with an award of general, special, compensatory, incidental and/or economic damages, and interest in a sum to be determined at the time of trial;

3. Declaratory relief, the imposition of a constructive or resulting trust and an accounting;

4. An award of attorneys' fees as allowed by law, as against those Defendants and under those causes of action for which such relief is allowed;

5. Punitive and exemplary damages in an amount appropriate to punish or set an example of Defendants;

6. Prejudgment interest on all damages awarded to Plaintiffs in an amount to be determined in accordance with California Civil Code §3291;

7. Costs of suit; and

8. For such other and further damages as the court deems proper.

- 52 -

1

2 Dated: 6/5/9?                    By: _____
                                      Timothy C/ Karen, Attorney
3                                     for Plaintiffs

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

- 53 -

AO 440 (Rev. 5/85)   Summons in a Civil Action

# United States District Court

SOUTHERN ———— DISTRICT OF ___CALIFORNIA___

WILLIAM D. AND EDITH L. BRADLEY,
RALPH BROCKMAN, STANLEY BRUSKIN,
Additional Parties Attachment form is
attached.

            **v.**

STEVEN HOFFENBERG, A/K/A BARRY COHEN,
PROFESSIONAL BUSINESS BROKERS, INC.,

Additional Parties Attachment form is
attached.

## SUMMONS IN A CIVIL ACTION

CASE NUMBER:   '961023 J POR

TO: (Name and Address of Defendant)

**YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court and serve upon

PLAINTIFF'S ATTORNEY (name and address)

Timothy C. Karen, Esq. SBN 117071
Mary A. Smigielski, Esq. 167829
LAW OFFICES OF TIMOTHY C. KAREN
12702 Via Cortina, Suite 100
Del Mar, CA  92014
(619) 259-7790

an answer to the complaint which is herewith served upon you, within ____20____ days after service of
this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken
against you for the relief demanded in the complaint.

ROBERTA WESTDAL

_____
CLERK

KEVIN BOND

_____
BY DEPUTY CLERK

JUN - 7 1996

_____
DATE

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| BRADLEY, et al. v. HOFFENBERG, et al. | |

## INSTRUCTIONS FOR USE

► This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

► If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.)*:

[X] Plaintiff    [ ] Defendant    [ ] Cross-Complainant    [ ] Cross-Defendant

JAMES W. BUCHANAN III, ROBERT and BARBARA BURNS, AURELIO CACCOMO, RICHARD H. COOPER, JOHN P. and BARBARA L. CUTLER, MARTIN and JOAN DOLIN, NORMAN EISNER, DOUGLAS and DALE FAUSER, JEROME M. and STEPHEN L. FELDMAN, MICHAEL FLYNN, BARBARA L. FOSTER, JAMES R. FRANKLIN, ISRAEL GARTNER, RUTH NIEMCZYK, NATHAN REINER, GREG L. and CONNIE M. GODDARD, individually and for C&G ENTERPRISES, LTD., ROBERT W. GOLEMBSKI, KENNETH C. and JOAN P. GRIFFITH, LLOYD and JENNIE GROSS, STUART J. and BETTY F. HEPBURN, EVERETT JOHNSON, individually and for EJF, LTD., E. LYLE JOHNSON, INC., EVERETT JOHNSON, INC. EMPLOYEES PENSION PLAN and EVERETT JOHNSON, INC. DEFINED BENEFIT PENSION, MICHAEL A. JOHNSON, WALTER and LOIS M. KANE, DONALD B. KIEY, D.D.S., WILLIAM G. and JACQUELINE LEONARD, L. DEAN and DIANE LUKE, STELIO MANGIOLA, M.D., JONAS STULMAN, individually and for MONTCLAIR INVESTMENT CO., PAUL B. ODOM, as Trustee of the P.B. ODOM III TRUST, MICHAEL PALMISANO, ROGER M. and CRYSTAL L. PALMISANO, FRED D. PANEPUCCI, WILLIAM R. PATZER, HARVEY PERETZ, D.D.S., RUSSELL A. and JUDITH A. REUTER, STEVE RUBENSTEIN, individually and for PERSHING-DLJSC, FAO STEVE RUBENSTEIN IRA, PAULINE SCHAFER, ROBERT G. and GAIL G. SCHLENZIG, THOMAS A. and CAROLE F. SCRAMUZZO, CARROLL V. SORELLE, individually and for C.V. SORELLE & COMPANY, DONALD M. SWEAZY, HAROLD FOREMAN and JEROME FOREMAN for WILSHIRE ASSOCIATES, and JANE D. WITHERS,

