USDC SCAN INDEX SHEET











BRADLEY

HOFFENBERG

TLW
3:96-CV-01023
*73*
*AMDCMP.*


FILED

APR 4 1997

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY_____ DEPUTY

1  Timothy C. Karen, Esq., SBN 117071
2  Mary Smigielski, Esq., SBN 167829
   LAW OFFICES OF TIMOTHY C. KAREN
3  12702 Via Cortina, Suite 100
   Del Mar, California  92014
4  (619) 259-7790

5  Attorneys for Plaintiffs

6

7

8

9                  UNITED STATES DISTRICT COURT

10            FOR THE SOUTHERN DISTRICT OF CALIFORNIA

11  PAUL F. CLARK, SR., PATRICIA J. )  Case No. 96-1023-J (JFS)
    CLARK, RICHARD H. COOPER, LLOYD )
12  GROSS, JENNIE GROSS, ERNEST )      SECOND AMENDED COMPLAINT FOR
    HAMILTON, BETTY M. KOBERNUSS, )    DAMAGES AND FOR:
13  GRACE K. MORGAN, JOHN A. LEACH, )
    HELEN H. LEACH, MICHAEL )          1.    VIOLATION OF FEDERAL
14  PALMISANO, ROGER M. PALMISANO, )         SECURITIES LAWS
    CRYSTAL L. PALMISANO, RALPH )
15  BROCKMAN, DANNY N. LITTON, )       2.    REACH OF FIDUCIARY
    WILLIAM D. BRADLEY, EDITH L. )           DUTY
16  BRADLEY, MICHAEL FLYNN, JANE D. )
    WITHERS, WILLIAM BURT ROSENTHAL, ) 3.    BREACH OF CONTRACT
17  individually and as Trustee of )
    the MERIAN L. ROSENTHAL FAMILY )   4.    BREACH OF TRUST
18  TRUST, MERIAN L. ROSENTHAL, )
    deceased,  BEN E. CARNES, JAMES )  5.    FINDING OF ALTER EGO
19  R.  FRANKLIN,  ROBERT  G. )              LIABILITY
    SCHLENZIG, GAIL G. SCHLENZIG, )
20  BARBARA L. FOSTER, VICTORIA )      6.    DECLARATORY RELIEF
    BEIS, ALFRED BEIS, VIOLA M. )
21  GIAGNORIO, DANIEL W. GORSKI, )     7.    NEGLIGENCE
    ROSE GORSKI, DARLENE E. GORSKI, )
22  WILLIAM R. PATZER, DIXON ALLEN, )  8.    SALE OF UNREGISTERED
    Executor of THE ESTATE OF EARL )         SECURITIES
23  F. ALLEN, SCOTT CARMONA, ROBERT )
    I. SHERMAN, individually and as )        DEMAND FOR JURY TRIAL
24  Trustee of the ROBERT I. SHERMAN )
    REVOCABLE LIVING TRUST, WILLIAM )
25  RANDALL, WINONA RANDALL, STANLEY )
    BRUSKIN, DONALD B. KIEY, ALAN M. )
26  NIRENBERG, JEROME M. FELDMAN, )
    STEVEN L. FELDMAN, DEBRA )
27  MCENEANY, NORMAN EISNER, GARY )
    MEDWED, JEANNE MEDWED, FRED D. )
28  PANEPUCCI, CARROLL V. SORELLE, )
    C.V. SORELLE & COMPANY, a )
    Colorado corporation, STELIO )
    MANGIOLA, JOHN P. CUTLER, )
    BARBARA L. CUTLER, DOUGLAS )

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

ORIGINAL

73

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

1  FAUSER, DALE FAUSER, ISRAEL )
2  GARTNER, RUTH NIEMCZYK, NATHAN )
   REINER, MONTCLAIR INVESTMENT )
3  CO., a New Jersey corporation, )
   JONAS STULMAN, HARVEY PERETZ, )
4  STEVE RUBENSTEIN, PAULINE )
   SCHAFER, MARTIN DOLIN, JOAN )
5  DOLIN, JEROME FOREMAN, )
   individually and as partner of )
6  WILSHIRE ASSOCIATES, HAROLD )
   FOREMAN, individually and as )
7  partner of WILSHIRE ASSOCIATES, )
   GARY HAMILTON, CHARLOTTE BARON, )
8  GEORGE ZIEFLE, individually and )
   as Trustee of A.Q.L. DECORATING )
9  CO., INC. ESOP, JEANETTE ZIEFLE, )
   HARRY SHAPIRO, BERYLLE SHAPIRO, )
10 STEVEN H. JOHNSON, HOWARD S. )
   ALLEN, individually and as )
11 Trustee of the HOWARD S. ALLEN )
   TRUST U/A DTD 09/16/80, RUSSELL )
12 A. REUTER, JUDITH A. REUTER, )
   PAUL MEIER, individually and as )
13 Trustee of the EXCEL BOTTLING )
   CO. PENSION PLAN, PAUL E. MEIER, )
14 individually and as Trustee of )
   the PAUL E. MEIER TRUST, which )
15 has been transferred to the )
   EDWARD & CATHERINE MEIER )
16 IRREVOCABLE INSURANCE TRUST, )
   PAUL E. MEIER, individually and )
17 as Trustee of the EDWARD J. )
   MEIER REVOCABLE LIVING TRUST, )
18 BRENDA L. PECK, individually and )
   as Trustee of the DETRAE )
19 ENTERPRISES, INC. PENSION PLAN, )
   BRENDA L. PECK AKA BRENDA L. )
20 BRADY, JOHN RUGGIERO, SYDNEY P. )
   JARKOW, AURELIO M. CACCOMO, )
21 ARTHUR M. KRILL, individually )
   and as Trustee of the THE KRILL )
22 CO., HENRY C. LOCKLAR, ALLENE K. )
   LOCKLAR, RICHARD D. URWILLER, )
23 MICHAEL A. JOHNSON, DONALD M. )
   SWEAZY, JUDITH S. LEE, GEORGE O. )
24 CHAPLIN, individually and as )
   Executor of the ESTATE OF )
25 CHARLES W. & BETTE J. CHAPLIN, )
   WILLIAM G. LEONARD, JACQUELINE )
26 LEONARD, EDWARD RAPPAPORT, I. )
   PAUL RAPPAPORT, individually and )
27 as Trustee FBO PAUL RAPPAPORT )
   SELF EMPLOYED MONEY PURCHASE )
28 PLAN 12/23/87, I. PAUL )
   RAPPAPORT, individually and as )

(ii)

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6617

1  
2  
3  
4  
5  
6  
7  
8  
9  
10  
11  
12  
13  
14  
15  
16  
17  
18  
19  
20  
21  
22  
23  
24  
25  
26  
27  
28  

Trustee FBO PAUL RAPPAPORT SELF )
EMPLOYED PROFIT SHARING PLAN )
12/23/87, RANDYE RAPPAPORT, )
RICHARD WORTH, ILA MAY HOLMES, )
KENNETH C. GRIFFITH, JOAN P. )
GRIFFITH, STUART J. HEPBURN, and )
BETTY F. HEPBURN, )
                       )
             Plaintiffs, )
                       )
v. )
                       )
ANDOVER SECURITIES, INC., a )
Missouri corporation, GARY )
BOHLING, JAY BIEDENHARN AKA )
JOSEPH AUGUSTUS BIEDENHARN II, )
WILLIAM E. POWDRILL III, JAMES )
MCCURRY, CAMBRIDGE CAPITAL )
MANAGEMENT, a Michigan )
corporation, JEFFREY A. EGAN, )
DANIEL P. THOMAS, CENTER CITY )
PLANNING, a New York )
corporation, JOSEPH A. CLAIR )
III, GARY HONODEL, NEIDIGER, )
TUCKER, BRUNER, INC., a Colorado )
corporation, DENNIS M. )
EICHINGER, JAMES L. FAINTER, )
CRAIG OVERMEYER, DAVIDSON )
SECURITIES, a corporation, J.O. )
DAVIDSON & ASSOCIATES, INC., a )
Kansas corporation, DALE )
KIDWELL, JOHN AHLBRAND, RON )
BRAY, ENRIGHT FINANCIAL )
ADVISORS, a New Jersey )
corporation, STEVEN ENRIGHT, )
HARBOUR INVESTMENTS, INC., a )
Wisconsin corporation, TERRANCE )
P. JANKE, HARLAND FINANCIAL )
SERVICES CORP., a New York )
corporation, JEFFREY G. LEVY, )
KURZ-LIEBOW & COMPANY, INC., a )
New York corporation, HERBERT )
SARAGA, JACQUES SARTISKY, GERALD )
CORAGGIO, I DO ENTERPRISES, )
INC., dba GENEVA INVESTMENT )
GROUP, an Illinois corporation, )
MICHAEL D. OLESEN, GILL AND )
ASSOCIATES, INC., a Colorado )
corporation, TED GILL, HALPERT & )
CO., formerly HALPERT, OBERST & )
COMPANY, a New Jersey )
corporation, NANCY LYNN BARRETT, )
MICHAEL GOLDSTEIN, ALAN HALPERT, )
MICHAEL J. PETRUCELLI, MATHEW )
COHEN, JAY R. OBERST, PATRICK J. )

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
1270 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

1  TIEDEMANN, LINDA D. PYNAPPEL, )
2  JINCO LEASING CORP., dba JINCO )
   FINANCIAL CORP., a Colorado )
3  corporation, WAYNE MORRISON, )
   KITTLAUS COMPANY, a corporation, )
4  KARL KITTLAUS, M.E. METZLER )
   ORGANIZATION, INC., a Missouri )
5  corporation, MILTON E. METZLER, )
   MICHAEL COURTE, MONETA FINANCIAL )
6  SERVICES, a corporation, )
   FREDERICK ELIASSEN, PETER )
7  SPANIOL, GARY BALUMAS, HERBERT )
   B. JENKINS, PENSIONS FOR )
8  BUSINESS, INC., a New York )
   corporation, PROFESSIONAL )
9  BUSINESS CONSULTANTS, an )
   Illinois corporation, DAVID J. )
10 WELLEHAN, R.G. DICKINSON & CO., )
   an Iowa corporation, THOMAS M. )
11 LOBAUGH, BOB BUCHER, SCOTT S. )
   MCGOUGH, JOHN SULLIVAN, BARBARA )
12 KELLEY, SINE QUA NON, a New York )
   corporation, JAY C. BUITENKENT, )
13 JIMMY OZMER, ETON SECURITIES )
   CORPORATION, a corporation, )
14 MONVEST SECURITIES, INC., a )
   corporation, ANDREW REEGEN, )
15 MITCHELL BRATER, T.L. SMITH )
   SECURITIES, a Texas corporation, )
16 FRED R. LEFEVRE, RONALD IRVING )
   RAPPAPORT, SOUTHWEST SECURITIES, )
17 INC., a Delaware corporation, )
   TRANSCO SECURITIES, a )
18 corporation, ED SCHUCHARDT, U.S. )
   SECURITIES CLEARING CORP., an )
19 Oregon corporation, DON JONES, )
   VAUTRAIN NELSON LEFEVRE ENDSLEY )
20 AND DURHAM, INC., a Texas )
   corporation, and LYNN VAUTRAIN, )
21                               )
            Defendants.          )
22                               )
                                 )
23 _____ )

24

25

26 / / /

27 / / /

28 / / /

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

Plaintiffs demand a jury trial and allege:

1.   This action asserts claims under section 12(1) and (2) and section 15 of the Securities Act of 1933, 15 U.S.C. §§ 77e, 77l(1) and (2), and 77o; section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Securities and Exchange Commission Rule Lob-5 promulgated thereunder, 17 C.F.R. § 240.10b-5; section 20 of the Exchange Act, 15 U.S.C. § 78t; the applicable state "blue sky" statutes; and the common law for fraud, negligent misrepresentation, negligence, breach of fiduciary duty and declaratory relief.

2.   This Court has jurisdiction over the federal claims herein under section 22(a) of the Securities Act, 15 U.S.C. § 77v(a); section 27 of the Exchange Act, 15 U.S.C. § 78aa.  The Court has supplemental jurisdiction over the state law claims herein under 28 U.S.C. § 1367. This action asserts federal claims under section 12(1) and (2) and section 15 of the Securities Act of 1933, 15 U.S.C. §§ 77e, 77l(1) and (2), and 77o; section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Securities and Exchange Commission Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5; section 20 of the Exchange Act, 15 U.S.C. § 78t and various State common law or Statutory causes of action.

3.   Plaintiffs in this action were investor clients of the Defendant brokerage houses/financial advisors/stockbrokers who are sued herein. Plaintiffs informed their stockbroker/brokerage house/financial advisor, in substance, that they wanted to invest only in low risk, secure investments to ensure the preservation of Plaintiffs' capital.

4.   The stockbroker/brokerage house/financial advisor in substance represented to Plaintiffs that they possessed expert education, skill, experience, and knowledge necessary to provide expert and competent

- 2 -

advice, counselling, guidance and ancillary services in connection with personal financial planning and the provision of services in connection with the analysis, acquisition, and management of investment products suitable for Plaintiffs.    Further, the stockbroker/brokerage house/financial advisor assured Plaintiffs that they would be capable of placing Plaintiffs into investments which would meet their avowed goal.

5.    The stockbroker/brokerage house/financial advisor, also in substance, represented to Plaintiffs that the various investments the stockbroker/brokerage house/financial advisor would recommend would indeed preserve Plaintiffs' capital, and as their investment advisor, the stockbroker/brokerage house/financial advisor would monitor Plaintiffs' investments and financial condition and make such additional recommendations as were necessary to fulfill Plaintiffs' financial goals.

6.    Further, the stockbroker/brokerage house/financial advisor, in substance, told Plaintiffs that the stockbroker/brokerage house/financial advisor would at all times serve only the best interests of Plaintiffs, and, in substance, act as a fiduciary for Plaintiffs as to all matters relating to such transactions.

7.    Based on the stockbroker/brokerage house/financial advisor' representations, Plaintiffs retained the stockbroker/brokerage house/financial advisor to provide expert financial advice for Plaintiffs.

8.    From the very beginning of Plaintiffs' involvement with the stockbroker/brokerage house/financial advisor, Plaintiffs in substance stressed to the stockbroker/brokerage house/financial advisor that at no time did Plaintiffs intend to risk any of their principal investment,

- 3 -

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
2702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
1270² VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

nor grant the stockbroker/brokerage house/financial advisor the authority to place their money in a high risk type of investment product.

