USDC SCAN INDEX SHEET

















MEG   2/2/99   14:19

3:96-CV-01023   BRADLEY V. HOFFENBERG

*266*

*P/A.*

1   Timothy C. Karen SBN: 117071
2   Law Offices of Timothy C. Karen
    12702 Via Cortina, Suite 100
3   Del Mar, California 92014

4   Attorneys for Plaintiffs

**FILED**

JAN 29 1999

CLERK, U.S. DISTRICT CO.
SOUTHERN DISTR...
BY _mgomery_

5

6

7

8             **UNITED STATES DISTRICT COURT**

9

10      **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

11                    )   Case No. 96-1023-JM (JFS)

12   PAUL F. CLARK, SR., et al.,     )

13           Plaintiffs,    )   ~~━━━━━━~~ **POINTS AND**
                     )   **AUTHORITIES IN SUPPORT OF**
14         v.         )   **REQUEST FOR DEFAULT JUDGMENT**
                     )
15   ANDOVER SECURITIES, INC., et al. )

16          Defendants.    )   Date: March 1, 1999
                     )   Time: 10:30 a.m.
17                     )   Courtroom: 6 - The Honorable Jeffrey
                     )                    T. Miller
18                     )

19

20      Plaintiffs submit the following points and authorities in support of the request for default

21   judgment:

22

23

24

25

26

27

28

ORIGINAL

2466

1

## <u>TABLE OF CONTENTS</u>

2

I.  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

3

II.  BRIEF STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

4

5

III.  THE ALLEGATIONS OF THE SAC ARE  LEGALLY SUFFICIENT TO
ESTABLISH EACH OF THE CAUSES OF ACTION IN THE SAC  . . . . . . . . . . . . . 5

6

    A.  Plaintiffs Have Pleaded Facts Establishing That Defendants

7

       Committed Actual and Constructive Fraud and These Allegations
       Support Common Law and Statutory the Causes of Action Requiring

8

       Fraud . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

9

    B.  The Seventh Cause of Action For Breach of Fiduciary Duty

10

       is Properly Pleaded  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

11

    C.  Plaintiffs Have Properly Alleged that the Defendants Sold Plaintiffs

12

       Illegal, Unqualified and Unregistered Securities In Violation of State
       and Federal Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

13

    D.  Plaintiffs Have Met Their Pleading Burden In The Eleventh

14

       Cause Of Action for Negligence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

15

16

IV.  CLAIMANTS ARE ENTITLED TO STATUTORY SECURITIES
FRAUD DAMAGES AND THE "ALL DETRIMENT" STANDARD

17

OF RECOVERY, WHICHEVER IS LARGER.  . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

18

V.  CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

### Federal Cases

3

4

Arrington v. Merrill Lynch, Pierce, Fenner & Smith
(9th Cir. 1981) 651 F.2d 615, 621 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

5

City of San Jose v. Paine, Webber, Jackson & Curtis Inc.
6
(N. D. Cal. June 6, 1991) 1991 WL 352485, 1, 1991 U. S. Dist. LEXIS 8318 . . . . . . . . . . . . . 12, 15

7

Eaton v. Coal Par (S.D. Flor. 1984) 580 F. Supp. 572 . . . . . . . . . . . . . . . . . . . . . . . . 16

8

Hanley v. SEC (2d Cir. 1969) 415 F.2d 589 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

9

Hofmayer v. Dean Witter & Co. (N.D. Cal. 1978) 459 F. Supp. 733, 739 . . . . . . . . . . . . . . . . . 19
10

Keenan v. D.H. Blair & Company Inc. (S.D. N.Y. 1993) 838 F. Supp. 82 . . . . . . . . . . . . . 9, 10, 15
11

12    Komanoff v. Mabon, Nugent & Co. (1995) 884 F.Supp. 848 . . . . . . . . . . . . . . . . . . . . . . 18, 19

13    McDaniels v. Compania Minera Mar (D. Ari. 1981) 528 F. Supp. 152 . . . . . . . . . . . . . . . . . . . 17

14
NBW Commerical Paper v. FDIC (1992) 813 F. Supp. 7 . . . . . . . . . . . . . . . . . . . . . . . . . 17
15

16    Sanders v. John Nuveen & Co. (7th Cir. 1980) 619 F.2d 1222, 1227,
cert. denied, 450 U.S. 1005 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

17

TeleVideo Systems, Inc. v. Heidenthal (9th Cir. 1987) 826 F 2d 915 . . . . . . . . . . . . . . . . . . . . 2
18

19

### Federal Statutes

20    Section 12(1) Of The Securities Act of 1933, 15 U.S.C.A. Section 77l(1) . . . . . . . . . . . . . . . . . . 3

21    Section 12(2) Of The Securities Act of 1933 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

22    Section 15 of the Securities Act of 1933 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

23    Section 20 of the Exchange Act of 1933 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

24
Section 5 of the Securities Act of 1933 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
25

26

### California Cases

27

Bowden v. Robinson (1977) 67 C.A.3d 705 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 17

28

Byrum v. Brand (1990) 219 Cal. App. 3d 926 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 13

Committee on Children's Television, Inc. v. General Foods Corp.
(1983) 35 Cal. 3d 197, 217-218 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Duffy v. Cavalier (1989) 215 Cal. App. 3d 1517 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Efron v. Kalmanovitz (1964) 226 Cal. App. 2d 546 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Field v. Century 21 Klowden (1998) 63 Cal. App. 4th 18 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Gagne v. Bertran (1954) 43 Cal.2d 481 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Hobbs v. Eichler (1985) 164 Cal. App. 3d 174, 193, 210 Cal. Rptr. 387 . . . . . . . . . . . . . . . . . . . 13

Johnson v. Mead (1987) 191 Cal. App. 3d 156, 160 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Main v. Merrill Lynch, Pierce, Fenner & Smith, Inc. (1977) 67 Cal. App.3d 19 . . . . . . . . . . . . . 9