Page __2__ of __3__

**ADDITIONAL PARTIES ATTACHMENT**
Attachment to Summons

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| BRADLEY, et al. v. HOFFENBERG, et al. | |

## INSTRUCTIONS FOR USE

► This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

► If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff    ☒ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

HOFFENBERG FAMILY TRUST, ANDOVER SECURITIES, a Missouri
corporation, GARY BOHLING, BIEDENHARN INVESTMENT GROUP INC., a
corporation, JAY BIEDENHARN, JAMES MCCURRY, WILLIAM E. POWDRILL
III, CAMBRIDGE CAPITAL MANAGEMENT, a Michigan corporation,
CAMBRIDGE FINANCIAL SERVICES, INC., a Michigan corporation,
JEFFREY A. EGAN, DANIEL P. THOMAS, COAST SECURITIES, a
corporation, GARY HANADEL, CONSOLIDATED INVESTMENT SERVICES, a
Colorado corporation, DENNIS M. EICHINGER, JAMES L. FAINTER,
CHARLOTTE S. RIVIERA, COOPER INVESTMENT PARTNERS, formerly
COOPER-DAVIS, LTD., an Illinois corporation, PETER COOPER, CRAIG
OVERMEYER, DOUGHERTY, DAWKINS, INC., formerly DOUGHERTY, DAWKINS,
STRAND AND BIGELOW INCORPORATED, a Minnesota corporation, J. JOE
MILLER, ENRIGHT FINANCIAL ADVISORS, a New Jersey corporation,
STEVEN ENRIGHT, GARY BOHLING FINANCIAL GROUP, a corporation,
HARBOUR INVESTMENTS, INC., a Wisconsin corporation, TERRANCE P.
JANKE, KURZ-LIEBOW & COMPANY, INC., a New York corporation,
HERBERT SARAGA, JACQUES SARTISKY, GENEVA SECURITIES, an Illinois
corporation, HERBERT FISHMAN, I DO ENTERPRISES, INC., dba GENEVA
INVESTMENT GROUP, an Illinois corporation, MICHAEL D. OLESEN,
GILL AND ASSOCIATES, INC., a Colorado corporation, TED GILL,
HALPERT & CO., formerly HALPERT OBERST & COMPANY, a New Jersey
corporation, NANCY LYNN BARRETT, JEFFREY A. ULLMAN, MICHAEL
GOLDSTEIN, ALAN GUDZ, DANIEL LENNON, SCOTT MARGOLIS, ALAN
HALPERT, ALLAN ROSENBERG, JAY R. OBERST, BERNARD SCHNITZER,
RICHARD M. WASSERMAN, WILLIAM F. BROWN, JEFFREY A. FLADELL,
PATRICK J. TIEDEMANN, LINDA D. PYNAPPEL, KITTLAUS COMPANY, a
corporation, KARL KITTLAUS, MARTIN KAIDEN CO., INC., a New York
corporation, MARTIN KAIDEN, P.A.S., INC., formerly PARK AVENUE
SECURITIES, an Oklahoma corporation, JAMES S. STANLEY,
PROFESSIONAL BUSINESS CONSULTANTS, an Illinois corporation, DAVID
J. WELLEHAN, SCHNEIDER SECURITIES, INC., a Colorado corporation,
SCOTT S. MCGOUGH, JOHN SULLIVAN, BARBARA KELLEY, CENTER CITY
PLANNING, a New York corporation, JOSEPH A. CLAIR III, T.L. SMITH
SECURITIES, a Texas corporation, FRED R. LEFEVRE, US CLEARING
WEST, SEATTLE, a corporation, DON JONES, VAUTRAIN NELSON LEFEVRE,
ENDSLEY AND DURHAM, INC., a Texas corporation, KIRBY ENDSLEY,