<u>TRANSACTIONS IN TOWERS NOTES AND OTHER UNSUITABLE INVESTMENTS</u>

9.     On the dates and in the amounts set forth below, the stockbroker/brokerage house/financial advisor, in the improper manner alleged herein, recommended that Plaintiffs purchase either Towers Financial Corporation Promissory Notes ["Towers Notes"] or other unsuitable investments, and Plaintiffs relied upon and followed such recommendations.

10.     Defendant ANDOVER SECURITIES, INC. ["ANDOVER"] is a duly organized Missouri corporation and is a securities broker-dealer and member of the National Association of Securities Dealers which is based in Kansas City, Missouri who in the improper manner alleged herein offered and sold, <u>inter alia</u>, Towers Notes.  GARY BOHLING ["BOHLING"] was a stockbroker employed by ANDOVER who, in the improper manner alleged herein, recommended and sold $30,000.00 worth of note(s) on or about April 21, 1992 and $30,000.00 worth of note(s) on or about April 28, 1992 to PAUL F. CLARK, SR. and PATRICIA J. CLARK; $50,000.00 worth of note(s) to RICHARD H. COOPER; $55,000.00 worth of note(s) to LLOYD GROSS and JENNIE GROSS; $60,000.00 worth of note(s) to ERNEST HAMILTON; $25,000.00 worth of note(s) on or about September 13, 1991 to BETTY M. KOBERNUSS and GRACE K. MORGAN; $15,000.00 worth of note(s) on or about May 17, 1988 and $25,000.00 worth of note(s) on or about July 23, 1989 to JOHN A. LEACH and HELEN H. LEACH; $100,000.00 worth of note(s) to MICHAEL PALMISANO; and $35,000.00 worth of note(s) to ROGER M. PALMISANO and CRYSTAL L. PALMISANO.  The acts and omissions of BOHLING were within the course and scope of his agency for Defendant ANDOVER and at all times relevant herein, BOHLING was acting under the

- 4 -

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

supervision, direction and control of and with the express and implied authorization of the shareholders, officers, compliance officers, directors, registered principals and other management level officials of ANDOVER.

11.  Biedenharn Investment Group, Inc. was a duly organized corporation, securities broker-dealer and member of the National Association of Securities Dealers. Biedenharn Investment Group, which was based in Shreveport, Louisiana, in the improper manner alleged herein offered and sold, <u>inter alia</u>, Towers Notes prior to declaring bankruptcy. Defendant JAY BIEDENHARN AKA JOSEPH AUGUSTUS BIEDENHARN II was a stockbroker employed by Biedenharn Investment Group, Inc. who, in the improper manner alleged herein, recommended and sold $100,000.00 worth of note(s) to RALPH BROCKMAN.  Defendant WILLIAM E. POWDRILL III was a stockbroker employed by Biedenharn Investment Group, Inc. who, in the improper manner alleged herein, recommended and sold $500,000.00 worth of note(s) on or about August 13, 1990 and $150,000.00 worth of note(s) on or about June 1, 1991 to DANNY N. LITTON.  The acts and omissions of JAY BIEDENHARN AKA JOSEPH AUGUSTUS BIEDENHARN II and POWDRILL were within the course and scope of their agency for Defendant Biedenharn Investment Group, Inc. and at all times relevant herein, JAY BIEDENHARN AKA JOSEPH AUGUSTUS BIEDENHARN II and POWDRILL were acting under the supervision, direction and control of and with the express and implied authorization of the shareholders, officers, compliance officers, directors, registered principals and other management level officials of Biedenharn Investment Group, Inc. Plaintiffs are informed and believe that Defendants JAMES MCCURRY, WILLIAM E. POWDRILL III, JAY BIEDENHARN AKA JOSEPH AUGUSTUS BIEDENHARN II are the officers, directors, compliance officers, managers, owners and/or registered

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

principals and/or control persons and/or and alter-egos of Biedenharn Investment Group, Inc. and said Defendants encouraged and/or authorized and/or assisted and/or participated in and ratified the wrongful conduct alleged herein and are directly and secondarily liable for the acts and omissions of Biedenharn Investment Group, Inc. and its agents, representatives, and employees as alleged herein.

12.   Cambridge Financial Services, Inc. ["Cambridge"] is a duly organized Michigan corporation and is a securities broker-dealer and member of the National Association of Securities Dealers which is based in Birmingham, Michigan.  Plaintiffs are informed and believe that Defendant CAMBRIDGE CAPITAL MANAGEMENT, a duly organized Michigan corporation, is the successor in interest to/alter ego of/AKA Cambridge. Defendants JEFFREY A. EGAN ["EGAN"] and DANIEL P. THOMAS ["THOMAS"] were stockbrokers employed by Cambridge who, in the improper manner alleged herein, recommended and sold $75,000.00 worth of note(s) to WILLIAM D. BRADLEY and EDITH L. BRADLEY.  The acts and omissions of EGAN and THOMAS were within the course and scope of their agency for Defendant Cambridge and at all times relevant herein, EGAN and THOMAS were acting under the supervision, direction and control of and with the express and implied authorization of the shareholders, officers, compliance officers, directors, registered principals and other management level officials of Cambridge.

13.   Defendant CENTER CITY PLANNING ["CENTER"] is a duly organized New York corporation and is a securities broker-dealer and member of the National Association of Securities Dealers which is based in New York, New York who in the improper manner alleged herein offered and sold, inter alia, Towers Notes. Defendant JOSEPH A. CLAIR III ["CLAIR"] was a stockbroker employed by CENTER who, in the improper manner alleged

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

herein, recommended and sold $75,000.00 worth of note(s) to MICHAEL FLYNN. The acts and omissions of CLAIR were within the course and scope of his agency for Defendant CENTER and at all times relevant herein, CLAIR was acting under the supervision, direction and control of and with the express and implied authorization of the shareholders, officers, compliance officers, directors, registered principals and other management level officials of CENTER.

14.  Coastal Equities, Inc. ["Coastal"], listed as Defendant Coast Securities in the complaint and first amended complaint, is a duly organized corporation and is a securities broker-dealer and member of the National Association of Securities Dealers which is based in Falmouth, Massachusetts who in the improper manner alleged herein offered and sold, inter alia, Towers Notes. Defendant GARY HONODEL ["HONODEL"], listed as Defendant Gary Hanadel in the complaint and first amended complaint, was a stockbroker employed by Coastal who, in the improper manner alleged herein, recommended and sold $60,000.00 worth of note(s) to JANE D. WITHERS. The acts and omissions of HONODEL were within the course and scope of his agency for Defendant Coastal and at all times relevant herein, HONODEL was acting under the supervision, direction and control of and with the express and implied authorization of the shareholders, officers, compliance officers, directors, registered principals and other management level officials of Coastal. Defendant NEIDIGER, TUCKER, BRUNER, INC., ["NEIDIGER"] is a duly organized Colorado corporation and is a securities broker-dealer and member of the National Association of Securities Dealers which is based in Colorado Springs, Colorado which Plaintiffs are informed and believe in the improper manner alleged herein offered and sold, inter alia, Towers Notes. Plaintiffs

- 7 -

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6617

are further informed and believed that Defendant HOLODEL was also registered with NEIDIGER at the time this sale took place.

15.    Consolidated Investment Services ["Consolidated"] is a duly organized Colorado corporation and is a securities broker-dealer and member of the National Association of Securities Dealers which is based in Littleton, Colorado who in the improper manner alleged herein offered and sold, _inter alia_, Towers Notes.    A registered representative employed by Consolidated recommended and sold $25,000.00 worth of note(s) on or about July 28, 1991 and $20,000.00 worth of note(s) on or about December 8, 1991 to WILLIAM BURT ROSENTHAL and MERIAN L. ROSENTHAL, deceased; $15,000.00 worth of note(s) on or about August 1, 1992 to the MERIAN L. ROSENTHAL, deceased, which is now held by WILLIAM BURT ROSENTHAL, Trustee of the MERIAN L. ROSENTHAL FAMILY TRUST. Defendant DENNIS M. EICHINGER ["EICHINGER"] was a stockbroker employed by Consolidated who, in the improper manner alleged herein, recommended and sold $150,000.00 worth of note(s) on or about July 26, 1992; $15,000.00 worth of note(s) on or about December 27, 1992, $10,000.00 worth of note(s) on or about July 8, 1992, $19,000.00 worth of note(s) on or about March 14, 1992, $77,000.00 worth of note(s) on or about April 4, 1991, $5,000.00 worth of note(s) on or about April 4, 1991, and $101,000.00 worth of note(s) on or about June 9, 1991 to BEN E. CARNES; $86,000.00 worth of note(s) to JAMES R. FRANKLIN; and $217,000.00 worth of note(s) to ROBERT G. SCHLENZIG and GAIL G. SCHLENZIG. Defendant JAMES L. FAINTER ["FAINTER"] and Charlotte S. Riviera ["Riviera"] were stockbrokers employed by Consolidated who, in the improper manner alleged herein, recommended and sold $50,000.00 worth of note(s) to BARBARA L. FOSTER.  FAINTER also recommended and sold $18,000.00 worth of note(s) in or about November of 1991 to VICTORIA BEIS; $18,000.00 worth of

note(s) in or about November of 1991, $53,000.00 worth of note(s) in or about November of 1991, and $10,000.00 worth of note(s) in or about December of 1991 to ALFRED BEIS; $35,000.00 worth of note(s) on or about December 7, 1992 and $28,000.00 worth of note(s) on or about November 20, 1992 to VIOLA M. GIAGNORIO; $70,000.00 worth of note(s) on or about August 6, 1991 to DANIEL W. GORSKI; $50,000.00 worth of note(s) on or about September 29, 1991 to DANIEL W. GORSKI and ROSE GORSKI; and $200,000.00 worth of note(s) on or about September 14, 1992 to DANIEL W. and DARLENE E. GORSKI. The acts and omissions of EICHINGER, FAINTER and Riviera were within the course and scope of his agency for Consolidated and at all times relevant herein, EICHINGER, FAINTER and Riviera were acting under the supervision, direction and control of and with the express and implied authorization of the shareholders, officers, compliance officers, directors, registered principals and other management level officials of Consolidated.

16.  Cooper Investment Partners, Inc., formerly Cooper-Davis, Ltd. ["Cooper-Davis"] is a duly organized Illinois corporation and is a securities broker-dealer and member of the National Association of Securities Dealers which is based in Chicago, Illinois who in the improper manner alleged herein offered and sold, inter alia, Towers Notes. Defendant CRAIG OVERMEYER ["OVERMEYER"] was a stockbroker employed by Cooper-Davis who, in the improper manner alleged herein, recommended and sold $200,000.00 worth of note(s) to WILLIAM R. PATZER. The acts and omissions of OVERMEYER were within the course and scope of his agency for Defendant Cooper-Davis and at all times relevant herein, OVERMEYER was acting under the supervision, direction and control of and with the express and implied authorization of the shareholders,

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

officers, compliance officers, directors, registered principals and other management level officials of Cooper-Davis.

17.  Defendant DAVIDSON SECURITIES ["DAVIDSON"] is a duly organized corporation and is a securities broker-dealer and member of the National Association of Securities Dealers which is based in Wichita, Kansas who in the improper manner alleged herein offered and sold, _inter alia_, Towers Notes.  Plaintiffs are informed and believe that Defendant J.O. DAVIDSON & ASSOCIATES, INC., a Kansas corporation, is the successor in interest to/alter ego of/AKA of Davidson.  Defendant DALE KIDWELL ["KIDWELL"] was a stockbroker employed by DAVIDSON who, in the improper manner alleged herein, recommended and sold $50,000.00 worth of note(s) on or about January 14, 1991 and $50,000.00 worth of note(s) on or about July 3, 1991 to DIXON ALLEN, Executor of THE ESTATE OF EARL F. ALLEN. The acts and omissions of KIDWELL were within the course and scope of his agency for Defendant DAVIDSON and at all times relevant herein, KIDWELL was acting under the supervision, direction and control of and with the express and implied authorization of the shareholders, officers, compliance officers, directors, registered principals and other management level officials of DAVIDSON.

18.  Defendant East-West Capital Corporation ["East-West"] is a duly organized Michigan corporation and is a securities broker-dealer and member of the National Association of Securities Dealers which is based in Harper Woods, Michigan who in the improper manner alleged herein offered and sold, _inter alia_, Towers Notes, City-Ohio Partners II, L.P., City-Hilton Head Partners, L.P., Overland Express Funds, Inc., Continental Capital Income Fund II, L.P., and Auto Credit Finance promissory notes. Defendant JOHN AHLBRAND ["AHLBRAND"] was a stockbroker employed by East-West who, in the improper manner alleged herein,

- 10 -

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

recommended and sold $100,000.00 worth of note(s) on or about April 16, 1991, $100,000.00 worth of note(s) on or about December 28, 1991, $100,000.00 worth of note(s) on or about October 4, 1991, $100,000.00 worth of note(s) on or about April 5, 1990, and $100,000.00 worth of note(s) on or about April 15, 1992 to SCOTT CARMONA; and $50,000.00 worth of note(s) on or about July 16, 1991, $50,000.00 worth of note(s) on or about October 11, 1991, and $60,000.00 worth of note(s) on or about August 2, 1992 to ROBERT I. SHERMAN, Trustee of the ROBERT I. SHERMAN REVOCABLE LIVING TRUST.  Defendant RON BRAY ["BRAY"] was a stockbroker employed by East-West who, in the improper manner alleged herein, recommended and sold $100,000.00 worth of note(s) on or about March 10, 1992 to WILLIAM RANDALL and WINONA RANDALL.   The acts and omissions of AHLBRAND and BRAY were within the course and scope of their agency for Defendant East-West and at all times relevant herein, AHLBRAND and BRAY were acting under the supervision, direction and control of and with the express and implied authorization of the shareholders, officers, compliance officers, directors, registered principals and other management level officials of East-West.