Pusateri v. E. F. Hutton & Co. (1986) 180 Cal. App.3d 247 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Twomey v. Mitchum, Jones & Templeton (1969) 262 Cal. App. 2d 690 . . . . . . . . . . . . . . . . . . . 13

**California Statutes**

California Civil Code § 3291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

California Civil Code § 3333 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

California Investment Advisor Act, Civil Code § 3372 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Civil Code 1709, 1710, subd. (2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Civil Code §1572, subd. (2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Code of Civil Procedure  §452 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Corporations Code §25110  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Corporations Code §25501  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 12

Corporations Code §25503  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Corporations Code §25504  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Corporations Code §25504.1 ........................................................ 4

Corporations Code §25504.2 ........................................................ 4

Corporations Code §§ 25401 ..................................................... 4, 12

### Miscellaneous Authorities

Article III, Section 2 of the NASD's Rules of Fair Practice ............................. 18

Ferritto, v. Olde & Co., Inc. (1989) 62 Ohio App. 3d 582 ............................. 19

NYSE Rule 405 ................................................................ 18

Witkin CALIFORNIA PROCEDURE (Fourth ed. 1996), Pleading §403, pp. 501-502 ........ 17

Witkin, SUMMARY OF CALIFORNIA LAW (9th Ed. 1995)
Corporations §299, p. 774 ["Witkin on Corporations"] ............................... 12

1
2

# I.
## INTRODUCTION

3      Set forth below, Plaintiffs explain why the allegations of the second amended complaint

4  ["SAC"] in this case are adequate to establish the liability of the defaulted defendants as to the several

5  causes of action contained in the SAC.  This discussion is premised upon the rule that all of the well

6
7  pleaded allegations of the SAC, except those pertaining to damages, are deemed admitted.  <u>TeleVideo</u>

8  <u>Systems, Inc. v. Heidenthal</u> (9th Cir. 1987) 826 F 2d 915, 917.

9

# II.
## BRIEF STATEMENT OF FACTS

10

11      This lawsuit is filed on behalf of investors in Towers Financial Corporation Promissory Notes.

12  Plaintiffs purchased the Towers notes on the recommendation of the brokerage houses, stockbrokers,

13  and financial advisors who are the Defendants in this case.  The financial advisory relationship between

14
Plaintiffs and the Defendants is alleged at paragraphs 3 through 8 and 38 through 39 of the SAC[1].  The
15
particular Towers sale transactions are alleged in paragraphs 9 through 37.
16

17      Towers was in fact a Ponzi scheme, one of the largest cases of financial fraud in American

18  History.  Plaintiffs allege at length the fraud Towers Financial Corporation and its principals at

19  paragraphs 40 through 98.  Greatly simplified, these allegations state that the Towers operation was a

20  total sham and a Ponzi scheme from the outset.  Steven Hoffenberg ["Hoffenberg"], the President and

21
owner of Towers, had been in serious trouble with the Securities and Exchange Commission and various
22
23  state insurance and securities regulators prior to the sale of the Towers Notes to Plaintiffs.  On March

24  29, 1993, Towers and its subsidiaries sought protection under Chapter 11 of the Bankruptcy Code.

25  Since that time, it has gradually become apparent that Plaintiffs have lost nearly all of their Towers

26

27  _____

28      [1] Unless otherwise noted, all references are to the SAC.

investment. Hoffenberg was the subject of grand jury indictments in the Northern District of Illinois and the Southern District of New York, charging a variety of crimes, including criminal securities fraud in connection with the sale of the Notes. He is now serving a 20 year prison term.

Plaintiffs have filed this action on the basis that the Defendants, inter alia, breached various common law and statutory duties owed to Plaintiffs when they recommended and sold the Towers Notes to Plaintiffs. Red flags, too numerous to list here [but fully detailed in the SAC ], existed showing the fact that Towers was a fraud which should have been apparent to any professional financial advisor. Yet, Defendants recommended the Towers investment in spite of these red flags. Plaintiffs set forth a litany of facts regarding the Towers investments which Plaintiffs contend should have been discernable to any financial professional who conducted a reasonable due diligence investigation. These red flags rendered the investment totally inappropriate for anyone, because they tended to suggest that the investment was a fraud and/or a ponzi scheme. The allegations concerning the fault of the Defendants are contained at paragraphs 99 through 116. Boiled down, the misconduct of the Defendants can be summarized as follows: 1) Failure to conduct adequate due diligence into the Towers investment, 2) misrepresentation and concealment of the true nature of the investment, 3) violation of federal and state registration requirements. This misconduct is alternately alleged to be intentional or negligent, and to support all of the several causes of action contained in the SAC[2], which are set forth below:

Second Cause of Action - Violations of Section 10(b) of the Exchange Act and Rule 10b-5(a), (b) and (c).

Third Cause of Action - Violation of Section 12(1) Of The Securities Act

---

[2]  The First Cause of Action is for Declaratory Relief. Plaintiffs are not seeking to prove up this cause of action, since it deals with affirmative defenses which Plaintiffs anticipated would be raised, rather than monetary damages. The Eighth Cause of Action is for Breach of Written Contract. Plaintiffs are not seeking to prove up this cause of action.