Page _3_ of _3_

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

JS 44
(Rev. 07/89)

## CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| WILLIAM D. and EDITH L. BRADLEY, RALPH BROCKMAN, STANLEY BRUSKIN,<br><br>See Additional Page Attached. | STEVEN HOFFENBERG A/K/A BARRY COHEN PROFESSIONAL BUSINESS BROKERS, INC.<br><br>See Additional Page Attached. |

**FILED**

JUN 7 1996

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF **Oakland**
(EXCEPT IN U.S. PLAINTIFF CASES) **Michigan**

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Timothy C. Karen, Esq. SBN 117071
Mary A. Smigielski, Esq. SBN 167829
LAW OFFICES OF TIMOTHY C. KAREN
12702 Via Cortina, Suite 100
Del Mar, CA  92014

ATTORNEYS (IF KNOWN)

**'961023 J POR**

## II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

15 U.S.C. §§77e, 77l(1) and (2), and 77o;  15 U.S.C. §78j(b); 15 U.S.C. §78t

## V. NATURE OF SUIT (PLACE AN x IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury | **PERSONAL INJURY**<br>☐ 362 Personal Injury—Med Malpractice<br>☐ 365 Personal Injury—Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☒ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 R.R. & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br>**LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce/ICC Rates/etc<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information Act<br>☐ 900 Appeal of Fee Determination Under Equal Access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence Habeas Corpus:<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights | | | |

## VI. ORIGIN (PLACE AN x IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

**DEMAND $**
According to proof

Check YES only if demanded in complaint
JURY DEMAND: ☒ YES  ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):

JUDGE _____  DOCKET NUMBER _____

DATE  6/6/96

SIGNATURE OF ATTORNEY OF RECORD

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| BRADLEY, et al. v. HOFFENBERG, et al. | |

1 (a)   PLAINTIFFS

JAMES W. BUCHANAN III, ROBERT and BARBARA BURNS, AURELIO CACCOMO, RICHARD H.
COOPER, JOHN P. and BARBARA L. CUTLER, MARTIN and JOAN DOLIN, NORMAN EISNER,
DOUGLAS and DALE FAUSER, JEROME M. and STEPHEN L. FELDMAN, MICHAEL FLYNN,
BARBARA L. FOSTER, JAMES R. FRANKLIN, ISRAEL GARTNER, RUTH NIEMCZYK, NATHAN
REINER, GREG L. and CONNIE M. GODDARD, individually and for C&G ENTERPRISES,
LTD., ROBERT W. GOLEMBSKI, KENNETH C. and JOAN P. GRIFFITH, LLOYD and JENNIE
GROSS, STUART J. and BETTY F. HEPBURN, EVERETT JOHNSON, individually and for
EJF, LTD., E. LYLE JOHNSON, INC., EVERETT JOHNSON, INC. EMPLOYEES PENSION PLAN
and EVERETT JOHNSON, INC. DEFINED BENEFIT PENSION, MICHAEL A. JOHNSON, WALTER
and LOIS M. KANE, DONALD B. KIEY, D.D.S., WILLIAM G. and JACQUELINE LEONARD,
L. DEAN and DIANE LUKE, STELIO MANGIOLA, M.D., JONAS STULMAN, individually and
for MONTCLAIR INVESTMENT CO., PAUL B. ODOM, as Trustee of the P.B. ODOM III
TRUST, MICHAEL PALMISANO, ROGER M. and CRYSTAL L. PALMISANO, FRED D.
PANEPUCCI, WILLIAM R. PATZER, HARVEY PERETZ, D.D.S., RUSSELL A. and JUDITH A.
REUTER, STEVE RUBENSTEIN, individually and for PERSHING-DLJSC, FAO STEVE
RUBENSTEIN IRA, PAULINE SCHAFER, ROBERT G. and GAIL G. SCHLENZIG, THOMAS A.
and CAROLE F. SCRAMUZZO, CARROLL V. SORELLE, individually and for C.V. SORELLE
& COMPANY, DONALD M. SWEAZY, HAROLD FOREMAN and JEROME FOREMAN for WILSHIRE
ASSOCIATES, and JANE D. WITHERS,