19.   Defendant ENRIGHT FINANCIAL ADVISORS ["ENRIGHT FINANCIAL"] is a duly organized New Jersey corporation which is based in Westwood, New Jersey. Defendant STEVEN ENRIGHT ["ENRIGHT"] was a financial advisor employed by ENRIGHT FINANCIAL who recommended $100,000.00 worth of Towers note(s) to STANLEY BRUSKIN at a time when BRUSKIN was a client of ENRIGHT who relied upon ENRIGHT's skill, knowledge and expertise as a financial advisor.  Based upon ENRIGHT's recommendations, BRUSKIN purchased a like amount of Towers Notes from Martin Kaiden ["Kaiden"].   The acts and omissions of ENRIGHT were within the course and scope of his agency for Defendant ENRIGHT FINANCIAL and/or Kaiden and at all times relevant

herein, ENRIGHT was acting under the supervision, direction and control of and with the express and implied authorization of the shareholders, officers, compliance officers, directors, registered principals and other management level officials of ENRIGHT FINANCIAL or Kaiden.

20.   Defendant HARBOUR INVESTMENTS, INC. ["HARBOUR"] is a duly organized Wisconsin corporation and is a securities broker-dealer and member of the National Association of Securities Dealers which is based in Madison, Wisconsin who in the improper manner alleged herein offered and sold, _inter alia_, Towers Notes.   TERRANCE P. JANKE ["JANKE"] was a stockbroker employed by HARBOUR who, in the improper manner alleged herein, recommended and sold $50,000.00 worth of note(s) to DONALD B. KIEY.  The acts and omissions of JANKE were within the course and scope of his agency for Defendant HARBOUR and at all times relevant herein, JANKE was acting under the supervision, direction and control of and with the express and implied authorization of the shareholders, officers, compliance officers, directors, registered principals and other management level officials of HARBOUR.

21.   Defendant HARLAND FINANCIAL SERVICES CORP. ["HARLAND"] is a duly organized New York corporation and is a securities broker-dealer and member of the National Association of Securities Dealers which is based in New York, New York who in the improper manner alleged herein offered and sold, _inter alia_, Towers Notes.   JEFFREY G. LEVY ["LEVY"] was a stockbroker employed by HARLAND who, in the improper manner alleged herein, recommended and sold $35,000.00 worth of note(s) on or about June 12, 1991 and $30,000.00 worth of note(s) on or about April 14, 1992 to ALAN M. NIRENBERG.  The acts and omissions of LEVY were within the course and scope of his agency for Defendant HARLAND and at all times relevant herein, LEVY was acting under the supervision, direction

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
17202 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

and control of and with the express and implied authorization of the shareholders, officers, compliance officers, directors, registered principals and other management level officials of HARLAND.

22. Defendant KURZ-LIEBOW & COMPANY, INC. ["KURZ-LIEBOW"] is a duly organized New York corporation and is a securities broker-dealers and member of the National Association of Securities Dealers which is based in New York, New York who in the improper manner alleged herein offered and sold, inter alia, Towers Notes. A registered representative employed by KURZ-LIEBOW recommended and sold $150,000.00 worth of note(s) to JEROME M. FELDMAN and STEVEN L. FELDMAN. Defendant HERBERT SARAGA ["SARAGA"] was a stockbroker employed by KURZ-LIEBOW who, in the improper manner alleged herein, recommended and sold $25,000.00 worth of note(s) in or about 1990 to DEBRA MCENEANY. Defendant JACQUES SARTISKY ["SARTISKY"] was a stockbroker employed by KURZ-LIEBOW who, in the improper manner alleged herein, recommended and sold $50,000.00 worth of note(s) to NORMAN EISNER. Defendant GERALD CORAGGIO, listed as Defendant Jerry Corragio in the complaint and first amended complaint, was a stockbroker employed by KURZ-LIEBOW who, in the improper manner alleged herein, recommended and sold $26,000.00 worth of note(s) on or about September 11, 1989 to GARY MEDWED and JEANNE MEDWED. The acts and omissions of SARAGA, SARTISKY, AND CORAGGIO were within the course and scope of their agency for Defendant KURZ-LIEBOW and at all times relevant herein, SARAGA, SARTISKY, and CORAGGIO were acting under the supervision, direction and control of and with the express and implied authorization of the shareholders, officers, compliance officers, directors, registered principals and other management level officials of KURZ-LIEBOW.

- 13 -

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

23.  Defendant I DO ENTERPRISES, INC. ["I DO"], dba GENEVA INVESTMENT GROUP, is a duly organized Illinois corporation and is a securities broker-dealer and member of the National Association of Securities Dealers which is based in Geneva, Illinois who in the improper manner alleged herein offered and sold, _inter alia_, Towers notes. Defendant MICHAEL D. OLESEN ["OLESEN"] was a stockbroker employed by GENEVA who, in the improper manner alleged herein, recommended and sold $75,000.00 worth of note(s) to FRED D. PANEPUCCI.  The acts and omissions of OLESEN were within the course and scope of their agency for Defendant I DO and at all times relevant herein, OLESEN was acting under the supervision, direction and control of and with the express and implied authorization of the shareholders, officers, compliance officers, directors, registered principals and other management level officials of I DO.

24.  Defendant GILL AND ASSOCIATES, INC., is a duly organized Colorado corporation and is a securities broker-dealer and member of the National Association of Securities Dealers which is based in Denver, Colorado who in the improper manner alleged herein offered and sold, _inter alia_, Towers Notes. Defendant TED GILL ["GILL"] was a stockbroker employed by GILL AND ASSOCIATES, INC. who, in the improper manner alleged herein, recommended and sold $250,000.00 to CARROLL V. SORELLE and $10,000.00 worth of note(s) to C.V. SORELLE & COMPANY, a Colorado corporation.  The acts and omissions of GILL were within the course and scope of his agency for Defendant GILL AND ASSOCIATES, INC. and at all times relevant herein, GILL was acting under the supervision, direction and control of and with the express and implied authorization of the shareholders, officers, compliance officers, directors, registered

principals and other management level officials of GILL AND ASSOCIATES, INC.

25.    Defendant HALPERT & CO. ["HALPERT"], formerly HALPERT, OBERST & COMPANY, is a duly organized New Jersey corporation and is a securities broker-dealer and member of the National Association of Securities Dealers which is based in Millburn, New Jersey who in the improper manner alleged herein offered and sold, <u>inter alia</u>, Towers Notes. Defendant NANCY LYNN BARRETT ["BARRETT"] was a stockbroker employed by HALPERT who, in the improper manner alleged herein, recommended and sold $100,000.00 worth of note(s) to STELIO MANGIOLA. Jeffrey A. Ullman ["Ullman"] was a stockbroker employed by HALPERT who, in the improper manner alleged herein, recommended and sold $75,000.00 worth of note(s) to JOHN P. CUTLER and BARBARA L. CUTLER. MICHAEL GOLDSTEIN ["GOLDSTEIN"] was a stockbroker employed by HALPERT who, in the improper manner alleged herein, recommended and sold $200,000.00 worth of note(s) to DOUGLAS FAUSER and DALE FAUSER. Alan Gudz ["Gudz"] was a stockbroker employed by HALPERT who, in the improper manner alleged herein, recommended and sold $35,000.00 worth of note(s) to ISRAEL GARTNER and RUTH NIEMCZYK and $35,000.00 worth of note(s) to ISRAEL GARTNER and NATHAN REINER. Daniel Lennon ["Lennon"] was a stockbroker employed by HALPERT who, in the improper manner alleged herein, recommended and sold $44,000.00 worth of note(s) to MONTCLAIR INVESTMENT CO., a New Jersey corporation and $90,000.00 worth of note(s) to JONAS STULMAN. Scott Margolis ["MARGOLIS"] was a stockbroker employed by HALPERT who, in the improper manner alleged herein, recommended and sold $100,000.00 worth of note(s) to HARVEY PERETZ. ALAN HALPERT was a stockbroker employed by HALPERT who, in the improper manner alleged herein, recommended and sold $100,000.00 worth of note(s) to STEVE RUBENSTEIN. Allen Rosenberg

- 15 -

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
17702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-8817

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

1  ["Rosenberg"] was a stockbroker employed by HALPERT who, in the improper

2  manner alleged herein, recommended and sold $25,000.00 worth of note(s)

3  to PAULINE SCHAFER; $25,000.00 worth of note(s) to MARTIN DOLIN and

4  JOAN DOLIN; and $400,000.00 worth of note(s) to WILSHIRE ASSOCIATES.

5  Sean Davis ["Davis"] is a stockbroker employed by HALPERT who, in the

6  improper manner alleged herein, recommended and sold $36,000.00 worth

7  of note(s) on or about September 9, 1992 and $20,000.00 worth of note(s)

8  on or about January 27, 1993 to GARY HAMILTON.  Barry Lippman ["Lippman"]

9  was a stockbroker employed by HALPERT who, in the improper manner alleged

10  herein, recommended and sold $30,000.00 worth of note(s) on or about

11  August 28, 1992 to CHARLOTTE BARON.  MICHAEL J. PETRUCELLI ["PETRUCELLI"]

12  was a stockbroker employed by HALPERT who, in the improper manner alleged

13  herein, recommended and sold $75,000.00 worth of note(s) on or about

14  November 2, 1992 to A.Q.L. DECORATING CO., INC. - ESOP and $35,000.00

15  worth of note(s) on or about November 21, 1992 to JEANETTE ZIEFLE.

16  MATHEW COHEN was a stockbroker employed by HALPERT who, in the improper

17  manner alleged herein, recommended and sold $15,000.00 worth of note(s)

18  on or about November 30, 1992 to HARRY and BERYLLE SHAPIRO.  The acts

19  and omissions of BARRETT, Ullman, GOLDSTEIN, Gudz, Lennon, Margolis,

20  ALAN HALPERT, Davis, LIPPMAN, PETRUCELLI, MATHEW COHEN and Rosenberg

21  were within the course and scope of their agency for Defendant HALPERT

22  and at all times relevant herein, BARRETT, Ullman, GOLDSTEIN, Gudz,

23  Lennon, Margolis, ALAN HALPERT, Davis, LIPPMAN, PETRUCELLI, MATHEW COHEN

24  and Rosenberg were acting under the supervision, direction and control

25  of and with the express and implied authorization of the shareholders,

26  officers, compliance officers, directors, registered principals and

27  other management level officials of HALPERT.  Plaintiffs are informed

28  and believe that Defendants ALAN HALPERT, JAY R. OBERST, PATRICK J.

TIEDEMANN, PETRUCELLI and LINDA D. PYNAPPEL are owners and/or registered principals and/or Vice-President and/or control persons and/or and alter-egos of HALPERT, and said Defendants encouraged and/or authorized and/or assisted and/or participated in and ratified the wrongful conduct alleged herein and are directly and secondarily liable for the acts and omissions of HALPERT and its agents, representatives, and employees as alleged herein.

26.    Defendant JINCO LEASING CORP. ["JINCO"], dba JINCO FINANCIAL CORP., is a duly organized Colorado corporation and is a securities broker-dealer and member of the National Association of Securities Dealers which is based in Denver, Colorado who in the improper manner alleged herein offered and sold, <u>inter alia</u>, Towers Notes. Defendant WAYNE MORRISON ["MORRISON"] was a stockbroker employed by JINCO who, in the improper manner alleged herein, recommended and sold $50,000.00 worth of note(s) on or about June 23, 1992 to STEVEN H. JOHNSON. The acts and omissions of MORRISON were within the course and scope of his agency for Defendant JINCO and at all times relevant herein, MORRISON was acting under the supervision, direction and control of and with the express and implied authorization of the shareholders, officers, compliance officers, directors, registered principals and other management level officials of JINCO.

27.    Defendant KITTLAUS COMPANY, is a duly organized corporation and is a securities broker-dealer and member of the National Association of Securities Dealers which is based in Chicago, Illinois who in the improper manner alleged herein offered and sold, <u>inter alia</u>, Towers Notes. Defendant KARL KITTLAUS ["KITTLAUS"] was a stockbroker employed by KITTLAUS COMPANY who, in the improper manner alleged herein, recommended and sold $100,000.00 worth of note(s) on or about November

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

13, 1992 to HOWARD S. ALLEN, Trustee of the HOWARD S. ALLEN TRUST U/A DTD 09/16/80 and $50,000.00 worth of note(s) to RUSSELL A. REUTER and JUDITH A. REUTER.  The acts and omissions of KITTLAUS were within the course and scope of his agency for Defendant KITTLAUS COMPANY and at all times relevant herein, KITTLAUS was acting under the supervision, direction and control of and with the express and implied authorization of the shareholders, officers, compliance officers, directors, registered principals and other management level officials of KITTLAUS COMPANY.

28.   Defendant M.E. METZLER ORGANIZATION, INC. ["METZLER, INC."] is a duly organized Missouri corporation and is a securities broker-dealer and member of the National Association of Securities Dealers which is based in St. Louis, Missouri who in the improper manner alleged herein offered and sold, _inter alia_, Towers Notes.  Defendant MICHAEL COURTE ["COURTE"] was a stockbroker employed by METZLER, INC. who, along with Defendant MILTON E. METZLER, recommended Towers Notes.  COURTE recommended and sold $100,000.00 worth of note(s) on or about September 30, 1991 to PAUL E. MEIER, Trustee of the EXCEL BOTTLING CO. PENSION PLAN; $100,000.00 worth of note(s) on or about March 26, 1992 to PAUL E. MEIER, Trustee of the PAUL E. MEIER TRUST, which has been transferred to the EDWARD & CATHERINE MEIER IRREVOCABLE INSURANCE TRUST of which PAUL E. MEIER is Trustee; and $100,000.00 worth of note(s) on or about September 21, 1990 to PAUL E. MEIER, Trustee of the EDWARD J. MEIER REVOCABLE LIVING TRUST.  The acts and omissions of COURTE and MILTON E. METZLER were within the course and scope of their agency for Defendant METZLER, INC. and at all times relevant herein, COURTE and MILTON E. METZLER were acting under the supervision, direction and control of and with the express and implied authorization of the shareholders,

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

officers, compliance officers, directors, registered principals and other management level officials of METZLER, INC.