1    Fourth Cause of Action - Violation Of Section 12(2) Of The Securities Act

2    Fifth Cause of Action - Violations of Section 15 of the Securities Act Controlling Person

3    Liability

4    Sixth Cause of Action - Violation of Section 20 of the Exchange Act Controlling Person

6    Liability

7    Seventh Cause of Action - Breach of Fiduciary Duty And Breach of Trust Relationship

8    Ninth Cause of Action - Sale of Unregistered Securities Under Corporations Code §25110 and/or

9    Corporations Code §25503

10   Tenth Cause of Action - Fraud in the Sale of Securities Under Corporations Code §§ 25401,

12   25501, 25504, 25504.1 and 25504.2

13   Eleventh Cause of Action - Professional and Ordinary Negligence

14   On December 31, 1998, the Court entered default as to the following Defendants in this case:

17   JEFFREY EGAN
     STEVEN ENRIGHT
18   ENRIGHT FINANCIAL ADVISORS
     R.G. DICKINSON & COMPANY
19   WAYNE MORRISON
     JINCO LEASING CORPORATION
20   MILTON E. METZLER & M.E. METZLER ORGANIZATION, INC.
21   ROBERT H. BUCHER

23   Filed concurrently herewith are declarations from the Plaintiffs in this case who are seeking a

24   default judgment.  The claims of these Plaintiffs are set forth below:

25   a.    STANLEY BRUSKIN, who is seeking damages of $100,000.00, plus interest, against

26   Defendants STEVEN ENRIGHT and ENRIGHT FINANCIAL.

27   b.    WILLIAM D. BRADLEY and EDITH L. BRADLEY, who are seeking damages of

-4-

$75,000.00, plus interest, against Defendant JEFFREY EGAN.

c.    ARTHUR M. KRILL, Trustee of THE KRILL CO, who is seeking $35,000 in damages, plus interest, against Defendant R.G. DICKINSON & CO.

d.    HENRY C. LOCKLAR and ALLENE K. LOCKLAR who are seeking $30,000, plus interest, against Defendant R.G. DICKINSON & CO.

e.    RICHARD D. URWILLER, who is seeking damages of $100,000.00, plus interest, against Defendant R.G. DICKINSON & CO. and Defendant BOB BUCHER, jointly and severally.

f.    PAUL E. MEIER, as Trustee of the EXCEL BOTTLING CO. PENSION PLAN, is seeking damages of $100,000.00, plus interest against Defendants M.E. METZLER ORGANIZATION, INC. and MILTON E. METZLER, jointly and severally.

g.    PAUL E. MEIER, as Trustee of the PAUL E. MEIER TRUST [transferred to the EDWARD & CATHERINE MEIER IRREVOCABLE INSURANCE TRUST], is seeking damages of $100,000.00, plus interest against Defendants M.E. METZLER ORGANIZATION, INC. and MILTON E. METZLER, jointly and severally.

h.    PAUL E. MEIER, as trustee of the EDWARD J. MEIER REVOCABLE LIVING TRUST, is seeking damages of $100,000.00, plus interest against Defendants M.E. METZLER ORGANIZATION, INC. and MILTON E. METZLER, jointly and severally.

I.    STEPHEN H. JOHNSON is seeking damages of $50,000, plus interest from JINCO LEASING CORPORATION and WAYNE MORRISON.

### III.
### THE ALLEGATIONS OF THE SAC ARE LEGALLY SUFFICIENT TO ESTABLISH EACH OF THE CAUSES OF ACTION IN THE SAC

**A.    Plaintiffs Have Pleaded Facts Establishing That Defendants Committed Actual and Constructive Fraud and These Allegations Support Common Law and Statutory the Causes of Action Requiring Fraud.**

-5-

In this case, Plaintiffs have alleged facts showing that the Defendants committed at least four distinct types of fraud:

**1.    *FRAUD CONCERNING THE TRUE NATURE OF INVESTMENT*:**

Defendants engaged in fraud concerning the true nature of the Towers Notes and the features of the investment, as well as the history of the investment sponsors.  Examples of this type of fraud can be found in the failure of the Defendants to disclose the sordid history of Towers founder Steven Hoffenberg and Towers itself, the misrepresentation that Towers was a legitimate business enterprise, the misrepresentation that the Notes were secured by collateral, the concealment of facts showing that Towers was a criminal ponzi scheme, and so on, as set forth in the SAC.

**2.    *FRAUD CONCERNING THE DUE DILIGENCE OF DEFENDANTS*:**

By making the recommendations of the Towers Notes, Defendants impliedly represented that they had conducted a reasonable due diligence investigation into the investment and had disclosed all reasonably material facts regarding the investment.  This was either not true, or if it was true, then Defendants knew at the time that they recommended the investment that it was a fraud.  In either case, the Defendants committed fraud.

**3.    *FRAUD CONCERNING THE SUITABILITY OF THE INVESTMENT*:**

By making the recommendations of the Towers Notes, Defendants impliedly represented that they had a reasonable basis to believe that the investment was suitable for Plaintiffs, which was not true, and the recommendation of an unsuitable investment constituted a fraudulent sales practice.

**4.    *FRAUD CONCERNING ILLEGAL SALES OF INVESTMENT*:**

Defendants' fraudulently represented that the Towers Notes complied with federal and state registration laws and concealed the fact that the Towers Notes were sold in violation of federal and state

1  registration laws and were sold as in violation of a 1988 SEC Injunction.  This constituted a fraud on

2  Plaintiffs which was separate and distinct from the fraud involving Towers' true nature as a ponzi

3  scheme and the actual features of the investment.

4

5  **Actual Fraud**

6       In the SAC  Plaintiffs made specific, but collective, allegations in support of their claims for

7  actual and constructive fraud.  <u>Committee on Children's Television, Inc. v. General Foods Corp.</u> (1983)

8  35 Cal. 3d 197, 217-218.  The SAC also stated the dates when Plaintiffs made their Towers investments

9
   and the amount of the investments.  The SAC is adequate insofar as its fraud cause of action is

10
   concerned, especially in light of the allegations concerning omissions by Defendants.  Most significant

11

12  of these misrepresentations is the representation by the Defendants that the Towers investment was low

13
    risk.  Paragraphs 100(h), 105, 113-14.   Unbeknownst to Plaintiffs, in fact the investment presented a

14
    very high degree of risk of loss of principal.  Paragraph 116.