1 (a)   DEFENDANTS

HOFFENBERG FAMILY TRUST, ANDOVER SECURITIES, a Missouri corporation, GARY
BOHLING, BIEDENHARN INVESTMENT GROUP INC., a corporation, JAY BIEDENHARN,
JAMES MCCURRY, WILLIAM E. POWDRILL III, CAMBRIDGE CAPITAL MANAGEMENT, a
Michigan corporation, CAMBRIDGE FINANCIAL SERVICES, INC., a Michigan
corporation, JEFFREY A. EGAN, DANIEL P. THOMAS, COAST SECURITIES, a
corporation, GARY HANADEL, CONSOLIDATED INVESTMENT SERVICES, a Colorado
corporation, DENNIS M. EICHINGER, JAMES L. FAINTER, CHARLOTTE S. RIVIERA,
COOPER INVESTMENT PARTNERS, formerly COOPER-DAVIS, LTD., an Illinois
corporation, PETER COOPER, CRAIG OVERMEYER, DOUGHERTY, DAWKINS, INC., formerly
DOUGHERTY, DAWKINS, STRAND AND BIGELOW INCORPORATED, a Minnesota corporation,
J. JOE MILLER, ENRIGHT FINANCIAL ADVISORS, a New Jersey corporation, STEVEN
ENRIGHT, GARY BOHLING FINANCIAL GROUP, a corporation, HARBOUR INVESTMENTS,
INC., a Wisconsin corporation, TERRANCE P. JANKE, KURZ-LIEBOW & COMPANY, INC.,
a New York corporation, HERBERT SARAGA, JACQUES SARTISKY, GENEVA SECURITIES,
an Illinois corporation, HERBERT FISHMAN, I DO ENTERPRISES, INC., dba GENEVA
INVESTMENT GROUP, an Illinois corporation, MICHAEL D. OLESEN, GILL AND
ASSOCIATES, INC., a Colorado corporation, TED GILL, HALPERT & CO., formerly
HALPERT OBERST & COMPANY, a New Jersey corporation, NANCY LYNN BARRETT,
JEFFREY A. ULLMAN, MICHAEL GOLDSTEIN, ALAN GUDZ, DANIEL LENNON, SCOTT
MARGOLIS, ALAN HALPERT, ALLAN ROSENBERG, JAY R. OBERST, BERNARD SCHNITZER,
RICHARD M. WASSERMAN, WILLIAM F. BROWN, JEFFREY A. FLADELL, PATRICK J.
TIEDEMANN, LINDA D. PYNAPPEL, KITTLAUS COMPANY, a corporation, KARL KITTLAUS,
MARTIN KAIDEN CO., INC., a New York corporation, MARTIN KAIDEN, P.A.S., INC.,
formerly PARK AVENUE SECURITIES, an Oklahoma corporation, JAMES S. STANLEY,
PROFESSIONAL BUSINESS CONSULTANTS, an Illinois corporation, DAVID J. WELLEHAN,
SCHNEIDER SECURITIES, INC., a Colorado corporation, SCOTT S. MCGOUGH, JOHN
SULLIVAN, BARBARA KELLEY, CENTER CITY PLANNING, a New York corporation, JOSEPH
A. CLAIR III, T.L. SMITH SECURITIES, a Texas corporation, FRED R. LEFEVRE, US
CLEARING WEST, SEATTLE, a corporation, DON JONES, VAUTRAIN NELSON LEFEVRE,
ENDSLEY AND DURHAM, INC., a Texas corporation, KIRBY ENDSLEY,

*(Required for verified pleading)* The items on this page stated on information and belief are *(specify item numbers, not line numbers):*

This page may be used with any Judicial Council form or any other paper filed with the court.    Page __2__

Form Approved by the
Judicial Council of California
MC-020 [New January 1, 1987]                    **ADDITIONAL PAGE**
Attach to Judicial Council Form or Other Court Paper                    CRC 201, 501