29.  Defendant MONETA FINANCIAL SERVICES ["MONETA"] is a duly organized corporation and is a securities broker-dealer and member of the National Association of Securities Dealers which is based in Hauppauge, New York who in the improper manner alleged herein offered and sold, _inter alia_, Towers Notes.  Defendants FREDERICK ELIASSEN ["ELIASSEN"] and PETER SPANIOL ["SPANIOL"] were stockbrokers employed by MONETA who, in the improper manner alleged herein, recommended and sold $25,000.00 worth of note(s) on or about September 12, 1991 to BRENDA L. PECK, Trustee of the DETRAE ENTERPRISES, INC. PENSION PLAN; $25,000.00 worth of note(s) on or about October 28, 1992 to BRENDA L. PECK AKA BRENDA L. BRADY; and $62,500.00 worth of note(s) on or about July 28, 1990 and $50,000.00 worth of note(s) on or about September 21, 1991 to JOHN RUGGIERO.  Defendant GARY BALUMAS ["BALUMAS"] was a stockbroker who was employed by MONETA who, in the improper manner alleged herein, recommended and sold $25,000.00 worth of note(s) on or about March 16, 1990, $37,500.00 worth of note(s) on or about March 16, 1992, and $25,000.00 worth of note(s) on or about October 20, 1992 to HERBERT B. JENKINS.  The acts and omissions of ELIASSEN, SPANIOL, and BALUMAS were within the course and scope of their agency for Defendant MONETA and at all times relevant herein, ELIASSEN, SPANIOL, and BALUMAS were acting under the supervision, direction and control of and with the express and implied authorization of the shareholders, officers, compliance officers, directors, registered principals and other management level officials of MONETA.

30.  Defendant PENSIONS FOR BUSINESS, INC. ["PENSIONS"] is a duly organized New York corporation and is a securities broker-dealer and

- 19 -

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

member of the National Association of Securities Dealers which is based in New York, New York who in the improper manner alleged herein offered and sold, <u>inter alia</u>, Towers Notes. A registered representative employed by PENSIONS recommended and sold $50,000.00 worth of note(s) on or about October 5, 1991 to SYDNEY P. JARKOW. The acts and omissions of the stockbroker were within the course and scope of his agency for Defendant PENSIONS and at all times relevant herein, the stockbroker was acting under the supervision, direction and control of and with the express and implied authorization of the shareholders, officers, compliance officers, directors, registered principals and other management level officials of PENSIONS.

31. Defendant PROFESSIONAL BUSINESS CONSULTANTS ["PBC"] is a duly organized Illinois corporation and is a securities broker-dealer and member of the National Association of Securities Dealers which is based in Oakbrook, Illinois who in the improper manner alleged herein offered and sold, <u>inter alia</u>, Towers Notes. Defendant DAVID J. WELLEHAN ["WELLEHAN"] was a stockbroker employed by PBC who, in the improper manner alleged herein, recommended and sold $100,000.00 worth of note(s) to AURELIO M. CACCOMO. The acts and omissions of WELLEHAN were within the course and scope of his agency for Defendant PBC and at all times relevant herein, WELLEHAN was acting under the supervision, direction and control of and with the express and implied authorization of the shareholders, officers, compliance officers, directors, registered principals and other management level officials of PBC.

32. Defendant R.G. DICKINSON & CO. ["DICKINSON"] is a duly organized Iowa corporation and is a securities broker-dealer and member of the National Association of Securities Dealers which is based in Denver, Colorado who in the improper manner alleged herein offered and

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

sold, _inter alia_, Towers Notes. Defendant THOMAS M. LOBAUGH ["LOBAUGH"] was a stockbroker employed by DICKINSON who, in the improper manner alleged herein, recommended and sold $35,000.00 worth of note(s) on or about September 27, 1991 to ARTHUR M. KRILL, Trustee of the THE KRILL CO.; and $30,000.00 worth of note(s) on or about August 10, 1991 to HENRY C. LOCKLAR and ALLENE K. LOCKLAR. Defendant BOB BUCHER ["BUCHER"] was a stockbroker employed by DICKINSON who, in the improper manner alleged herein, recommended and sold $100,000.00 worth of note(s) on or about February 28, 1992 to RICHARD D. URWILLER.  The acts and omissions of LOBAUGH and BUCHER were within the course and scope of their agency for Defendant DICKINSON and at all times relevant herein, LOBAUGH and BUCHER were acting under the supervision, direction and control of and with the express and implied authorization of the shareholders, officers, compliance officers, directors, registered principals and other management level officials of DICKINSON.

33.  Schneider Securities, Inc. ["Schneider"] is a duly organized Colorado corporation and is a securities broker-dealer and member of the National Association of Securities Dealers which is based in Denver, Colorado who in the improper manner alleged herein offered and sold, _inter alia_, Towers Notes. Defendants SCOTT S. MCGOUGH ["MCGOUGH"] and JOHN SULLIVAN ["SULLIVAN"] were stockbrokers employed by Schneider who, in the improper manner alleged herein, recommended and sold $125,000.00 worth of note(s) to MICHAEL A. JOHNSON.  Defendant BARBARA KELLEY ["KELLEY"] was a stockbroker employed by Schneider who, in the improper manner alleged herein, recommended and sold $50,000.00 worth of note(s) to DONALD M. SWEAZY.  The acts and omissions of MCGOUGH, SULLIVAN and KELLEY were within the course and scope of their agency for Schneider and at all times relevant herein, MCGOUGH, SULLIVAN and KELLEY were

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
1270 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

1  acting under the supervision, direction and control of and with the

2  express and implied authorization of the shareholders, officers,

3  compliance officers, directors, registered principals and other

4  management level officials of Schneider.

5      34.    Defendant SINE QUA NON is a duly organized New York corporation

6  and is a securities broker-dealer and member of the National Association

7  of Securities Dealers which is based in New York, New York who in the

8  improper manner alleged herein offered and sold, _inter alia_, Towers

9  Notes.  Defendant JAY C. BUITENKENT ["BUITENKENT"] was a stockbroker

10 employed by SINE QUA NON who, in the improper manner alleged herein,

11 recommended and sold $50,000.00 worth of note(s) on or about July 28,

12 1987 to JUDITH S. LEE. Defendant JIMMY OZMER ["OZMER"] was a stockbroker

13 employed by SINE QUA NON who, along with BUITENKENT, in the improper

14 manner alleged herein offered and sold $60,000.00 worth of note(s) to

15 BETTE CHAPLIN.  Plaintiff GEORGE O. CHAPLIN, is the Executor of the

16 ESTATE OF CHARLES W. & BETTE J. CHAPLIN.  The acts and omissions of

17 BUITENKENT and OZMER were within the course and scope of their agency

18 for Defendant SINE QUA NON and at all times relevant herein, BUITENKENT

19 and OZMER were acting under the supervision, direction and control of

20 and with the express and implied authorization of the shareholders,

21 officers, compliance officers, directors, registered principals and

22 other management level officials of SINE QUA NON.  Defendant ETON

23 SECURITIES CORPORATION ["ETON"] is a securities broker-dealer and member

24 of the National Association of Securities Dealers which is based in

25 New York, New York who in the improper manner alleged herein offered

26 and sold, _inter alia_, Towers Notes. Plaintiffs are informed and believe

27 that ETON is a duly organized New York corporation. Defendant MONVEST

28 SECURITIES, INC. ["MONVEST"] is securities broker-dealer and member

- 22 -

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

of the National Association of Securities Dealers which is based in New York, New York who in the improper manner alleged herein offered and sold, _inter alia_, Towers Notes. Plaintiffs are informed and believe that MONVEST is a duly organized New York corporation. ANDREW REEGEN ["REEGEN"] was a stockbroker employed by MONVEST. Plaintiffs are informed and believe that MITCHELL BRATER ["BRATER"] was president of ETON and that REEGEN was C.E.O. of MONVEST. Plaintiffs are informed and believe that BRATER and REEGEN also recommended and sold the $50,000.00 worth of note(s) on or about July 28, 1987 to JUDITH S. LEE. The acts and omissions of BRATER and REEGEN were within the course and scope of their agency for Defendants ETON and MONVEST and at all times relevant herein, BRATER and REEGEN were acting under the supervision, direction and control of and with the express and implied authorization of the shareholders, officers, compliance officers, directors, registered principals and other management level officials of ETON and MONVATH.

35.    Defendant T.L. SMITH SECURITIES ["T.L. SMITH"] is a duly organized Texas corporation and is a securities broker-dealer and member of the National Association of Securities Dealers which is based in Fort Worth, Texas who in the improper manner alleged herein offered and sold, _inter alia_, Towers Notes.    Defendant FRED R. LEFEVRE ["LEFEVRE"] was a stockbroker employed by T.L. SMITH who, in the improper manner alleged herein, recommended and sold $100,000.00 worth of note(s) to WILLIAM G. and JACQUELINE LEONARD. Defendant RONALD IRVING RAPPAPORT was a stockbroker employed by T.L. SMITH.    LEFEVRE and RONALD IRVING RAPPAPORT recommended and sold $51,299.00 worth of note(s) on or about November 12, 1992 to EDWARD RAPPAPORT in an IRA/SEP account; $42,404.00 worth of note(s) on or about July 14, 1992 to I. PAUL RAPPAPORT, TRUSTEE FBO PAUL RAPPAPORT SELF EMPLOYED MONEY PURCHASE PLAN 12/23/87; $14,137.00

- 23 -

worth of note(s) on or about July 14, 1992 to I. PAUL RAPPAPORT, TRUSTEE FBO PAUL RAPPAPORT SELF EMPLOYED PROFIT SHARING PLAN 12/23/87; $28,942.37 worth of note(s) on or about November 20, 1992 to RANDYE RAPPAPORT in an IRA account; and $12,500.00 worth of note(s) on or about December 1, 1992 to RICHARD WORTH.   The acts and omissions of LEFEVRE and RONALD IRVING RAPPAPORT were within the course and scope of their agency for Defendant T.L. SMITH and at all times relevant herein, LEFEVRE and RONALD IRVING RAPPAPORT were acting under the supervision, direction and control of and with the express and implied authorization of the shareholders, officers, compliance officers, directors, registered principals and other management level officials of T.L. SMITH. Plaintiffs are informed and believe that Defendant LEFEVRE is an owner and/or registered principal and/or control person and/or and alter-ego of T.L. SMITH and said Defendant encouraged and/or authorized and/or assisted and/or participated in and ratified the wrongful conduct alleged herein and are directly and secondarily liable for the acts and omissions of T.L. SMITH and its agents, representatives, and employees as alleged herein. Defendant SOUTHWEST SECURITIES, INC. ["SOUTHWEST"] is a duly organized Delaware corporation and is a securities broker-dealer and member of the National Association of Securities Dealers which is based in Dallas, Texas which Plaintiffs are informed and believe in the improper manner alleged herein offered and sold, _inter alia_, Towers Notes to these Plaintiffs through an affiliation with T.L. SMITH.   Plaintiffs are further informed and believed that LEFEVRE and RONALD IRVING RAPPAPORT were affiliated with SOUTHWEST and that the acts and omissions of LEFEVRE and RONALD IRVING RAPPAPORT were within the course and scope of their agency for Defendant SOUTHWEST at all times relevant herein, LEFEVRE and RONALD IRVING RAPPAPORT were acting under the supervision, direction

- 24 -

and control of and with the express and implied authorization of the shareholders, officers, compliance officers, directors, registered principals and other management level officials of SOUTHWEST.

36.  Defendant TRANSCO SECURITIES ["TRANSCO"] is a duly organized corporation and is a securities broker-dealer and member of the National Association of Securities Dealers who in the improper manner alleged herein offered and sold, _inter alia_, Towers Notes.  ED SCHUCHARDT ["SCHUCHARDT"], listed in the complaint and first amended complaint as Defendant Ed Schuhart, was a stockbroker employed by TRANSCO who, in the improper manner alleged herein, recommended and sold $45,000.00 worth of note(s) to ILA MAY HOLMES.  The acts and omissions of SCHUCHARDT were within the course and scope of his agency for Defendant TRANSCO and at all times relevant herein, SCHUCHARDT was acting under the supervision, direction and control of and with the express and implied authorization of the shareholders, officers, compliance officers, directors, registered principals and other management level officials of TRANSCO.

37.  Defendant U.S. SECURITIES CLEARING CORP. ["U.S. SECURITIES"], listed in the complaint and first amended complaint as Defendant US Clearing West, Seattle, is a duly organized Oregon corporation and is a securities broker-dealer and member of the National Association of Securities Dealers which is based in Seattle, Washington who in the improper manner alleged herein offered and sold, _inter alia_, Towers Notes.  Defendant DON JONES ["JONES"] was a stockbroker employed by U.S. SECURITIES who, in the improper manner alleged herein, recommended and sold $50,000.00 worth of note(s) to KENNETH C. GRIFFITH and JOAN P. GRIFFITH.  The acts and omissions of JONES were within the course and scope of his agency for Defendant U.S. SECURITIES and at all times

relevant herein, JONES was acting under the supervision, direction and control of and with the express and implied authorization of the shareholders, officers, compliance officers, directors, registered principals and other management level officials of U.S. SECURITIES.

38.   Defendant VAUTRAIN NELSON LEFEVRE ENDSLEY AND DURHAM, INC. ["VAUTRAIN"] is a duly organized Texas corporation and is a securities broker-dealer and member of the National Association of Securities Dealers which is based in Fort Worth, Texas who in the improper manner alleged herein offered and sold, _inter alia_, Towers notes.  Kirby Endsley ["Endsley"] was a stockbroker employed by VAUTRAIN who, along with Defendant LEFEVRE, who was a stockbroker employed by T.L. SMITH, recommended and sold $150,000.00 worth of note(s) to STUART J. HEPBURN and BETTY F. HEPBURN.  The acts and omissions of Endsley and LEFEVRE were within the course and scope of his agency of VAUTRAIN and at all times relevant herein, Endsley and LEFEVRE were acting under the supervision, direction and control of and with the express and implied authorization of the shareholders, officers, compliance officers, directors, registered principals and other management level officials of VAUTRAIN.  Plaintiffs are informed and believe that LYNN VAUTRAIN is an owner and/or registered principal and/or control person and/or and alter-ego of VAUTRAIN and said Defendant encouraged and/or authorized and/or assisted and/or participated in and ratified the wrongful conduct alleged herein and are directly and secondarily liable for the acts and omissions of VAUTRAIN and its agents, representatives, and employees as alleged herein.

39.   In the case of every Plaintiff, the stockbrokers/brokerage houses/financial advisors:

- 26 -

a.   held themselves out as experts in financial matters who stood ready to provide expertise financial advice on safe investments,

b.   solicited the purchase of the Towers Notes in the context of a brokerage house/investor or financial advisor/advisee relationship, and,

c.   caused such Plaintiff to reasonably place their complete trust and reliance upon the skill, advice and expertise of the stockbroker/brokerage house/financial advisor so as to create a confidential, fiduciary and trustee relationship.