15

16       The SAC also alleges that Defendants made a number of critical implied representations when

17  they recommended the Towers investments to Plaintiffs.   In <u>Hanley v. SEC</u> (2d Cir. 1969) 415 F.2d

18  589, the Court held that a brokers' failure to conduct due diligence into a investment which was

19
    recommended to a client constituted fraud, stating:

20
    > [The broker] cannot recommend a security unless there is an adequate and reasonable
21  > basis for such recommendation. He must disclose facts which he knows and those which
    > are reasonably ascertainable. ***By his recommendation he implies that a reasonable***
22  > ***investigation has been made and that his recommendation rests on the conclusions***
    > ***based on that investigation.*** Where the salesman lacks essential information about a
23  > security, he should disclose this as well as the risks which arise from his lack of
    > information. [Emphasis added].
24

25  <u>Hanley</u>, 415 F.2d at 597.

26
         The SAC alleges that the Defendants did not conduct a reasonable due diligence investigation
27
    into the Towers investments. At paragraph 104, Plaintiffs allege that Defendants knew or should have
28

-7-

known, inter alia:

(a)    that, in fact, Towers had an extensive history of fraud, securities law violations, consumer fraud allegations, persistent allegations of past diversions of funds from affiliates and subsidiaries, unpaid court judgments, prior bankruptcies and other conduct inconsistent with a creditworthy company, and that state and federal investigations and prosecutions were then underway involving Hoffenberg, Towers, and/or its affiliates;

(b)    that Hoffenberg had previously caused at least four companies he had led to seek bankruptcy protection and that Moody's Investors, Service had declined on this basis to issue a rating for one of the issues of securities when approached to do so by Towers in 1991;

(c)    that Towers as servicer had failed to provide detailed financial reports describing the receivables on a monthly basis as would otherwise have been done if the operation was legitimate;

(d)    that Towers was improperly purchasing from providers receivables which served as collateral for the bonds but were not owned by the providers free from any prior sale, lien, encumbrance or security interest, and, thus, not of adequate strength; and

(e)    that in fact Towers was insolvent and that Towers had abrogated the terms of the indenture agreement with the bond trustee, Shawmut National Bank, a result of which was the genuine and material risk of default on the bonds.

(f)    that Towers was being investigated by the SEC for violations of the federal securities laws as of the fall of 1991.

(g)    that Hoffenberg had a long history of improper and or illegal conduct.

None of these facts were disclosed to Plaintiffs.  Had Plaintiffs known of the material adverse information not disclosed by the Defendants, they would not have purchased the Notes. Paragraph 113.

**Constructive Fraud**

The SAC also alleges that by failing to disclose numerous material facts, Defendants committed constructive fraud. Boiled down, constructive fraud can be said to occur whenever there is a failure by a fiduciary to reveal material facts. This is sometimes viewed in terms of a confidential relationship, which is legally synonymous with a fiduciary relationship. In Main v. Merrill Lynch, Pierce, Fenner & Smith, Inc. (1977) 67 Cal. App.3d 19, 32-33, the Court stated: "It is the settled law of this state, and elsewhere, that '[Where] there exists a relationship of trust and confidence it is the duty of one in whom the confidence is reposed to make full disclosure of all material facts within his knowledge relating to the transaction in question and any concealment of material facts is a fraud.'" 67 Cal. App.3d at 32-33.

This rule distinguishes constructive fraud from other forms of actual fraud, including negligent misrepresentation, which may occur in any type of relationship. Civil Code §1572, subd. (2), Civil Code 1709, 1710, subd. (2); Gagne v. Bertran (1954) 43 Cal.2d 481, 488, fn. 5 [275 P.2d 15].)

It is clear that "'[c]onstructive fraud exists in cases in which conduct, although not actually fraudulent, ought to be so treated -- that is, in which such conduct is a constructive or quasi fraud, having all the actual consequences and all the legal effects of actual fraud. Efron v. Kalmanovitz (1964) 226 Cal. App. 2d 546, 560. *When a fiduciary duty exists, an actual representation is not a required element of a cause of action for breach of fiduciary duty or constructive fraud.* Byrum v. Brand (1990) 219 Cal. App. 3d at 941. A broker/dealer owes investors an independent and non-delegable duty to discover and disclose those facts that are reasonably ascertainable. Sanders v. John Nuveen & Co. (7th Cir. 1980) 619 F.2d 1222, 1227, cert. denied, 450 U.S. 1005 (1981). In Keenan v. D.H. Blair & Company Inc. (S.D. N.Y. 1993) 838 F. Supp. 82, the Court described this rule as follows:

By virtue of his position, a dealer 'implicitly represents he has an adequate basis for the

opinions he renders.' Thus, a securities dealer must have an adequate and reasonable basis in order to recommend a security, and must disclose facts of which he has knowledge or that are easily ascertainable.   In addition, a dealer implies that his conclusions are the result of a reasonable investigation.   If essential information about a security is not available to the dealer, he must disclose this and identify the risks associated with the absence of this information.   The investigation undertaken by the dealer will vary with the type of security involved.  These duties have been described as implicit warranties  of the soundness of the stock, in terms of value, earning capacity, and the like. ***Failure to disclose  information in contravention of the warranty is tantamount to an omission of a material fact.*** Dealers are under a special duty due to their expertise, as well as their advisory activities.   [Citations and footnotes omitted, emphasis added].

838 F. Supp. 82 at 89.

Thus, it can be seen under the above authorities that Plaintiffs have more than adequately made out a claim of constructive fraud with allegations that 1) the Defendants sold the Towers investments in violation of state and federal registration and qualification requirements, and 2) represented the Towers investments to be low risk and suitable for Plaintiffs, when there was no reasonable basis for that claim, because 3) Defendants had failed to conduct any form of adequate due diligence into the Towers investment, which was rife with fraud from its inception.

Clearly, the allegations of both the SAC are adequate as to the cause of actions predicated on for fraud, which can be established by affirmative misrepresentations and by the failure to disclose.  In Hanley v. SEC (2d Cir. 1969) 415 F.2d 589, the Court held that a broker's failure to conduct due diligence violated Rule 10b-5 and stated:

[The broker] cannot recommend a security unless there is an adequate and reasonable basis for such recommendation. He must disclose facts which he knows and those which are reasonably ascertainable. By his recommendation he implies that a reasonable investigation has been made and that his recommendation rests on the conclusions based on that investigation. Where the salesman lacks essential information about a security, he should disclose this as well as the risks which arise from his lack of information.