40.   Plaintiffs contend that a fiduciary and confidential relationship existed between them and the stockbroker/brokerage house/financial advisor herein.  In the context of such a confidential and fiduciary relationship, the basis of liability in this case is that the stockbroker/brokerage house/financial advisor and the Defendants had a duty to:

a.   conduct reasonable due diligence into background of the Towers enterprise and its principals and the safety of the Towers Notes and reveal the results of such due diligence to potential investors,

b.   discover and disclose reasonably obtainable adverse public information regarding the Towers Notes or the Towers enterprise and its principals,

c.   to undertake reasonable action to ascertain the truth or falsity of the highly positive representations made by the Towers promoters,

d.   to ascertain whether or not the sale of the Towers Notes violated the registration requirements of the State and Federal governments,

e.    to ascertain whether or not a particular investor met the minimum net worth requirements for the purchase of the Towers Notes,

f.    to ascertain whether or not the Towers Notes were suitable for a particular investor and refrain from recommending and selling the same to unsuitable investors, and

g.    to refrain from selling the Towers Notes in violation of State and Federal registration requirements.

41.    Plaintiffs contend that for the many reasons set forth in greater detail below, the Defendants breached these duties by recommending and selling, or permitting or causing the recommendation and sale, of Towers Notes to Plaintiffs, giving rise to the right to relief under the various legal theories alleged herein.

### AN OUTLINE OF THE TOWERS PONZI SCHEME

42.    Until it went bankrupt in March of 1993, Towers Financial Corporation ("Towers") was a Delaware corporation headquartered in New York, New York which operated through subsidiaries such as Towers Credit Corporation, Towers Collection Services, Inc., Towers Healthcare Receivables Funding Corporation, Towers Healthcare Receivables Funding Corporation II, Towers Healthcare Receivables Funding Corporation III, Towers Healthcare Receivables Funding Corporation IV, and Towers Healthcare Receivables Funding Corporation V.  Towers also conducted its own operations, including the purchase and collection of certain accounts receivable.

43.    Towers Credit Corporation ("Towers Credit") was a Towers subsidiary whose business was the purchase of commercial accounts receivable and collection of same for its own account.

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

44.   Towers Collection Services, Inc. ("Towers Collection") is a Towers subsidiary whose business was the collection of past-due accounts receivable for third parties on a contingency basis.

45.   Towers Healthcare Receivables Funding Corporation ("THRFC I"), Towers Healthcare Receivables Funding Corporation II ("THRFC II"), Towers Healthcare Receivables Funding Corporation III ("THRFC III"), Towers Healthcare Receivables Funding Corporation IV ("THRFC IV"), and Towers Healthcare Receivables Funding Corporation V ("THRFC V") (collectively, the "Healthcare Subsidiaries") are five Towers subsidiaries, incorporated in Delaware, whose business was the factoring of healthcare accounts receivable and which offered and sold five issues of bonds to institutional investors in the total amount of approximately $196 million.

46.   In March 1993, Towers and its subsidiaries, including Towers Credit, Towers Collection, and the Healthcare Subsidiaries, filed for bankruptcy and are currently operating under the protection of chapter 11 of the Bankruptcy Code.

47.   Steven Hoffenberg a/k/a Barry Cohen, a resident of New York, New York, was Chief Executive Officer, President, and Chairman of the Board of Directors of Towers and President of Towers Credit and the Towers subsidiary TFC Funding Corporation.

48.   Professional Business Brokers, Inc. and the Hoffenberg Family Trust are entities through which Hoffenberg controlled the majority of Towers' common stock.  Hoffenberg is the president of Professional Business Brokers, Inc., which owns over 70 percent of Towers' outstanding stock.  Professional Business Brokers, Inc. is owned by the Hoffenberg Family Trust, of which Hoffenberg is the trustee. a)   The Towers ponzi scheme was designed to and did (a) deceive the investing public,

- 29 -

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

including the Plaintiffs regarding Towers and Towers' business, management, financial condition, and future prospects; (b) allow worthless securities to be sold during the period of the fraudulent scheme of Defendants; (c) bring Towers' securities onto the market which were not entitled to be marketed; and (d) cause Plaintiffs to purchase the Notes.

49.    Towers began offering Notes to the public in or about 1986. These sales were not registered as required under state blue sky laws or other registration laws.  Moreover, the offering materials employed to effect the sales were grossly misleading.  These initial Note sales attracted the attention and prompted serious concerns on the part of the Securities and Exchange Commission ("SEC") and various state securities officials.

50.    On August 4, 1988, the SEC sued Hoffenberg for offering and selling unregistered securities. A Final Consent Judgment of Permanent Injunction and Order (the "SEC Injunction") was entered on November 16, 1988 as to Hoffenberg prohibiting him from further violating section 5 of the Securities Act.

**The Offer And Sale Of Unregistered Securities.**

51.    Beginning in about February 1989, Hoffenberg and various brokerage houses, including the Defendants herein, proceeded to sell over $245 million in Notes in violation of the blue sky laws and in direct violation of the SEC Injunction.

52.    The Notes were offered and sold to United States residents pursuant to five offering memoranda dated February 15, 1989, February 20, 1990, October 1, 1990, October 15, 1991, and March 23, 1992, respectively (the "Domestic Memoranda") and to non-United States

residents pursuant to a so-called Explanatory Memorandum (collectively, the "Offering Memoranda").

53.   The Notes offered to United States residents had maturity terms of one or two years and paid interest at annual rates ranging from 12 to 14 percent for one-year Notes and from 14 to 16 percent for two-year Notes.  Although these Notes were purportedly for sale in units of $50,000 or $100,000, Towers routinely sold them in fractions of such units.

54.   The Notes offered to non-United States residents had maturity terms ranging from one to seven years and paid interest at annual rates ranging from 14 to 16 1/2 percent.  Although these Notes were purportedly for sale in units of $100,000, Towers routinely sold them in fractions of such units.

55.   The Notes were offered and sold to residents of at least 40 states.  Many of these investors are unsophisticated and live on fixed incomes.  The offer and sale of the Notes was effected through a general solicitation.    Towers  sold  the  Notes  in  violation  of  blue  sky registration requirements.

**Fraud In The Offer And Sale of Securities.**

56.   The Notes were sold through fraudulent means.  In soliciting investments in the Notes, Steven Hoffenberg, Professional Business Brokers, Inc., the Hoffenberg Family Trust, and the Financial Advisor and Broker-Dealer Defendants disseminated the offering Memoranda, Towers "annual reports," and a variety of uniform and standardized written offering materials for the purpose of inducing investors to believe the Notes were sound, legitimate investment vehicles and Towers was a prosperous, dynamic and growing concern.   In fact, Towers was a fraudulent enterprise which sustained itself through the infusion of

- 31 -

cash raised through the fraudulent solicitation of investments from Noteholders and others.

57.   Towers' business, the collection and financing of accounts receivable, was secondary in importance to Towers' primary objective, which was to provide a vehicle for the personal enrichment of Hoffenberg and other participants in the fraud, at any cost.  To sustain a steady flow of new cash, Towers contrived to create through various means an image of Towers and its investments which was entirely false.  Throughout the period of the fraudulent scheme of Defendants, Towers lost substantial sums through mismanagement, the diversion of funds to the personal benefit of Hoffenberg and others, and the generally unprofitable character of Towers' business activity.

58.   Towers made payments to investors which were denominated "interest" payments, when in fact those payments merely represented the return to investors of a portion of their principal or improperly diverted proceeds of offerings of other Towers securities, specifically, "Bonds" sold by Towers.

59.   To mislead the public and law enforcement and regulatory agencies with jurisdiction over financial matters, Steven Hoffenberg, Professional Business Brokers, Inc., and the Hoffenberg Family Trust committed perjury, falsified business records, distributed sham financial statements, misled state and federal officials, and otherwise engaged in a pattern of criminal conduct.  Hoffenberg was the subject of grand jury indictments in the Northern District of Illinois and the Southern District of New York in April 1994, charging a variety of crimes, including criminal securities fraud in connection with the sale of the Notes.

60.   Hoffenberg was Chief Executive Officer, President, and Chairman of the Board of Directors of Towers and President of Towers Collection and TFC Funding Corporation.  Hoffenberg directly owns 10 percent of Towers' common stock and additionally owns or controls 61.4 percent of the stock through Professional Business Brokers, Inc., a corporation owned by the Hoffenberg Family Trust, of which he is the trustee.  Through Professional Business Brokers, Inc., the Hoffenberg Family Trust received a percentage of Towers' gross revenues ostensibly pursuant to an agreement stemming from the 1986 sale of TFC Funding Corporation and Towers Credit to Towers.

61.   Hoffenberg founded Towers and was intimately involved in its daily operations.  Hoffenberg participated in the drafting of the offering materials, including the Offering Memoranda and the Annual Reports, and signed messages to investors which were prominently featured in the Annual Reports.

62.   Hoffenberg participated in the negotiation of contracts for Towers, and in negotiations and communications with state and federal regulatory authorities. Hoffenberg exercised control over Towers' bank accounts, including the escrow accounts established with the proceeds of the Note offerings and the special interest-bearing, lock-box accounts established with the proceeds of the foreign Note offerings. He further participated in the preparation of Towers' financial statements, including determination of the amount of "excess profits" appropriated by Towers from the offering proceeds.  Hoffenberg directed and had complete knowledge of the scheme to defraud investors.

### The Offering Memoranda

63.   The Offering Memoranda represented that Towers would use the funds it raised from Note investors to buy certain types of current

- 33 -

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

accounts receivable or loan portfolios for collection by Towers for its own account. The Offering Memoranda stated that Towers typically would acquire accounts receivable at a price of up to 95 percent of their face value, earn a minimum 5 percent "factoring fee" for each receivable collected, and reinvest the proceeds of collection in additional receivables. The Offering Memoranda further stated that Towers expected to compound its "factoring fee" up to six times per year through this purchase and collection of receivables and reinvestment of the collection proceeds in more receivables.

64.    In fact, Towers bought few, if any, current accounts receivables with the Note proceeds, buying instead past due, largely uncollectible accounts receivable or loan portfolios at prices substantially lower than 95 percent of the face value of the receivables or portfolios.

65.    Instead of using Note investors' funds to purchase accounts receivable, Towers used the money to pay, among other things, interest on the Notes, Towers' expenses, and professional fees. In addition, because the accounts receivable which Towers owned or had contracted to collect on behalf of others were of such poor quality, Towers' cash flow was insufficient to meet its needs and obligations. Thus, Towers resorted to such measures as retaining collection proceeds instead of remitting them to its clients and diverting millions of dollars from the Healthcare Subsidiaries to itself.

66.    In addition, the Offering Memoranda stated that the Notes would be fully collateralized by accounts receivable purchased with the Note proceeds and having a total face value substantially in excess of the value of the Notes sold. In reality, the Notes were severely

- 34 -

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
1270Z VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

undercollateralized, if collateralized at all, because of the low face amount and quality of accounts receivable purchased by Towers.

67.    The Domestic Memoranda, pursuant to which Notes were sold to United States residents, stated that Note proceeds would be deposited in "special escrow" accounts at Chase Manhattan Bank and would remain in such accounts to the extent the funds were not used to purchase accounts receivable or pay certain specified expenses.  The Explanatory Memorandum, pursuant to which Notes were sold to non-United States residents, stated that Towers would keep Note proceeds in special interest-bearing accounts and that proceeds from the collection of accounts receivable purchased with Note proceeds would be deposited under a "lock box" system which Towers had arranged with Chase Manhattan Bank.

68.    As of June 30, 1991, however, although Towers had purchased few accounts receivable with the $124 million it had raised from selling Notes, Towers' bank accounts at Chase Manhattan Bank contained at most $5 million.  As of June 30, 1992, when Towers was reporting Notes outstanding in the total amount of $198 million, its reported cash and cash equivalents amounted to only $32 million.

69.    The Offering Memoranda described the terms purportedly governing Towers' ability to withdraw funds from the "special" accounts at Chase Manhattan Bank to use for its own purposes.  According to the Offering Memoranda, "Excess Profit Amounts" could be withdrawn and used for any corporate purpose only if the face value of accounts receivable purchased with Note proceeds combined with the proceeds from the collection of these receivables exceeded the value of the Notes sold. Although the former never exceeded the latter, Hoffenberg routinely caused the "special" bank accounts to be emptied of Note proceeds.

- 35 -

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

Despite being designated a "Special Escrow Account" in the Offering Memoranda, the accounts maintained by Towers with Chase Manhattan Bank were simple checking accounts to which Towers had unfettered access.

**The Annual Reports**.

70.    The promotional materials distributed to Plaintiffs included Towers' Annual Reports for fiscal years 1988, 1989, 1990 and 1991. Among other things, these Annual Reports contained false and misleading financial statements which falsely reported that Towers was a financially successful and growing company, when, in fact, each year it was incurring very substantial and increasing losses.

71.    For fiscal year 1988, Towers reported net income of $1.4 million, when it had actually incurred a loss of approximately $29 million; total assets of $76 million, when it actually had assets of no greater than $48 million; and shareholders' equity of $6.5 million (restated in 1990 as approximately $5.7 million), when it actually had a deficit of approximately $24.9 million.

72.    For fiscal year 1989, Towers reported net income of $3.5 million, when it actually had incurred a loss of over $28 million; total assets of $122 million, when it actually had assets of no greater than $21 million; and shareholders' equity of $10.3 million (restated in 1990 as approximately $9.4 million), when it actually had a deficit of approximately $53 million.

73.    For fiscal year 1990, Towers reported net income of $3.9 million, when it had actually incurred a loss of approximately $49 million; total assets of $195 million, when it actually had assets of no greater than $29 million or less; and shareholders' equity of $13.4 million, when it actually had a deficit of over $101 million.

74.  For fiscal year 1991, Towers reported net income of $4.3 million, when it actually had incurred a loss of over $47 million; total assets of $513 million, when it actually had assets of no greater than $250 million; and shareholders' equity of $20.1 million, when it actually had a deficit of over $130 million.

75.  For fiscal year 1992, Towers reported net income of $5.4 million, when it actually had incurred a loss of over $95 million; and shareholders' equity of $25.5 million, when it had a deficit of over $242 million.  Thus, by fiscal year 1992, Towers was overstating its shareholders' equity by over $267 million, but the actual inaccuracy was even greater because this figure does not include an allowance for doubtful accounts.