Hanley, 415 F.2d at 597.

A broker/dealer owes investors an independent and non-delegable duty to discover and disclose

-10-

those facts that are reasonably ascertainable. <u>Sanders v. John Nuveen & Co.</u> (7th Cir. 1980) 619 F.2d 1222, 1227, cert. denied, 450 U.S. 1005 (1981). In <u>Keenan v. D.H. Blair & Company Inc.</u> (S.D. N.Y. 1993) 838 F. Supp. 82, the Court described this rule as follows:

> By virtue of his position, a dealer 'implicitly represents he has an adequate basis for the opinions he renders.' Thus, a securities dealer must have an adequate and reasonable basis in order to recommend a security, and must disclose facts of which he has knowledge or that are easily ascertainable. In addition, a dealer implies that his conclusions are the result of a reasonable investigation. If essential information about a security is not available to the dealer, he must disclose this and identify the risks associated with the absence of this information. The investigation undertaken by the dealer will vary with the type of security involved. These duties have been described as implicit warranties of the soundness of the stock, in terms of value, earning capacity, and the like. ***Failure to disclose  information in contravention of the warranty is tantamount to an omission of a material fact.*** Dealers are under a special duty due to their expertise, as well as their advisory activities.  [Citations and footnotes omitted, emphasis added].

838 F. Supp. 82 at 89.

The recommendation of an unsuitable investment can also constitute actionable fraud under the federal securities laws. In <u>O'Connor v. R.F. Lafferty & Company, Inc.</u> (10th Cir. 1992) 965 F. 2d 893, the Court explained this rule as follows:

> O'Connor claims Defendants bought securities which were unsuitable for her investment needs. Federal courts recognize such a claim as a violation of § 10(b) and Rule 10b-5. The unsuitability doctrine is premised on New York Stock Exchange Rule 405-- Know Your Customer Rule [FN3] and the National Association of Securities Dealers Rules of Fair Practice. Unsuitability claims can be analyzed as omission cases or fraudulent practices cases. This rule provides: "Every member organization is required ... to (1) Use due diligence to learn the essential facts relative to every customer, every order, every cash or margin account accepted or carried by such organization."

> Some courts examining a § 10(b), Rule 10b-5 unsuitability claim have analyzed it simply as a misrepresentation or failure to disclose a material fact. In such a case, the broker has omitted telling the investor the recommendation is unsuitable for the investor's interests. The court may then use traditional laws concerning omission to examine the claim.

> Under a misrepresentation or omission theory, a plaintiff can establish § 10(b), Rule 10b-5 liability by showing that in connection with the purchase or sale of a security--the broker made an untrue statement of a material fact, or failed to state a material fact, that

in so doing, the broker acted knowingly with intent to deceive or defraud, and that plaintiff relied on the misrepresentations, and sustained damages as a proximate result of the misrepresentations. [Citations omitted].

965 F. 2d at 897.

In <u>City of San Jose v. Paine, Webber, Jackson & Curtis Inc.</u> (N. D. Cal. June 6, 1991) 1991 WL 352485, 1, 1991 U. S. Dist. LEXIS 8318, at 1, the Court stated:

The City's unsuitability claim can arguably be viewed as falling under either of two theories that derive from Rule 10b-5. Under the first theory, it could be said that the knowing recommendation of unsuitable trading is actionable because the dealer-defendants failed to disclose that the trading was unsuited to the City's objectives. 17 C.F.R. § 240.10b-5(b). For convenience, we shall refer to this as the "omission" theory. Under the second theory, the knowing recommendation of unsuitable trading could be said to be actionable because it constitutes fraud by conduct. 17 C.F.R. § 240.10b-5(a),(c). For convenience, we shall refer to this as the "fraudulent practice" theory.

Plaintiffs had alleged the formal pleading elements for a claim under Rule 10b-5 at paragraphs 134 through 144. Plaintiffs have also properly alleged scienter, based upon the allegation that the Defendants knew or should have known that Towers was high risk, but recommended as low risk. See, e.g., Paragraph 104.

As to Plaintiffs' claims under the Corporate Securities Laws, liability established under California Corporations Code §§ 25401 and 25501 differs from the common law of fraud in that proof of *reliance is not required*. Although the facts that are misrepresented or concealed must be "material" no proof of causation is required. Bowden v. Robinson (1977) 67 Cal. App.3d 705, 715. Witkin, SUMMARY OF CALIFORNIA LAW (9th Ed. 1995) <u>Corporations</u> §299, p. 774 ["<u>Witkin on Corporations</u>"]. In <u>Bowden</u>, the Court stated: "Sections 25401 and 25501 differ from common law negligent misrepresentation in that: (1) proof of reliance is not required, (2) although the fact misrepresented or omitted must be "material," no proof of causation is required, and (3) plaintiff need not plead defendant's negligence." 67 Cal. App. 3d at 715. But even if this was not the rule, Plaintiffs

have more than adequately alleged reliance in the SAC.

**B.    The Seventh Cause of Action For Breach of Fiduciary Duty is Properly Pleaded.**

Plaintiffs have alleged that they retained the Defendants to provide expert financial advice in the capacity of either a brokerage house or a stockbroker. In the context of this relationship, the Defendants recommended that Plaintiffs purchase the Towers investment, and Plaintiffs followed this recommendation. Under well established legal principles, these allegations are sufficient to establish the existence of a fiduciary relationship.