**Towers Accounting Practices.**

76.  Among the bases for these false and misleading financial statements were figures generated by improper accounting procedures such as the following:

1.   **Southwestern Bell Portfolio.**

77.  On or around June 30, 1988, the Towers subsidiary Towers Collection paid less than $300,000 for a portfolio of past-due accounts receivable from Southwestern Bell Yellow Pages, Inc. ("Southwestern Bell") having a face value of approximately $28 million (the "Southwestern Bell portfolio").  Before selling the portfolio to Towers Collection, Southwestern Bell had charged off all of the balances as worthless after private collection agencies, including Towers, had failed to collect on them.  To date, Towers Collection has collected less than $1 million on the Southwestern Bell portfolio.

78.  For fiscal year 1988, Towers improperly recorded income of $19 million from collecting on the Southwestern Bell portfolio, resulting

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

- 37 -

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

in the overstatement of Towers' income for fiscal year 1988 by that amount. Towers also improperly recorded the Southwestern Bell portfolio as valued at $28 million instead of valuing the portfolio at its acquisition cost, causing an overstatement of Towers' fiscal year 1988 accounts receivable by $28 million (less the cost of the portfolio).

2.    **Federal Deposit Insurance Company**

79.    Towers also inflated the value of its accounts receivable and its income from collecting such receivables by recording loan portfolios originated from banks liquidated by the Federal Deposit Insurance Company ("FDIC loan portfolios") at values far above their acquisition costs and improperly recognizing income from collecting on the FDIC loan portfolios.

80.    In fiscal year 1990, Towers paid less than $500,000 for various FDIC loan portfolios having a face value of over $50 million.  These portfolios contained nonperforming, distressed loans.  For fiscal year 1990, Towers improperly recorded the portfolios as accounts receivable having a value of $24 million and recorded income of $24 million from the portfolios.  In fiscal year 1990, however, Towers had received virtually no cash proceeds from these FDIC loan portfolios.

81.    In fiscal year 1991, Towers paid approximately $30,000 for additional distressed FDIC loan portfolios having a face value of $6 million.  Towers improperly recorded the portfolios as accounts receivable having a value of $6 million and recorded income of $6 million from the portfolios.

82.    As a result of Towers' improper recording of FDIC loan portfolios in fiscal years 1990 and 1991, accounts receivable for fiscal year 1991 were overstated by $13 million.  In fiscal year 1991, Towers had collected less than $1 million on the FDIC loan portfolios.

- 38 -

83.    Towers falsely stated in its 1991 Annual Report: "Income on RTC/FDIC loans is recognized as they are collected." In fact, Towers recorded income in much larger amounts than Towers ever collected in fiscal year 1990 or 1991.

3.    **Bank Of America Portfolio.**

84.    In or around January 1991, Towers paid less than $200,000 for a portfolio of credit-card balances from Bank of America having a face value of approximately $16 million (the "Bank of America portfolio"). Before selling the portfolio to Towers, Bank of America had charged off all of the balances as worthless after other collection agencies had failed to collect on them. In fiscal year 1992, Towers collected little or no amounts on the Bank of America portfolio.

85.    For fiscal year 1991, Towers improperly recorded income of $4 million from the Bank of America portfolio, causing Towers' reported income for fiscal year 1991 to be overstated by that amount. Towers also improperly recorded the Bank of America portfolio as accounts receivable valued at $4 million instead of valuing the portfolio at its acquisition cost, causing an overstatement of Towers' fiscal year 1991 accounts receivable by $4 million (less the cost of the portfolio).

4.    **Investment In United Diversified.**

86.    In its financial statements for fiscal year 1989 through fiscal year 1991, Towers further inflated its assets by improperly recording Towers' investment in United Diversified Corporation ("UDC"), which conducted business through its subsidiaries, Associated Life Insurance Company ("Associated Life") and United Fire Insurance Company ("United Fire").

- 39 -

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

87.   Towers acquired a controlling interest in UDC in 1987 for $3 million, and Hoffenberg became Chairman of the Boards of Directors of UDC, United Fire, and Associated Life.

88.   Towers improperly recorded the purchase cost of $3 million as an investment on its financial statements from fiscal year 1989 through fiscal year 1991.   By fiscal year 1989, however, the UDC investment had become seriously impaired and by no later than fiscal year 1991 posed a threat of liability exceeding the purchase cost.

89.   In July 1968, the Illinois Director of Insurance (the "Insurance Director") obtained an order placing UDC, United Fire, and Associated Life in conservation. On February 14, 1989, Hoffenberg agreed in a signed stipulation to the entry of an order liquidating Associated Life and United Fire.  The liquidation order was based on Hoffenberg'S agreement that both companies were insolvent.  On March 3, 1989, when the liquidation order was entered, Hoffenberg lost all control of the companies, and Towers lost any expectation of a return on the investment.

90.   On or about June 27, 1991, Hoffenberg and others were charged by the Insurance Director with having used the insurance companies as an instrumentality of Towers, and, among other things, with having transferred investments and cash of the companies into various Hoffenberg-controlled brokerage accounts.  These transfers began in November 1987 and continued through July 1988.  In the civil action Schacht v. Hoffenberg, No. 91-C-4024 (N.D. Ill.), the Insurance Director alleged that Defendants had caused UDC, Associated Life, and United Fire to suffer damages in excess of $4 million, become insolvent, and be placed in conservation and/or liquidation.  The complaint sought, among other things, treble damages under RICO.  Towers settled this

- 40 -

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

and related actions in 1992 upon Towers' agreement to pay $3.5 million as part of the settlement.

91.   It was materially false and misleading for Towers to continue to record its investment in the insurance companies at cost in its financial statements for fiscal years 1989, 1990, and 1991 without any reserve to reflect both the impairment of the investment or the contingency of Towers' potential liability.   Towers' assets were overstated by at least $3 million in each of those years as a result of Towers' failure to record an appropriate allowance for uncollectible accounts.

92.   Furthermore, Towers did not disclose to potential or actual Note investors the liquidation and conservation proceedings against UDC, Associated Life, and United Fire or the filing of the action Schacht v. Hoffenberg against Hoffenberg.

    5.   **Collection Receivables**

93.   The Towers subsidiary Towers Collection collected past-due accounts receivable for third parties ("collection receivables") for a fee contingent on collection.   Towers Collection paid no money for collection receivables and was obligated to remit all collection proceeds to its clients, except for a certain percentage of the proceeds which Towers Collection retained as its fee.

94.   Towers Collection improperly recorded fee income from collection receivables before performing any significant collection activities and collecting any proceeds.   Because of this improper recognition of fee income, Towers' reported fee income for fiscal year 1989, $36 million, was overstated by at least $10 million.   For fiscal year 1990, Towers reported total fee income of $56 million, of which $22 million was fee income improperly recognized by Towers Collection

- 41 -

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7780
FACSIMILE (619) 259-6817

in the above manner. For fiscal year 1991, Towers reported total fee income of $97 million, of which $56 million was fee income improperly recognized by Towers Collection.

95. Towers' Annual Reports for fiscal years 1988, 1989, and 1990 state that Towers recognized its fees as 30 percent of the amount expected to be collected and that it expected to collect 30 percent of all collection receivables. This was the basis for Towers' accounting rule known as the "30/30 Rule."

96. In no year, however, had Towers collected even close to 30 percent of all of its collection receivables. As of June 30, 1993, for example, Towers had collected only 22 percent of the accounts receivable assigned to Towers for collection in 1988; only 18 percent of the accounts receivable assigned in 1989; 13 percent of the receivables assigned in 1990; 14 percent of the receivables assigned in 1991; and 11 percent of the receivables assigned in 1992.

97. Towers also improperly recorded the collection receivables as Towers' own assets. The collection receivables were not owned by Towers Collection, however, but by Towers Collection's clients, who had assigned them to Towers Collection for collection on their behalf. Not only could Towers Collection not properly record the receivables as assets, but also Towers Collection recorded them at amounts substantially in excess of their value, resulting in an overstatement of Towers' assets of over $200 million by the end of fiscal year 1992.

98. For fiscal year 1989, Towers reported accounts receivable of $112 million, of which approximately $101 million consisted of collection receivables improperly recorded as owned by Towers. For fiscal year 1990, Towers reported accounts receivable of $177 million of which approximately $142 million consisted of improperly recorded

collection receivables. For fiscal year 1991, Towers reported accounts receivable of $437 million, of which $246 million consisted of improperly recorded collection receivables.

### CULPABILITY OF THE DEFENDANTS

99.    The Towers fraud could not have been achieved as against the Plaintiffs herein without the culpable participation of the Defendants. They provided the essential link to Plaintiffs which enabled Towers to consummate its unregistered offering and sale of securities, as set forth above.

100. Towers purportedly sold the Notes pursuant to a purported exemption from registration under purported exemptions to state blue sky laws. However, the offering of the Notes was in fact, not exempted under state blue sky laws. The Defendants contributed to the offering's noncompliance with blue sky laws, and thus the selling of unregistered securities by, inter alia, the following acts and commissions:

(a)    Distributing or causing the distribution of, the offering memoranda received by them from Towers to Plaintiffs.

(b)    Offering and selling, or causing the offer and sale of, the Notes to Plaintiffs through a "cold-call" telemarketing campaign;

(c)    Failing to appropriately screen Plaintiffs to see if they were proper investors;

(d) Failing to determine whether or not Plaintiffs had prior relationships with Towers;

(f)    Failing to conduct adequate due diligence on the Towers Notes;

(g) Falsely representing, or causing the false representation, that the Towers Notes were insured and highly rated by Duff & Phelps Credit Rating Company. In fact, the Towers Notes were never rated by

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

1  Duff & Phelps.   Duff & Phelps only rated bonds issued by a Towers
2  affiliate and the bond rating had no bearing whatsoever on the safety
3  of the Towers Notes;

4          (h) Falsely representing the Towers Notes as low risk, when
5  in fact, the investment was high risk;

6          (i) Failing to disclose that the Towers Notes were sold in
7  violation of State and Federal registration laws; and

8          (j) Failing to disclose that Hoffenberg and Towers had been
9  the subject of a cease and desist order by the SEC in connection with
10  the illegal sale of the Towers Notes.

11          (i) Failing to disclose that the SEC had sent out letters
12  to the Defendants in the fall of 1991 informing the Defendants that
13  it was investigating the activities of Towers.

14          (k)   Failing to disclose that Towers was involved in litigation
15  arising out of its acquisition of the common stock of United Diversified
16  Corporation, UDC, (an insurance holding company).  Towers alleged that
17  it was defrauded and damaged as a result of material misrepresentations
18  by the seller.  The Illinois Insurance Director had placed UDC into
19  a conservatorship and petitioned for liquidation of UDC.  This followed
20  the liquidation petitions of two of UDC's subsidiaries.  The Director
21  also filed a petition to compel Hoffenberg to turn over assets allegedly
22  belonging to UDC and the insurance companies totaling $2.9 million.

23          (l)   Failing to disclose that in fiscal 1990, Towers reserved
24  approximately $3 million for unpaid taxes and penalties from fiscal
25  1989.  During fiscal 1989, Towers paid no federal income taxes for that
26  year.

27

28

LAW OFFICES OF TIMOTHY G. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(m)   Failing to disclose that Ben Barnes, one of the outside directors of Towers, filed a voluntary petition with the U.S. Bankruptcy Court in December 1987, under Chapter 7 of the U.S. Bankruptcy Code.

(n)   Failing to disclose that the Louisiana Commissioner of Securities was conducting an investigation into whether Towers securities were sold in violation of the Louisiana Securities Laws and Regulations.

(o)   Failing to disclose that Towers had been the subject of a cease and desist order by the State of California concerning the sale of unregistered securities within the state.

(p)   Selling to Plaintiffs when Plaintiffs were not accredited investors or did not have sufficient knowledge and experience to constitute proper non-accredited investors under Regulation D and when over 35 non-accredited investors had already been sold Towers Notes as part of the same offering in violation of Regulation D.

(q)   Such other facts as shall be shown according to proof.

101. Because the offering of the Notes was a public offering and because the Defendants received substantial commissions from Towers based on the sale of the Notes, Defendants were underwriters in connection with the offering of the Notes.

102. The offering of the Notes also failed to comply with California blue sky laws because it was not a limited offering and was sold to more than 35 non-accredited investors (investors with net assets of less than $1 million at the time of their purchase or annual income of less than $200,000 in each of the two years prior to their purchase or combined income with their spouse of less than $300,000 in each of the two years prior to their purchase or not-for-profit organizations, defined benefit plans and trust with assets of less than $5 million

- 45 -

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6617

at the time of their investment).  In furtherance of the noncompliance with such blue sky laws, the Financial Advisors:

(a)   Sold to non-accredited investors without taking actions to determine the total number of non-accredited investors; and

(b) Caused the Notes to be offered and sold by means of general solicitation.

103. The Defendants were under a duty, at all relevant times, to investigate the propriety of the foregoing claimed exemptions from registration.  Because of, _inter alia_, the massive solicitation, the size of the offering, the large number of Financial Advisors involved and their presumed knowledge of the securities laws, the Defendants knew, or were reckless in not knowing that the offering did not comply with the claimed exemptions or was not likely to be in compliance therewith.

104. The Defendants were under a duty of due diligence to investigate the bona fides of the Towers investment.  In conducting any reasonable due diligence investigation, the Financial Advisors Defendants knew or should have known, _inter alia:_

(a)   that, in fact, Towers had an extensive history of fraud, securities law violations, consumer fraud allegations, persistent allegations of past diversions of funds from affiliates and subsidiaries, unpaid court judgments, prior bankruptcies and other conduct inconsistent with a creditworthy company, and that state and federal investigations and prosecutions were then underway involving Hoffenberg, Towers, and/or its affiliates;

(b)   that Hoffenberg had previously caused at least four companies he had led to seek bankruptcy protection and that Moody's Investors, Service had declined on this basis to issue a rating for

one of the issues of securities when approached to do so by Towers in 1991;

(c)    that Towers as servicer had failed to provide detailed financial reports describing the receivables on a monthly basis as would otherwise have been done if the operation was legitimate;

(d)    that Towers was improperly purchasing from providers receivables which served as collateral for the bonds but were not owned by the providers free from any prior sale, lien, encumbrance or security interest, and, thus, not of adequate strength; and

(e)    that in fact Towers was insolvent and that Towers had abrogated the terms of the indenture agreement with the bond trustee, Shawmut National Bank, a result of which was the genuine and material risk of default on the bonds.