Stockbrokers who provide investment advice stand in a fiduciary position to investors who rely upon their advice. Hobbs v. Eichler (1985) 164 Cal. App. 3d 174, 193. In Pusateri v. E. F. Hutton & Co. (1986) 180 Cal. App.3d 247, 253, the court stated: "It is undisputed that during the relevant period Nee was acting as an authorized officer or managing agent of E. F. Hutton and that Johnson, as plaintiffs' broker, was a fiduciary owing a high duty to act in good faith and to render a full and fair disclosure of all facts affecting their rights and interests." Byrum v. Brand (1990) 219 Cal. 3d 926, 945-946 where the Court found that a fiduciary duty existed even if the broker did not receive any compensation from the sale transaction.

In Twomey v. Mitchum, Jones & Templeton (1969) 262 Cal. App. 2d 690, 69 Cal. Rptr. 222, 250, the Court stated: "The relationship between broker and principal is fiduciary in nature and imposes on the broker the duty of acting in the highest good faith toward the principal." The fiduciary duty rule is thoroughly established under California law. In the case of Hobbs v. Eichler (1985) 164 Cal. App. 3d 174, 193, the Court noted that often times the financial interests of a broker may conflict with the duties owed to an investor:

> This is a classic example of the conflict of interest which exists in the securities industry and is at the heart of the circumstances which resulted in the "hobbling" of Mrs. Hobbs. On the one hand, brokers act as investment advisors to their clients. On the other hand,

they are salespersons, dependent upon their brokerage commissions for a livelihood. Commissions are received only when customers engage in transactions. Individual brokers employed by a brokerage firm normally obtain their sole compensation between 30 and 40 percent of the commissions they produce.

"Under this compensation system, few brokers are immune to the temptation to consider their financial interest from time to time while they are advising their clients. Being at once a salesman and a counselor is too much of a burden for most mortals.'"

Sadly, the Securities and Exchange Commission, while prosecuting numerous churning cases, has not seen its way to correct the abuse. Under these circumstances, it is our view that the imposition of substantial punitive damages against a predatory broker will serve to curb the appetite of others similarly inclined.

164 Cal. App. 3d at 204.

The fiduciary obligations owed by a stockbroker or a brokerage house providing investment advice require these professionals to carefully guard against transactions which are not in the best interests of investors, even when this means the loss of substantial sales commissions which could have been generated by inappropriate transactions. Under the law of stockbroker fiduciary duty, a stockbroker has a duty to look after the best interests of both unsophisticated and sophisticated investors. It is the fiduciary relationship between the customer and the stockbroker which determines the duty of care owed by the stockbroker, not the relative sophistication of the customer. As noted in Duffy v. Cavalier (1989) 215 Cal. App. 3d 1517 a stockbroker's duty to protect a client against improvident transactions is not limited simply to fulfilling the client's desires for large profits or a high rate of return. The Court stated:

The [Twomey] Court concluded that where an apparently unsophisticated investor expresses a desire to engage in speculative investments with the objection of making large profits, the stockbroker cannot simply carry out the customer's wishes. Rather, the stockbroker has a fiduciary duty (1) to ascertain that the investor understands the investment risks in the light of his or her actual financial situation; (2) to inform the customer that no speculative investments are suitable if the customer persists in wanting to engage in such speculative transactions without the stockbroker's being persuaded that the customer is able to bear the financial risks involved; and (3) to refrain completely from soliciting the customer's purchase of any speculative securities which the stockbroker considers to be beyond the customer's risk threshold.

-14-

1   215 Cal. App. 3d at 1532.

2       As can be seen, a stockbroker or brokerage house that renders financial advisory services has a

3   duty to protect the client's best interests and this is the fiduciary duty referred to in the complaint. One

4   of the central aspects of the fiduciary duty owed by a brokerage house to investors who rely upon the

5   advice of the house to make investments is the duty of due diligence. In <u>Keenan v. D.H. Blair &</u>

6

7   <u>Company Inc.</u> (S.D. N.Y. 1993) 838 F. Supp. 82, the Court described this duty as follows:

8       By virtue of his position, a dealer 'implicitly represents he has an adequate basis for the
        opinions he renders.' Thus, a securities dealer must have an adequate and reasonable

9       basis in order to recommend a security, and must disclose facts of which he has
        knowledge or that are easily ascertainable. In addition, a dealer implies that his

10      conclusions are the result of a reasonable investigation. If essential information about

11      a security is not available to the dealer, he must disclose this and identify the risks
        associated with the absence of this information. The investigation undertaken by the

12      dealer will vary with the type of security involved. These duties have been described as

13      implicit warranties of the soundness of the stock, in terms of value, earning capacity,
        and the like. Failure to disclose information in contravention of the warranty is

14      tantamount to an omission of a material fact. Dealers are under a special duty due to

15      their expertise, as well as their advisory activities. [Citations and footnotes omitted].

16  838 F. Supp. 82 at 89.

17      The failure of the Defendants to conduct adequate due diligence into the Towers investment is

18  one of the central themes of the SAC. This is a valid application of the theory of breach of fiduciary

19

20  duty. Indeed, the California Fourth District Court of Appeal recently recognized that the failure of a real

21  estate broker to conduct due diligence into real property could constitute a breach of fiduciary duty.

22  <u>Field v. Century 21 Klowden</u> (1998) 63 Cal. App. 4th 18, request to depublish and rev' denied, 1998

23

24  Cal. LEXIS 4685. As there is no logical distinction between the failure by a real estate broker to

25  conduct adequate due diligence into a piece of real property and the failure by a brokerage house to

26  conduct adequate due diligence into an investment, <u>Field</u> is authority for the proposition that a brokerage

27  house can breach its fiduciary duty to a customer by recommending an investment without first

28

-15-

conducting adequate due diligence into the investment.

**C.** **Plaintiffs Have Properly Alleged that the Defendants Sold Plaintiffs Illegal, Unqualified and Unregistered Securities In Violation of State and Federal Law.**

Section 12(1) of the Securities Act of 1933, 15 U.S.C.A. Section 77l(1), imposes civil liability for the sale of a security in violation of section 5. Section 5 provides, in pertinent part:

(a) Unless a registration statement is in effect as to a security, it shall be unlawful for ***any person, directly or indirectly***

(1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or

(2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale.