(f)    that Towers was being investigated by the SEC for violations of the federal securities laws as of the fall of 1991.

(g)    that Hoffenberg had a long history of improper and or illegal conduct.

105.  The Defendants should not have recommended the Towers Notes to Plaintiffs as low risk investments in light of such actual or imputed knowledge.

106.  Regardless of the conduct engaged in, or the degree of knowledge attributable to the Financial Advisors, the Defendants are strictly liable to the Plaintiffs under federal and state registration laws, because of the sale of unregistered securities.

107.  As set forth above, because the offering of the Notes was in reality a public offering, the Defendants were statutory underwriters and had all of the legal duties and responsibilities of underwriters with respect to an offering of securities.  Prior to offering the Notes

- 47 -

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

for sale and soliciting their customers to purchase the Notes, the Defendants had a duty to conduct a due diligence investigation with respect to the Notes and the offering.

108. Adequate investigation by any Broker-Dealer would have revealed that the offering memoranda and Towers' financial statements contained the misrepresentations and omissions of material fact alleged herein.

109. The Defendants solicited sales of the Notes by means of the false and misleading offering memoranda and financial statements and by means of other written sales materials (including sales and marketing brochures and form prospecting letters) and oral statements to prospective purchasers.

110. The written and oral sales representations made by the Defendants contained the same misrepresentations and omissions as the offering memoranda, and these written and oral representations were in all material respects consistent with the offering memoranda. Further, any oral statements made by the Defendants were part of a uniform and standardized sales presentation, which was based upon written sales and marketing brochures, including sales materials which were distributed internally to the Defendants only, for use in making oral representations to prospective purchasers.

111. The Defendants, in soliciting purchases of the Notes, were motivated by a desire to serve their own financial interests. The Defendants were promised substantial commissions on sales of the Notes and therefore, had every incentive to maximize the sales volume.

112. As a result of the foregoing, the Defendants have breached their duties to Plaintiffs, inducing Plaintiffs to purchase the Notes, to their detriment, and are liable therefor.

- 48 -

113. In making their investment decisions, Plaintiffs relied on the express and implied representations by the registered representatives or agents of the brokerage houses and financial advisors that the Towers Notes were bona fide, low risk securities which were legally being sold under the applicable state and federal securities laws, and Plaintiffs relied upon the reputations of the Defendants. As a direct and proximate result thereof, Plaintiffs were damaged. Had Plaintiffs known of the material adverse information not disclosed by the Defendants, they would not have purchased the Notes.

114. Plaintiffs each purchased Towers Notes upon the advice and recommendation of the registered representatives and agents of the brokerage house and financial advisors Defendants sued herein. Prior to the purchase of the Notes, each Plaintiff informed the Defendants with whom they were dealing that in substance, such Plaintiff did not want any risky or speculative investments and was only interested in conservative investments. The Defendants impliedly or expressly represented to such Plaintiff that they, and each of them, possessed expert education, skill, experience, and knowledge necessary to provide expert and competent advice, counselling, guidance and ancillary services in connection with personal financial planning and the provision of services in connection with the analysis, acquisition, and management of investment products suitable for Plaintiff's needs. Each such Defendants also impliedly or expressly represented to the client Plaintiff that thorough advance due diligence research and investigation into Towers Financial and Hoffenberg had been conducted by the Financial Advisor and Broker-Dealer Defendant to establish conclusively that the Notes were a sound, prudent, low risk investment. Each Plaintiff placed trust and confidence in the particular Financial Advisor and Broker-

- 49 -

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

Dealer Defendant as an expert financial planner and relied upon the Defendants' due diligence, research and investigation in Towers Financial, Steven Hoffenberg and the Notes and followed the recommendation of the Financial Advisor and Broker-Dealer to purchase the Notes.

115. In actuality, the Towers Notes were not low or no risk, but were illegally sold sham investments which were part of a Ponzi scheme. On or about March 29, 1993, Towers Financial filed bankruptcy. Plaintiffs gradually learned of the true facts regarding Towers at various times as these facts gradually were disseminated through the news media and other sources of information and the actual date of discovery is unique for each Plaintiff, but in all cases, was after the date of the bankruptcy due to the gradual nature in which information spread regarding Towers true nature. Due to the fiduciary relationship that existed between Towers and the Defendants on the one hand, and Plaintiffs on the other hand, Plaintiffs were entitled to rely upon the truth and honesty of Towers and the Defendants and in so doing, Plaintiffs reasonably could not have discovered the ponzi scheme sooner.

116. Plaintiffs would not have purchased the Towers Note investments if Plaintiffs had known that the Notes were sold illegally as part of a large scale Ponzi scheme or that the Notes were not low risk, bona fide conservative investments.  Unbeknownst to Plaintiffs, in fact, each of these investments presented a very high degree of risk of loss of principal and high fees and commissions and other and further features which rendered the investments highly unsuitable for Plaintiffs and in conflict with the express representations of the Defendants and with the express goals stated by Plaintiffs.  The Defendants, and each of them, knew that the investments were ill-advised for Plaintiffs.  Despite

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

their knowledge, Defendants, and each of them, recommended the investments to Plaintiffs as conservative.  The falsity of the representations and the unsuitability of their recommendations and the injury which would foreseeably befall Plaintiffs were well known to the Defendants, yet Defendants, and each of them, authorized and ratified the false representations and recommendations despite such knowledge.

117.  As a direct and proximate result of the aforementioned conduct of Defendants, and each of them, Plaintiffs have suffered the loss of the amount they invested in the Towers Notes, plus interest at the legal rate according to proof.

118.  As a further direct and proximate result of the aforementioned conduct of Defendants, and each of them, and from their realization that they were defrauded, Plaintiffs have suffered anxiety, worry, mental and emotional distress, and other incidental damages and out-of-pocket expenses, including attorneys' fees, all to Plaintiffs' general damage in a sum to be determined at the time of trial, but in any event, a sum in excess of the jurisdictional requirements of the above-entitled court.

119.  Defendants' conduct as described herein was done with a conscious disregard for Plaintiffs' rights and with the intent to vex, injure or annoy Plaintiffs, such as to constitute oppression, fraud or malice under California Civil Code 3294, entitling Plaintiffs to punitive damages in an amount appropriate to punish or set an example of Defendants.

120.  Furthermore, Defendants' conduct described herein was done with a conscious disregard for Plaintiffs' rights and with the intent to vex, injure or annoy Plaintiffs, thereby entitling Plaintiffs to prejudgment interest on all sums awarded at the time of trial in an

- 51 -

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

amount to be determined in accordance with California Civil Code 3291.

121. The acts and omissions of Defendants were engaged in with fraud, oppression and malice so as to justify an award of punitive damages according to proof.

## TOLLING OF STATUTE OF LIMITATIONS

122. On February 9 or 10, 1993, representative Plaintiffs who had purchased Towers Notes filed <u>Gold, et al. v. Towers Financial Corporation, Inc. et al.</u>, which was later consolidated for all purposes with other similar class action lawsuits in the case of <u>In Re Towers Financial Corporation Noteholders Litigation</u>, United States District Court, Southern District of New York, Master File No. 93 Civ. 0810 (WK) ["class action"]. Plaintiffs herein were ignorant of the filing of this action at the time that it was filed and did not hear about it until substantially later.

123. The "CONSOLIDATED AMENDED CLASS ACTION COMPLAINT" ["CACAC"] in the class action was filed on or about June 7, 1993. The CACAC named as a class of Defendants the brokerage houses that sold the Towers Notes, naming several brokerage houses as representative Defendants. This served to toll statute as to the brokerage house Defendants named herein even if they were not expressly named in the class action complaint. <u>In re: Activision Securities Litigation</u>, 1986 WL 15339 (N.D.Cal.); <u>Appleton Electric Company v. Graves Truck Line</u>, 635 F.2d 603 (1980); <u>In re: Bestline Products Securities and Antitrust Litigation</u>, 1975 WL 386 (S.D.Fla.).

124. On or about June 10, 1994, the class plaintiffs filed the "SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT" ["SCACAC"]. The brokerage house Defendants herein were specifically named as a Defendants in the SCACAC.

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-0817

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

125. The federal class action was certified for settlement purposes August of 1995. Plaintiffs did not opt out at that time, but remained class members. The case was again certified for settlement purposes in August of 1996. This notice also notified the class that the broker-dealers were going to be dismissed without prejudice. See page 11, paragraph 43. The notice stated that class members would be free to pursue claims against the brokerage houses. The notice expressly stated counsel's opinion that the statute of limitations was not a bar to the case. Plaintiffs did not opt out of this second certification. They could not have opted out as to the brokerage houses, since this was not an option.

126. This action has been filed because there was little or no interest on the part of class counsel in pursuing the brokerage house defendants due to their lack of financial ability to pay judgment, not due to lack of commonality of issues. See exhibit "3," judges transcript at page 93, line 21 through page 94 through line 16. There has been no determination as to certification or denial of certification as to the brokerage houses. The judge desired that class members be apprised of the need to act promptly to protect their rights. Page 97, line 13 through page 98, line 7. This implies tolling until dismissal.

127. In this case, the plaintiffs did rely upon the pendency of the class action. Indeed, they actually received money from the class action. They did not opt out of the class action. The federal class action served to toll statute of limitations as to the Defendant brokerage houses even though it was dismissed as to those defendants prior to any ruling on certification as to them. Diaz, et al. v. Trust Territory of the Pacific Islands, et al., 876 F.2d 1401, 1408 (1989). Tosti v. City of Los Angeles, 754 F.2d 1485 (1985).

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
17702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

128. The SCACAC was recently voluntarily dismissed without prejudice as to the brokerage house defendants, with the presiding Federal District Court Judge specifically making reference to the tolling of the statute of limitations as to absent class members' claims against brokerage houses.  [Court Transcript at page 93, lines 4 through 16].  This dismissal became final on december 11, 1996.

129. Plaintiffs contend that all applicable statutes of limitations were tolled as to the brokerage house Defendants in this action by the filing of the CACAC.  The class action was certified on several occasions for settlement purposes and otherwise.  Plaintiffs are all class members in the class action.  The claims stated in the class action as against the Defendant brokerage houses are factually identical to those stated herein.  However, the CACAC was voluntarily dismissed by the Plaintiffs therein in the fall of 1996 as to the Defendant brokerage houses on the basis that the Defendant brokerage houses lacked the financial resources to pay any large judgment obtained for the class.  The statute of limitations on Plaintiffs's claims as against the Defendant brokerage houses were tolled during the pendency of the class action.

130. Plaintiffs contend that under In re: Activision Securities Litigation, 1986 WL 15339 (N.D.Cal.);  Appleton Electric Company v. Graves Truck Line, 635 F.2d 603 (1980);   In re: Bestline Products Securities and Antitrust Litigation, 1975 WL 386 (S.D.Fla.); Diaz, et al. v. Trust Territory of the Pacific Islands, et al., 876 F.2d 1401, 1408 (1989); Tosti v. City of Los Angeles, 754 F.2d 1485 (1985) the pendency of the class action tolled the statute of limitations as to the Defendant brokerage houses for all of the causes of action contained herein and that this action is timely in any event under a four year statute of limitations as to the pendent state causes of action for

- 54 -

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

breach of fiduciary duty, breach of contract, and breach of trust as established by <u>San Filippo v. Griffiths</u> (1975) 51 Cal. App. 3d 640, 645, 124 Cal. Rtpr. 399, 402; <u>Kornbau v. Evans</u> (1944) 66 Cal. App. 2d 677, 683-684, 152 P. 2d 651, 655;  <u>Robuck v. Dean Witter & Co., Inc.</u> (1996) 649 F.2d. 641, 645 n. 2;   <u>Davis & Cox, et al. v. Summa Corporation, et al.</u> (1985); 751 F.2d 1507, 1520, n. 3;  <u>Stalberg v. Western Title Ins. Co.</u> (1991) 230 Cal. App. 3d 1223, 1230, 282 Cal. Rptr. 43 [Citing <u>Sanchez v. South Hoover Hospital</u> (1976) 18 Cal. 3d 93, 101, 132 Cal. Rptr. 657];  <u>Schneider v. Union Oil of California</u> (1975) 6 Cal. App. 3d 987, 86 Cal. Rptr. 399; <u>David K. Lindemuth Co., et al. v. Shannon Financial Corporation, et al.</u> (1987) 660 F.Supp. 261, 264-265;  <u>Federal Savings and Loan Insurance Corporation, et al. v. Kidwell, et al.</u> (1989) 716 F.Supp 1315, 1318 and <u>Federal Deposit Insurance Corporation, et al. v. McSweeney, et al.</u> (1992) 976 F.2d 532, 535, n. 2. as Plaintiffs did not reasonably discover the facts of the misconduct of the Defendants until after Towers filed bankruptcy on or about March 29, 1993.

CLAIMS FOR RELIEF

First Cause Of Action
(Declaratory Relief)

131. Plaintiffs refer to and incorporate by reference herein each and every allegation contained above.

132. A present controversy exists between certain Plaintiffs and certain Defendants in that Plaintiffs are informed and believe the following:

a.    Defendants will seek to avoid liability for their fraud by pointing to adhesion contracts of indemnity, disclaimers allegedly signed or received by Plaintiffs in connection with the sale of the

securities in issue herein or other complicated formal documents associated with the offering of Towers Notes. Without admitting that they signed or received any such documents, Plaintiffs contend that such exculpatory documents are adhesion contracts are void or voidable, because use of such disclaimers to avoid liability for fraud violate public policy and Civil Code §1668 or that Plaintiffs did not receive actual or constructive notice of the fraud at issue herein by such documents or that the breach of fiduciary duty by Defendants vitiates such documents.

b.    Plaintiffs contend, and Defendants deny, that Plaintiffs are entitled to tolling of all applicable statutes of limitations as against the Defendants who were named as Defendants in the class action.

133. Plaintiffs require the Court to adjudicate these controversies and order declaratory relief as to these controversies.

### Second Cause Of Action
(For Violations of Section 10(b) of
the Exchange Act and Rule 10b-5(a), (b) and (c))

134. Plaintiffs refer to and incorporate by reference herein each and every allegation set forth above.

135. Defendants participated in the conception and/or implementation of the fraudulent scheme alleged herein, *i.e.*, to issue market and sell the Towers Notes by (i) engaging in devices, schemes and/or artifices to defraud; and (ii) engaging in acts, practices and a common course of business which operated as a fraud or deceit upon Plaintiffs in connection with their purchases of Towers Notes.