(c) It shall be unlawful for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed as to such security, or while the registration statement is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding or examination under section 77h of this title.

A purchaser states a ***prima facie case*** under section 12(1) by proving that (1) a registration statement covering the securities was not in effect, (2) the defendant offered or sold the securities to the plaintiff, (3) the requisite jurisdictional means were employed, and (4) the suit was commenced in compliance with the statute of limitations. Eaton v. Coal Par (S.D. Flor. 1984) 580 F. Supp. 572. Plaintiffs have stated a prima facie for violation of section 12(1) in this proceeding by making detailed allegations regarding the sale of unregistered securities in violation of federal and state law by Defendants. Paragraphs 49 through 55 and 99 through 100, 102 through 103, 106, 147 through 149 and

1 | 167.[3]

2 |      Plaintiffs allege that the Towers investments were unregistered, non-exempt securities and that

3 |

4 | the offer and sale of the Towers investments by Defendants was in violation of Section 12(1).  The

5 | allegation by Plaintiffs that the investment was sold illegally under the securities registration laws

6 | entitles them to their money back, as violation of the registration laws is a form of strict liability.  NBW

7 | Commerical Paper v. FDIC (1992) 813 F. Supp. 7.  In accordance with its remedial purpose, the

8 | Securities Act is interpreted as imposing strict liability on persons who offer or sell unregistered

9 |

10 | securities in an interstate commerce setting unless it is shown that such securities or the transaction itself

11 | are exempt from registration requirements.  McDaniels v. Compania Minera Mar (D. Ari. 1981)  528

12 | F.Supp. 152.

13 |      Plaintiffs also seek to recover under the parallel state blue sky laws which prohibit the sale of

14 | unregistered securities laws.  As the Court noted in Bowden v. Robinson (1977) 67 C.A.3d 705: "[T]he

15 |

16 | Corporate Securities Law of 1968 clearly indicates a legislative intent to provide for actions and

17 | remedies for corporate securities victims far less burdensome than those available under common law."

18 | 67 Cal. App. 3d at 716.   Obviously, it was never intended that complicated rules of pleading applied

19 | to claims involving the sale of unqualified securities and it is just as certain that Plaintiffs have properly

20 | alleged a violation of the Corporate Securities laws prohibition on the sale of unregistered securities.

21 |

22 | **D.**     **Plaintiffs Have Met Their Pleading Burden In The Eleventh Cause Of Action for Negligence.**

23 |      In a cause of action for negligence, Plaintiffs are not required to plead with the type of specificity

24 | required in cases of intentional fraud.  Negligence allegations must be *liberally construed*, with a view

25 |

26 |

27 |     [3] While admittedly not model pleading, if read cumulatively, these allegations are more than

28 | sufficient to state a claim for the sale of unregistered securities.

1  to substantial justice between the parties.  Code of Civil Procedure §452.  See, Witkin on Pleading

2  §403, pp. 501-502.  The misconduct which was the subject of the negligence included the failure to

3
   conduct adequate due diligence into the investments, the recommendation of unsuitable investments,
4
   the misrepresentation of material facts concerning the investments, the concealment of material facts
5

6  concerning the investments, the sale of the investment in violation of state and federal registration

7  requirements, the failure to properly train and supervise the registered representatives who did the

8  selling,  and the violations of the rules and regulations of the self regulatory organizations in which
9
   Defendants have memberships.  Plaintiffs have alleged duty, breach of duty, proximate cause and injury.
10
11 These are the elements of a cause of action for negligence.   This is all that is legally required for a

12 negligence cause of action.  Johnson v. Mead (1987) 191 Cal. App. 3d 156, 160.

13     As to the standard of care which was breached, the rules and regulations of the various self-
14
   regulatory organizations to which Defendants belong, including the National Association of Securities
15
16 Dealers ["NASD"] and the New York Stock Exchange ["NYSE"], have rules which establish a standard

17 of care. These standards were discussed in Komanoff v. Mabon, Nugent & Co. (1995) 884 F.Supp. 848,

18 where the Court stated:

19     Plaintiffs bring claims stemming from defendants' alleged violations of certain
       "Customers' Agreements" executed by the parties, which required defendants "to comply
20     with the bylaw, rules and regulations" of the National Association of Securities Dealers
       ("NASD") and New York Stock Exchange ("NYSE"). Amended Complaint P 66. In
21     particular, plaintiffs argue that defendants breached these Customers' Agreements by
       violating NYSE Rule 405, sometimes referred to as the "know your customer" rule, n17
22     and Article III, Section 2 of the  NASD's Rules of Fair Practice, also known as the
23     "suitability" rule. n18

24
       n17 Rule 405 provides, in relevant part:
25
26     "Every member organization is required . . . to

27     (1) Use due diligence to learn the essential facts relative to every customer, every order,
       every cash or margin account accepted or carried by such organization and every person
28

-18-

holding power of attorney over any account accepted or carried by such organization.

*Supervision of Accounts*

(2) Supervise diligently all accounts handled by registered representatives of the organization.

n18 Article III, section 2 of the NASD Rules of Fair Practice provides, in relevant part:

In recommending to a customer the purchase, sale or exchange of any security, a member shall have reasonable grounds for believing that the recommendation is suitable for such customer upon the basis of the facts, if any, disclosed by such customer as to his other security holdings and as to his financial situation and needs.

Defendants move this Court to dismiss these claims, pursuant to F.R.C.P. 12(b)(6), because "the Courts have repeatedly held there is no private right of action" for violations of either Rule 405 or Article III, Section 2. Defendants' Memorandum Dated Jan. 5, 1994 ("Defendants' Mem.") at 83-87. We agree that the trend in this Circuit has been to find no such implied right. [Citations and footnotes omitted].