136. At all relevant times, the true nature of the Towers Notes and the risks associated with an investment in the Notes were fraudulently concealed from and/or misrepresented to Plaintiffs by defendants, each of whom participated in, controlled, approved and/or

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

acquiesced in the fraudulent acts, practices and courses of conduct complained of herein, including the making and/or dissemination of false and misleading statements to the investing public and/or state or federal governmental regulatory entities, as alleged herein.

137. Among these fraudulent acts, practices and courses of conduct were (1) the failure to disclose the fact that the investments were sold in violation of state and federal securities laws, (2) the true nature of the operations and finances of Towers and its subsidiaries (e.g., the Ponzi scheme detailed throughout the Complaint); (3) the failure to disclose the systematic and blatant violations of the controlling provisions of the Towers Bond Indentures, which foreseeably led the Trustee to declare a default on the Bonds, the resulting default on the Notes, and the collapse of the Ponzi scheme; (4) the making of false and/or deceptively incomplete statements to state and/or federal regulatory agencies or entities for the purpose and with the effect of improperly securing regulatory approval and/or exemptions from various registration requirements; and/or (5) the failure to correct the false and misleading statements to investors and/or regulators.

138. Defendants knew or were reckless in not knowing that, but for the fraudulent scheme described herein, the Towers Notes would not have been marketable or sellable, i.e., Defendants fraudulently created a market for the Notes.

139. Similarly, Defendants knew or recklessly disregarded that, but for their fraudulent scheme, as alleged herein, including Defendants, false and misleading statements to state and/or federal regulators, Defendants could not have secured either (1) regulatory approval for the issuance of the Notes and/or (2) exemptions from the registration requirements of the SEC and/or the states in which the

1   Notes were marketed and sold.  As a result, Defendants' fraudulent scheme

2   constituted a fraud on the regulatory process and/or the registration

3   process.

4

5       140.  Plaintiffs relied on the integrity of the market, the Offering

6   Memoranda, the regulatory process and/or the registration process in

7   deciding to purchase the Towers Notes insofar as they relied on the

8   fact that (1) the Notes were entitled to be marketed; (2) the Offering

9   Memoranda contained complete and accurate disclosures; (3) the Notes

10  were properly entitled to regulatory approval; and/or (4) the Notes

11  were properly entitled to an exemption from registration.

        141.  Defendants knew or recklessly disregarded that their acts

12  would wrongfully enable the Notes to be successfully issued, marketed

13  and sold; that Plaintiffs would rely on the integrity of the market,

14  the regulatory process and/or the registration process for the Notes

15  in deciding to purchase the Notes; that the Notes were not properly

16  entitled to be issued, marketed or sold; and that Plaintiffs would be

17  damages thereby.

18      142.  Had Plaintiffs known the material adverse information which

19  was not disclosed by Defendants to the investing public and/or

20  regulators, they would not have purchased the Notes.

21      143.  As a result of the wrongful conduct alleged herein, Plaintiffs

22  have suffered damages in an amount to be proven at trial.

23      144.  By reason of the foregoing, Defendants have violated Section

24  10(b) of the Exchange Act and Rule 10b-5(a), (b) and (c) promulgated

25  thereunder and Plaintiffs are entitled to damages in an amount to be

26  proven at trial.

27      145.  Plaintiffs were not aware of any facts constituting the

28  violations of Section 10(b) and Rule 10b-5 alleged herein i.e., that

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

the Notes were not entitled to (1) be marketed or sold; (2) regulatory approval or (3) exceptions from registration until, at the very earliest, December 1992, when Shawmut sent Notices of Default to each of the Healthcare Subsidiaries, upon Shawmut's receipt of Towers' 1992 Annual Report which gave the first public notice of Towers' and the Healthcare Subsidiaries, violations of the Indenture Covenants.  The class action tolling the statute of limitations in this case was commenced within one year of the date that Plaintiffs became aware of the facts constituting the violations alleged herein and within three years of the date Plaintiffs purchased their Notes.  As a result, the claims alleged in this Count were brought within the applicable statute of limitations.

<u>Third Cause Of Action</u>
(For Violation of Sections 12(1) Of The Securities Act)

146. Plaintiffs refer to and incorporate by reference herein each and every allegation set forth above.

147. Defendants were sellers and offeror of securities within the meaning of section 12(i) of the Securities Act, 15 U.S.C. § 77l(1).

148. Defendants, directly, or indirectly made use of means or instruments of transportation or communication in interstate commerce or of the mails to sell and offer to sell securities when no registration statement was filed or was in effect as to such securities when no exemption from registration was available.

149. Plaintiffs purchased the notes in the offering and at such time were innocent of all comparative negligence.

150. Plaintiffs seek to recover the full amount of consideration paid for said securities, with interest thereon, upon tender of such

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

1  securities, which tenders are hereby made, or in the alternative, seek

2  damages sustained as a result of the sale of such securities.

3       151. This claim under section 12(i) is brought on behalf of all

4  Plaintiffs who purchased Notes from the Selling Defendants on or after

5  February 9, 1992.

6                          Fourth Cause Of Action

7         (For Violation Of Sections 12(2) Of The Securities Act)

8       152. Plaintiffs refer to and incorporate by reference herein each

9  and every allegation set forth above.

10      153. Defendants, severally and in concert, directly and indirectly

11  participated in a continuous course of conduct, by the use of the mails,

12  wires, and other means and instrumentalities of communication and

13  transportation and interstate commerce, and offered for sale, sold and

14  were the proximate cause and substantial and necessary factors in the

15  sale of the Notes to the Plaintiffs, by means of written promotional

16  materials, oral communications, in violation of Section 12(2) of the

17  Securities Act.

18      154. The domestic offering memoranda contained untrue statements

19  of material facts, and omitted to state material facts necessary to

20  make the statements made not misleading, in light of the circumstances

21  under which they were made, as set forth above.

22      155. Plaintiffs accordingly seek to recover the full amount of

23  the consideration paid for those securities, together with interest

24  thereon upon tender of such securities, which tender is hereby made,

25  or in the alternative, seek damages sustained as a result of the sale

26  of such securities.

27                           Fifth Cause Of Action
                    (Violations of Section 15 of the Securities Act)
28                          Controlling Person Liability)

                                  - 60 -

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

156. Plaintiffs refer to and incorporate by reference herein each and every allegation set forth above.

157. Defendants are liable to Plaintiffs as controlling persons under Section 15 of the Securities Act for all the unlawful acts set forth herein which constituted violations of Sections 12(1) and (2) of the Securities Act because each such Defendant possessed, directly or indirectly, the power to influence and exercised the same, to direct the activities conducted by or attributable to the entities which they control.

158. By reason of the foregoing, Plaintiffs are entitled to damages from these Defendants in an amount to be proven at trial and such other and further relief as the Court deems proper.

**Sixth Cause Of Action**
(Violation of Section 20 of the Exchange Act
Controlling Person Liability)

159. Plaintiffs refer to and incorporate by reference herein each and every allegation set forth above.

160. The Defendants are liable to Plaintiffs as controlling persons under Section 20 of the Exchange Act for all the unlawful acts set forth herein which constituted violations of Section 10(b) of the Exchange Act because each such Defendant possessed, directly or indirectly, the power to influence and exercised the same, to direct the activities conducted by or attributable to the entities which they control in connection with the fraudulent plan and scheme alleged throughout this Complaint.

161. By reason of the foregoing, Plaintiffs are entitled to damages from these Defendants in an amount to be proven at trial and such other and further relief as the Court deems proper.

**Seventh Cause Of Action**

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

(Breach of Fiduciary Duty
And Breach of Trust Relationship Against All Defendants)

162. Plaintiffs refer to and incorporate by reference herein each and every allegation contained above.

163. Plaintiffs, having reasonably placed their trust and confidence in Defendants so as to create a confidential, fiduciary and trustee-beneficiary relationship, reasonably relied upon the misrepresentations, omissions and fraudulent recommendations of Defendants, as alleged above, to their damage. Defendants' acts, omissions, misrepresentations and concealments as alleged above in connection with the recommendation and sale of the Towers Notes constituted a breach of fiduciary duty and a breach of the duties owed by a trustee to a beneficiary, all proximately causing the injuries and damages alleged herein.

Eighth Cause Of Action
(Breach of Written Contract As Against
The Brokerage House Defendants Only)

164. Plaintiffs refer to and incorporate by reference herein each and every allegation contained above.

165. Plaintiffs and the Brokerage House Defendants entered into written account agreements prior to the time that the Defendants recommended and sold the Towers Notes to Plaintiffs. These written agreements contained, as implied terms, the covenant of good faith and fair dealing and the fiduciary obligations owed by a brokerage house to its customers. Plaintiffs for their part performed all of the terms and conditions of such written agreements.

166. Defendants' acts, omissions, misrepresentations and concealments as alleged above in connection with the recommendation and sale of the Towers Notes constituted a breach of the implied terms of the written

contracts between the parties, all proximately causing the injuries and damages alleged herein.

### Ninth Cause Of Action
(Sale of Unregistered Securities)

167. Plaintiffs refer to and incorporate by reference herein each and every allegation contained above.

168. The securities sold to Plaintiffs were required to be qualified under Corporations Code §§25111, 25112, or 25113 or exempted under Section 25100, et seq., but were not so qualified or exempted, and thus, the sale of the securities violated Corporations Code §25110 and/or Corporations Code §25503 or similar state blue sky laws.

169. That as a result of the above described acts, Defendants are liable to Plaintiffs, and Plaintiffs are entitled to, and hereby do, rescind the above securities purchases and seek restitution and damages.

### Tenth Cause Of Action
(Fraud in the Sale of Securities)

170. Plaintiffs refer to and incorporate by reference herein each and every allegation contained above.

171. The transactions alleged above constituted the offer and sale to Plaintiffs of securities through the making of oral or written untrue statements of material fact or the omission of material facts necessary in order to make statements, in light of the circumstances under which they were made, not misleading, all in violation of Corporations Code §§ 25401, 25501, 25504, 25504.1 and 25504.2 and/or other state blue sky laws.   Defendants are liable for such fraud either as direct perpetrators or as controlling persons or aiders and abettors.

172. That as a result of the above described acts, Defendants are liable to Plaintiffs, who are entitled to, and hereby do, rescind the

- 63 -

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7750
FACSIMILE (619) 259-6817

above described investments and seek restitution of the funds and damages.

173. That as a result of the above described acts, Defendants are liable to Plaintiffs, and Plaintiffs are entitled to, and hereby do, rescind the above securities purchases and seek restitution and damages.

Eleventh Cause Of Action<br>(Professional and Ordinary Negligence Against All Defendants)

174. Plaintiffs refer to and incorporate by reference herein each and every allegation contained above.

175. The misrepresentations, acts and omissions of the Defendants, and each of them, were professionally and ordinarily negligent, both in taking affirmative action to recommend and sell the Towers Notes to Plaintiffs, but also for failing to properly supervise the sales activities of employees and registered representatives involved in the sale of the investments to Plaintiffs, all so as to proximately cause the injuries and damages alleged herein.

176. Plaintiffs, having reasonably placed their trust and confidence in Defendants, and each of them, so as to create a fiduciary relationship, reasonably relied upon the intentional misrepresentations and omissions and negligent recommendations of Defendants and the negligent supervision of employees and registered representatives of Defendants as alleged herein. Defendants misrepresented the nature and quality of the recommended investments and knowingly placed Plaintiffs into unsuitable investments in order to earn a higher commission, with a reckless disregard for Plaintiffs' rights, and with full knowledge of the harm that would befall Plaintiffs as a result of their advice and false assurances.

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6617

177. The conduct of Defendants, and each of them, constituted negligence, either professional or ordinary, all proximately causing the injuries and damages alleged herein.

178. Plaintiffs were blamelessly ignorant of the true nature of such investments and the injuries that they had suffered until within the applicable statute of limitations for this action.

179. As a direct and proximate result of the aforementioned wrongful conduct of Defendants, and each of them, Plaintiffs have suffered investment losses for a total amount to be shown at the time of trial.

180. As a further direct and proximate result of the aforementioned conduct of Defendants, and each of them, and from their realization that they were defrauded, Plaintiffs have suffered anxiety, worry, mental and emotional distress, and other incidental damages and out-of-pocket expenses, including attorneys' fees, all to Plaintiffs' general damage in a sum to be determined at the time of trial, but in any event, a sum in excess of the jurisdictional requirements of the above-entitled court.

181. Defendants' conduct as described herein was done with a conscious disregard for Plaintiffs' rights and with the intent to vex, injure or annoy Plaintiffs, such as to constitute oppression, fraud or malice under California Civil Code § 3294, entitling Plaintiffs to punitive damages in an amount appropriate to punish or set an example of Defendants.

182. Furthermore, Defendants' conduct described herein was done with a conscious disregard for Plaintiffs' rights and with the intent to vex, injure or annoy Plaintiffs, thereby entitling Plaintiffs to prejudgment interest on all sums awarded at the time of trial in an amount to be determined in accordance with California Civil Code § 3291.

LAW OFFICES OF TIMOTHY C. KAREN
VILLA CORTINA, SUITE 100
17702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

LAW OFFICES OF TIMOTHY G. KAREN
VILLA CORTINA, SUITE 100
12702 VIA CORTINA
DEL MAR, CALIFORNIA 92014
TELEPHONE (619) 259-7790
FACSIMILE (619) 259-6817

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

1.   Economic damages, plus interest at the legal rate, together with general, special, compensatory, incidental, consequential, economic and/or treble damages as applicable to each particular cause of action as has been alleged according to proof;

2.   Judgments of rescission together with an award against each Defendant receiving money from Plaintiffs together with an award of general, special, compensatory, incidental and/or economic damages, and interest in a sum to be determined at the time of trial;

3. Declaratory relief, the imposition of a constructive or resulting trust and an accounting;

4. Punitive and exemplary damages in an amount appropriate to punish or set an example of Defendants;

5. Prejudgment interest on all damages awarded to Plaintiffs in an amount to be determined in accordance with California Civil Code §3291;

6.   Costs of suit; and

7.   For such other and further damages as the court deems proper.

Dated:  3|10|97          By: _____
                              Timothy G. Karen, Attorney
                              for Plaintiffs