However, we need not reach this issue because we read plaintiff's complaint not as asserting an implied right of action under Rule 405 or Article III, but rather as asserting a breach of contract claim. The Amended Complaint states that "Plaintiffs and Defendant Mabon executed Customers' Agreements which required that Defendant Mabon comply with [Rule 405 and Article III], and the failure of Defendant Mabon to comply with those by-laws, rules and regulations constitutes a *material breach of the contractual agreement* . . . ." Amended Complaint P 66. Assuming these allegations to be true, as we must for purposes of Rule 12(b)(6), plaintiffs have a breach of contract claim entirely independent from any possible claim existing under Rule 405 or Article III. See Hofmayer v. Dean Witter & Co., 459 F. Supp. 733, 739 (N.D. Cal. 1978) (where plaintiff alleged violations by defendant of certain rules of the Chicago Board of Trade and the Chicago Mercantile Exchange, plaintiff's claim "should properly have been separated into two counts, for it alleged both a breach of contract, resulting from a provision in the contract requiring [defendant] to abide by the rules of any exchange or market where transactions are executed, and an independent claim arising from the violation of the rules."). Therefore, we deny defendants' motion, pursuant to Rule 12(b)(6), to dismiss the claim in Count VI of plaintiffs' Amended Complaint.

884 F. Supp. 859-860.

In Ferritto, v. Olde & Co., Inc. (1989) 62 Ohio App. 3d 582, the Court explained this as follows:

Strictly speaking, the appellant may not be found negligent per se under Ohio law on a

-19-

finding that its agent violated Rule 405 of the New York Stock Exchange ("NYSE"). See Silverberg, supra. ***However, this does not preclude a finding of negligence where a stockbroker is found to have violated the standard of due care which has been incorporated into the stock exchange rule and explained by an expert witness.*** [Emphasis added].

62 Ohio App. 3d at 594.

The California legislature has recognized that stockbrokers who provide investment advice for compensation are professionals who are liable for failing to meet the necessary standard of professional care. The California Investment Advisor Act, Civil Code § 3372, provides in pertinent part as follows:

(a)    Any person engaged in the business of advising others for compensation as to the advisability of purchasing, holding or selling property for investment and who represents himself or herself to be an expert with respect to investment decisions in such property, or any class of such property, shall be liable to any person to whom such advisory services are furnished for compensation and who is damaged by reason of such person's reliance upon such services, for the amount of such compensation and for such damages, unless the person rendering such services proves that such services were performed with the due care and skill reasonably to be expected of a person who is such an expert.

(b)    For the purposes of this section, the following apply:

(1) A person represents that such person is an "expert" within the meaning of this section if such person represents that he or she is a "financial planner," "financial adviser," "financial counselor," "financial consultant" or an "investment adviser," "investment counselor" or "investment consultant" or that such person renders "financial planning services," "financial advisory services," "financial counseling services," "financial consulting services" or "investment advisory services," "investment counseling services" or "investment consulting services" or makes substantially equivalent representations with respect to such person's business or qualifications.

When applied as a cause of action for malpractice against an Investment Advisor as defined in the Act, this statute shifts the burden of proof from the Plaintiff to the Defendant, who must prove that he or she used due care in making the investment recommendations.  Byrum v. Brand (1990) 219 Cal. App. 3d 926.

## IV.
## CLAIMANTS ARE ENTITLED TO STATUTORY SECURITIES FRAUD DAMAGES AND THE "ALL DETRIMENT" STANDARD OF RECOVERY, WHICHEVER IS LARGER

-20-

Claimants are seeking damages in the face amount of their Towers Notes, plus simple interest the rate of 10% per annum from the date when Towers Financial Corporation ceased all distributions. There are many different legal theories which support this amount of damages in this case.

In <u>Twomey v. Mitchum, Jones & Templeton</u> (1969) 262 Cal. App. 2d 690, the Court found that acts of fraud and breach of fiduciary duty through the recommendation of unsuitable securities by a stockbroker gives rise to an action for damages measured by the "all detriment suffered" standard set forth in California Civil Code § 3333.

Claimants have alleged statutory securities fraud. Paragraph 154. Statutory securities fraud occurs in the offer and sale of a security through the making of oral or written untrue statements of material fact or the omission of material facts necessary in order to make statements, in light of the circumstances under which they were made, not misleading. Corporations Code §25401. Under Corporations Code §25501, a claimant who still owns a fraudulently sold security may rescind the transaction and recover "the consideration paid for the security, plus interest at the legal rate, less the amount of any income received on the security..." A claimant who has sold the security may recover "an amount equal to the difference between (a) the price at which the security was bought plus interest at the legal rate from the date of purchase and (b) the value of the security at the time it was disposed of by the plaintiff plus the amount of any income received on the security by the plaintiff.

Plaintiffs are entitled to damages under their claims under the federal securities laws. Under the general rule, in such a case a plaintiff may recover the difference between the value of the consideration paid and the value of the securities received, plus consequential damages that can be proven with reasonable certainty to have resulted from the fraud. The trial judge has the discretion to apply a rescission remedy which entitles a plaintiff to a return of his consideration less any value received on the investment. <u>Arrington v. Merrill Lynch, Pierce, Fenner & Smith</u> (9th Cir. 1981) 651 F.2d 615, 621.

Plaintiffs have alleged in the SAC that the Defendants conduct was done with a conscious disregard for Claimants' rights and with the intent to vex, injure or annoy Claimants, thereby entitling Claimants to prejudgment interest on all sums awarded at the time of hearing in an amount to be determined in accordance with California Civil Code § 3291.  Paragraph 181.

## V.
## CONCLUSION

As has been shown above, Plaintiffs have met their pleading burden to establish the liability of the Defendants in this case under the rule that in a default prove up, all well pleaded allegations must be accepted as true, except those dealing with damages.  Plaintiffs have offered their own declarations to prove up damages.  This is a particularly simple matter, since the damages are established by the face of the investment, plus interest, all as set forth in the accompanying application for default judgment.

Dated:____2|1|99_____          By:_____
                                       Timothy C. Karen, Attorney for Plaintiffs