USDC SCAN INDEX SHEET

















ANDY    6/8/99    13:33

3:96-CV-01023    BRADLEY V. HOFFENBERG

*318*

*DECL.*

1  Timothy C. Karen SBN: 117071
   Law Offices of Timothy C. Karen
2  12702 Via Cortina, Suite 100
   Del Mar, California  92014
3
   Attorneys for Plaintiffs
4

5

6



FILED

99 JUN -7 PM 4: 20

7          **UNITED STATES DISTRICT COURT**

8      **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

9

10 PAUL F. CLARK, SR., et al.,          )  Case No. 96-1023-JM (JFS)
                                        )
11         Plaintiffs,                  )  **DECLARATION OF TIMOTHY C.**
       v.                               )  **KAREN FILED IN CONNECTION**
12                                      )  **WITH ADDITIONAL BRIEF IN**
   ANDOVER SECURITIES, INC., et al.     )  **SUPPORT OF REQUEST FOR**
13                                      )  **DEFAULT JUDGMENT**
           Defendants.                  )
14                                      )  Courtroom: 6 - The Honorable Jeffrey
                                        )                          T. Miller
15 _____ )

16
   I, Timothy C. Karen, declare as follows:
17
           1.       That I am an attorney duly licensed to practice law in the State of California and admitted
18
   to this Court.
19
           2.       This case involves claims by investors in Towers Financial Corporations promissory
20
   notes. Towers Financial was a criminal ponzi scheme that filed for Chapter 11 protection on March 29,
21
   1993. A class action was filed against the brokerage houses that sold the Towers Notes on March 1,
22
   1993.  The class action was voluntarily dismissed as against the brokerage houses on December 11,
23
   1996. There have been several rulings concerning the tolling effect of the Towers federal class action
24
   and the triggering effect of the Towers bankruptcy.  In one ruling, the Court held the federal class action
25
   tolled the statute of limitations from June 10,1994 through December 11, 1996 as to the Defendant class
26
   of brokerage houses.  In another ruling, the Court found that the Towers Chapter 11 bankruptcy did not
27
   trigger the statute of limitations as a matter of law. True and correct copies of the orders dated February
28
   17, 1999 [see pages 1 through 14] and April 9, 1999 [see pages 5 through 11]in Meadows, et al. v.

ORIGINAL



1  Pacific Inland Securities, et al., United States District Court case number  97-0358-JM (JFS) are

2  attached hereto.  Plaintiffs request that the Court take judicial notice of these rulings.

3       3.     I have been working on the Towers case for approximately four years.  During this time

4  I have had many occasions to acquire information concerning distributions paid out of the Towers class

5  action and bankruptcy from my clients, from the class action attorneys, and from the bankruptcy trustee.

6  Based upon all of these sources, my best estimate is that Towers investors have recouped roughly 10%

7  of the face value of their Towers Notes from the combined distributions in the class action and

8  bankruptcy, and there is no reason to believe that any substantial additional sums will be received from

9  these sources.

10       I declare under penalty of perjury under the laws of the State of California that the foregoing is

11  true and correct.  Executed on _____6/7/99_____ in the County of San Diego, State of

12  California.

13       By:_____
                  Timothy C. Karen

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

T. GREGORY MEADOWS, et al.,

    Plaintiffs,

v.

PACIFIC INLAND SECURITIES
CORPORATION, et al.,

    Defendants.

Civil No. 97-CV-0358-TW(JFS)

ORDER DENYING IN PART AND
GRANTING IN PART DEFENDANT'S
MOTION TO DISMISS AND GRANTING
PLAINTIFF'S MOTION TO FILE A
SECOND AMENDED COMPLAINT [149-
1], [152-1], [170-1]

## I.   INTRODUCTION

The present action was filed on March 3, 1997, naming dozens of defendants, including Signal Securities, the Moving Defendants herein.¹ The claims against Defendant Signal Securities are brought by Plaintiffs Carroll B. Grafa III, Grafa Management, Inc., Grafa Partnership, Ltd., and B.J. Grafa, Ltd. (hereinafter "Grafa" or "Plaintiffs"). These plaintiffs, along with

¹ Defendants FSC Securities Corporation and Gary Kreisner also had originally filed a motion to dismiss Plaintiffs' first Amended Complaint. This motion was to be heard simultaneously with Defendant's Signal Securities motion to dismiss, however the Court was informed that this action section before the motion was heard, and Defendants FSC Securities Corporation and Gary Kreisner withdrew the related motions. [144-1], [144-2].

ENTERED ON 2/10/99

97ct0358

1 a motion to dismiss Plaintiffs' First Amended Complaint,
2 primarily on the basis that Plaintiffs fail to state a claim
3 because the claims are barred by the statute of limitations. On
4 October 28, 1998, Plaintiffs filed for leave to file a Second
5 Amended Complaint. Both the motion to dismiss the First Amended
6 Complaint and the motion for leave to file a Second Amended
7 Complaint were heard on November 25, 1998 in Courtroom E before
8 the Honorable James F. Stiven.[1] Upon reviewing the papers filed
9 with the Court, and having heard oral argument on the matter, the
10 Court hereby **FINDS** and **ORDERS** that Plaintiffs' motion for leave
11 to file a Second Amended Complaint is **GRANTED**, and Defendant's
12 motion to dismiss the First Amended Complaint is **GRANTED IN PART**
13 **AND DENIED IN PART**.[2]
14 \\\\\

15          II. DISCUSSION
16 A.   **The factual allegations in the Second Amended Complaint will**
17 **control whether the Court grants Defendant's motion to dismiss.**
18      This Court's prior rulings determined that all transactions
19 that occurred prior to September 1, 1991 would be barred by the
20 statute of limitations. In the First Amended Complaint (FAC),
21 Plaintiff Grafa alleged that he had "renewed" his purchases of
22 Towers notes from Defendant Signal Securities, through its
23 representative Mickey Cargile, on May 2, 1991, May 5, 1991,
24 September 13, 1991, December 17, 1991, and January 30, 1992.
25
26 [1] Pursuant to consent by the parties and order by District Judge Judith N. Miller,
27 on December 9, 1997, all motions to dismiss for this case were referred to
   Magistrate Judge Stiven for determination under 28 U.S.C. § 636(b).
28 [2] As set forth herein below in detail, this Court's Order Granting in
   Part and Denying in Part Defendant's Motion to Dismiss applies with equal
   force to Plaintiff's Second Amended Complaint.

3

---

1 approximately twenty-five other plaintiffs in this action, are
2 individual investors in Towers Financial Corporation promissory
3 notes ("Towers notes"). They allege that they purchased the
4 Towers notes based upon recommendations of various brokers,
5 advisors, and brokerage houses named as defendants in this
6 action. Plaintiffs allege that Towers was a sham operation from
7 the outset, and that despite the existence of numerous red flags,
8 the defendants recommended investments in the Towers notes, and
9 that Plaintiffs relied on those recommendations in deciding to
10 purchase the notes.
11     On April 9, 1998, this Court issued an order granting in
12 part and denying in part, without prejudice, motions to dismiss
13 Plaintiffs' original complaint by Defendants FSC Securities
14 Corporation, Gary Kreisser, Signal Securities, Mickey Cargile,
15 and Cargile Investments. On September 8, 1998, this Court issued
16 a second order modifying its first decision. With regard to the
17 Grafa claims at issue in the instant motion, these two prior
18 orders issued by the Court dismissed with prejudice all claims
19 against Defendants Mickey Cargile and Cargile Investments as
20 barred by the statute of limitations, and dismissed all actions
21 against Defendant Signal Securities relating to transactions that
22 occurred before September 1, 1991 also as barred by the statute
23 of limitations. Lastly, the April Order dismissed, without
24 prejudice, the claims against Defendants Mickey Cargile, Cargile
25 Investments, and Signal Securities as failing to meet the
26 particularity requirements of Fed. R. Civ. Pro. 9(b).
27     On June 22, 1998, Plaintiffs filed a First Amended
28 Complaint. On October 5, 1998, Defendant Signal Securities filed

2

1  (FAC ¶ 97.)  In the proposed Second Amended Complaint (SAC),
2  Grafa alleges that he "purchased" Towers Notes on March 30, 1992,
3  and April 28, 1992. (SAC ¶ 21.)
4  This Court recognizes that in the order the motions were
5  filed, the Court would normally determine whether or not to
6  dismiss the First Amended Complaint, and then consider whether to
7  grant leave to file the Second Amended Complaint. However, this
8  is the third time this Court has considered whether Plaintiffs
9  can state a viable cause of action not barred by the statutes of
10 limitations applicable to the sales and purchases of these
11 securities. This Court also notes that while somewhat different,
12 the FAC and the SAC are substantially similar and, as discussed
13 below, the determination of whether this complaint should be
14 dismissed is on most points the same under the facts alleged in
15 either the FAC or the SAC. Lastly, Defendant filed a limited
16 opposition to Plaintiffs' motion to file the SAC, and in replying
17 to Plaintiffs' opposition to the motion to dismiss, Defendant
18 relies heavily on factual allegations stated in the SAC.
19 In light of these facts, this Court will first rule on the
20 motion to amend and for the reasons stated below, GRANTS
21 Plaintiffs' motion for leave to file a Second Amended Complaint.
22 "Only where prejudice is shown or the movant acts in bad faith
23 are courts protecting the judicial system or other litigants when
24 they deny leave to amend." Howry v. United States, 481 F.2d
25 1187, 1191 (9th Cir. 1973). Following the discussion in this
26 Court's April Order, the Court finds that the defendants are not
27 prejudiced by granting leave to file a Second Amended Complaint,
28 and does not believe that plaintiffs have acted in bad faith.

4

1  Both Defendant and the Court have reviewed the proposed SAC,
2  and Defendant referred to the facts alleged in the SAC in papers
3  filed with the Court and in oral argument. Accordingly, this
4  Court expects that if following this order Plaintiffs choose to
5  file their amended complaint, the proposed Second Amended
6  Complaint will be filed. As discussed below, this Court will
7  permit Plaintiffs to further amend only one paragraph of the
8  proposed Second Amended Complaint before it is filed. Lastly, as
9  Defendant has reviewed and had the opportunity to respond to the
10 SAC, and the Court has considered in its analysis Defendant's
11 arguments that statements made in Plaintiffs' initial pleadings
12 are party admissions, the factual allegations in the SAC will
13 control the determination of whether Plaintiffs' complaint
14 against Defendant Signal Securities should be dismissed.¹
15 B. The March and April 1992 transactions will be considered new
16 transactions for the purposes of deciding the motion to dismiss.
17 In the FAC, the underlying transactions on which the lawsuit
18 is based were "renewal" transactions that occurred on May 2 and
19 5, 1991, September 13 and December 17, 1991, and January 30,
20 1992. (FAC ¶ 97.)  In the SAC, the underlying transactions on
21 which the claims are premised are limited to "new" transactions
22 allegedly occurring on March 30, 1992 and April 28, 1992. (SAC ¶
23 21.)  Plaintiffs' counsel alleges that the factual changes
24 between the FAC and the SAC are "due to the fact that Plaintiffs'
25 counsel inadvertently misunderstood the particular facts which
26 were earlier alleged." (SAC ¶ 2.)
27
28 ¹As stated above however, this Court will, where appropriate, refer to
   allegations in both the FAC and the SAC when considering whether to dismiss
   Plaintiffs' complaint.

5

When considering a motion to dismiss for failure to state a claim, a court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. NL Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). In Defendant's Partial Opposition to Grafa's Motion to File Second Amended Complaint, Defendant argues that Plaintiffs were attempting to "characterize previously dismissed claims as renewed transactions . . . . By re-dating these transactions, the claims which were dismissed with prejudice would have new life." However, in oral argument, the parties agreed that in March and April 1992, Grafa made affirmative decisions to reinvest in the Towers notes, rather than withdraw his money when the notes had come to full term.²

15 U.S.C. § 77c(a)(3) exempts from coverage under the Securities Exchange Act of 1934 "[a]ny note . . . which has a maturity at the time of issuance of not exceeding nine months, . . . or any renewal thereof the maturity of which is likewise limited." This leads the Court to conclude that the renewal of a non-exempted note is to be considered a separate transaction for the purposes of this act.³ Similarly, when determining whether an action has been filed within one year after the violation upon which it is based, the court in McLernon v. Source International, Inc., 701 F.Supp. 1422, 1427 (E.D. Wis. 1988) (citing Bolford v. Buslease, Inc., 825 F.2d 351, 353-54 (11th Cir. 1987)) stated,

²Plaintiffs' counsel likened the "renewal" to a decision to a buy a new Treasury Bond when the original investment matured. Defense Counsel referred to the "renewal" as a "repurchase."

³The notes "renewed" or "repurchased" by Plaintiffs were two-year promissory notes and therefore are covered under the Act. See FAC ¶ 97; SAC ¶ 21(a) and (b).

---

"Giving broad effect to the language in the 1933 Act, as is required, an unregistered security is 'sold' for purposes of § 12(1) liability when the last integral act of sale is completed, including payment for and delivery of the securities."

This Court finds that the last integral act of sale for the March and April 1992 transactions occurred when Grafa decided to reinvest his money in the Towers notes, rather than to withdraw the funds as he was entitled to do at maturity. Accordingly, for the purpose of determining whether to dismiss Plaintiffs' First Amended Complaint, or grant leave for Plaintiffs to file a Second Amended Complaint, the transactions alleged in the SAC will be considered "new" transactions as alleged in the SAC.⁴ Therefore, based on this Court's prior ruling on tolling the statute of limitations (which tolled the statute for the period from June 10, 1994 through December 11, 1996), the subject transactions occurring in March and April 1992 would not be barred by the three-year statute of limitations applicable in this case."

C.   The One-Year Statute of Limitations based on Inquiry Notice will not bar Plaintiff's claims.

As stated above, Plaintiffs' claims as now pled (the March and April 1992 "purchases" as per the SAC) avoid the three-year statute of limitations bar. However, these claims still may be barred if they were not filed within one year of when Plaintiffs

⁴The Court finds it necessary to make this determination based on the allegations in the SAC for these limited purposes as the dates of the alleged transactions are highly material in determining when the statutes of limitations applicable to the underlying transactions begin to run.

⁵Generally, the statute of limitations applying to federal securities claims is one year after discovery of facts constituting the violation, or three years from the date of the subject transaction. 15 U.S.C. § 77m; Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 364-64 (1991).

had notice of the fraudulent conduct on which the claims are
based. In its April 1998 Order, this Court left open to amendment
the question of whether Plaintiffs could plead sufficient facts
to avoid the bar of the one-year statute of limitations.

Defendant argues that Grafs has admitted in prior complaints
that he was aware of possible misconduct in the sale of Towers
Towers notes as early as December 1992, or no later than March
1993, when Towers filed for bankruptcy. If these facts were
true, Plaintiffs' claims against Signal Securities would be
barred by the one-year statute, as under this Court's present
ruling, tolling did not begin until June 10, 1994, which is more
than one year after March 1993.

However, Plaintiffs' counsel has stated he made a mistake in
drafting the complaint in that the allegation was copied verbatim
from one of the earlier federal class action complaints, which
purported to speak for the class plaintiffs.' In earlier
versions of the complaint, Plaintiffs' counsel did not note this
allegation for change, and argues that in fact, a separate set of
facts applies to each individual plaintiff regarding when they
learned of the alleged misconduct. Due to this error by counsel,
the Court permitted Plaintiffs leave to amend the complaint.

The Court again notes that for a motion to dismiss, the
Court must construe all facts alleged in the complaint as true.
In the SAC, Grafs alleges a series of facts which in conclusion
state that in February 1994, Grafs realized "that he most likely

---

⁹While not germane to the Court's decision here, the Court is compelled
to comment that the amount of time and effort could have been avoided had Plaintiffs'
counsel not made so many "mistakes" in drafting the original and first amended
complaint.

---

had been defrauded in connection with the Towers investment."
(SAC ¶ 22(1).) Defendant argues Plaintiffs were on inquiry
notice in March 1993 as a matter of law. This Court recognizes
that "[t]he issue of inquiry notice is often a factual issue for
a jury. However, where the underlying facts are undisputed,
factually-based issues such an inquiry notice may be decided as a
matter of law." In re Valence Technology, Inc., 987 F.Supp. 796,
801 (N.D. Cal. 1997).

First, this Court rejects the argument that as a matter of
law Plaintiffs were on notice of possible securities fraud when
Towers filed for bankruptcy at the end of March 1993. This Court
recognizes, but elects not to follow, the holding in Phillips v.
Kidder, Peabody & Co., 933 F.Supp. 303, 312 (S.D.N.Y. 1996) where
the court stated, "[Defendant] filed for bankruptcy on December
20, 1985. Thus, the class was on notice of potential claims
against the defendant at that time." In coming to this
conclusion, the Phillips court relied on two other cases where
Plaintiffs had inquiry notice of potential securities claims when
the defendants filed bankruptcy. In re Integrated Resources Real
Estate Ltd Partnership Securities Litigation, 815 F.Supp. 620,
664 (S.D.N.Y. 1993) and Gruber v. Price Waterhouse, 697 F.Supp.
859, 865 (E.D.Pa. 1988), aff'd 911 F.2d 960 (3d Cir. 1990).

Upon review of these two cases, this Court notes that in
finding inquiry notice, these courts noted not only the
bankruptcy filings, but also considered other known facts
indicating possible fraud by the defendants.[10] Without other

---

[10]In In re Integrated Resources, 815 F.Supp. at 664-65, the fraud
alleged was that the offerings omitted information that the defendant (the
Partnership), at the time of the offering, was only days away from declaring a

1  facts and in the absence of clear authority stating otherwise,
2  this Court cannot find that as a matter of law Plaintiffs had
3  inquiry notice of potential securities fraud when Towers filed
4  bankruptcy in March 1993.
5      This Court must then look to other facts alleged in the FAC
6  or SAC to determine if Plaintiffs had inquiry notice of possible
7  securities fraud prior to June 11, 1993. Defendant argues the
8  following test applies to determine if Plaintiffs had notice:
9      "Discovery" occurs (1) when the plaintiff had actual
10     knowledge of facts sufficient to arouse suspicion in a
       reasonably prudent person, or (2) when the plaintiff
11     had access to the means of knowledge of such facts
       and a reasonably prudent person would have used those
12     means before making the relevant financial decision.
       Moreover, if a prudent person would have become
13     suspicious from the knowledge obtained through the
       initial prudent inquiry and would have investigated
14     further, a plaintiff will be deemed to have knowledge
       of facts which would have been disclosed in a more
15     extensive investigation.

16 Briskin v. Ernst & Ernst, 589 F.2d 1363, 1367 (9th Cir. 1978).

17     More recent Ninth Circuit cases have stated the inquiry as:
18     "Notice" is provided by "facts that would have caused a
       reasonable person to suspect the possibility of a
19     misrepresentation [or misleading omission]. It is not
       necessary for plaintiff's to have knowledge of the
20     existence of a claim or of each allegation in a claim.
       Knowledge of facts that would lead a reasonable
21     investor to exercise due diligence [i.e. investigating for
       potential fraud] is sufficient. In other words, the
22     statute of limitations is triggered once there are
       "sufficient storm warnings to alert a reasonable person
23     to the possibility that there were either misleading

24 moratorium on the payment of all its debts, and that the Partnership was going
25 to be adversely impacted due to the cost of an asbestos removal program. The
   court noted that a month after the bankruptcy, the Plaintiffs received
26 information that the Partnership's extensive financial litigation, and
   indicated that the Plaintiffs had notice of the asbestos problem when they
27 made their investment. In Gruber, 697 F.Supp. at 846, the court noted that at
   the time of the bankruptcy, the subject company had sustained significant
28 losses, which were of record. Also, within two months after the bankruptcy
   filing, several reports of fraud by management were reported and federal and
   state investigations of the subject entity were publicly revealed.

10

---

1  statements of significant omissions involved in the
2  sale." A reasonable investor is deemed to have
3  knowledge of well publicized and widely available
4  information in the public domain.

In re Valence Technology, 987 F.Supp. at 800-01 (citations
5  omitted). Accordingly, this Court must determine, based on the
6  facts alleged in either the FAC or the SAC, whether Plaintiffs
7  had knowledge of facts that would lead a reasonable investor to
8  exercise due diligence and investigate for possible fraud.
9      In ¶ 97(f) of the FAC, Grafa states that he "had no
10 complaints regarding his Towers Notes investments . . . until he
11 learned that Towers had gone bankrupt in early April of 1993.
12 When Grafa expressed his concern about his investment (to his
13 broker), he was told repeatedly that the investment was secured
14 and insured against loss . . . However, Grafa gradually
15 learned facts to the contrary through reading the newspaper and
16 by the fall of 1993, he had concluded that he would not be
17 recovering 100% of his investment."
18     Grafa expands on the sequence of events leading him to learn
19 of his investment problems in SAC ¶22(a) - (j). Grafa states
20 that he received a letter from Towers' CEO in late February 1993
21 indicating that Towers Financial Corporation and the Securities
22 and Exchange Commission agreed to the entry of a "Consent
23 Preliminary Injunction."¹¹ The SAC continues that Grafa

24 ¹¹The letter stated: "Towers Financial Corporation and the Securities
25 and Exchange Commission have agreed to the entry of a Consent Preliminary
   Injunction. The order provides that Towers is to be operated as a going
26 concern in order to protect your investment. It further provides that all
   payment of principal and interest on your obligations have been frozen and
27 stopped. We have presently put the company up for sale or merger. This will
   not result in any cash being paid to Towers' majority shareholders. We are
28 looking to convert your debt to a trading security so that you will be able to
   sell these securities in the capital markets and recoup your principle."

11

communicated with his broker through telephone calls and letters from March 1993 through February 1994. These communications indicate that Grafa's broker (an agent of Signal Securities) was involved with the bankruptcy and hired several attorneys to represent Plaintiffs' and other investor's interests in the bankruptcy proceedings. Plaintiffs allege they were aware of several reasons why a company might file for bankruptcy, and the fact that Towers filed for bankruptcy and Grafa's broker had hired bankruptcy attorneys to protect investors did not immediately indicate the occurrence of fraudulent misconduct.

Lastly, Grafa alleges that through reading the newspaper, by December 1993, he first concluded he would not be recovering 100% of his investment. However, the first time anyone mentioned the possibility of fraud was not until February 1994 when he received a letter from his broker informing him that the bankruptcy trustee had commenced a $400,000,000 lawsuit for fraud against Towers' CEO. Grafa alleges that at this point he realized he had most likely been defrauded in connection with the Towers investment.

For Plaintiffs' claims to be barred by the one-year statute of limitation, this Court must find that the "uncontroverted evidence irrefutably demonstrates plaintiff discovered or should have discovered the fraudulent conduct" by June 11, 1993. Mosesian v. Peat, Marwick, Mitchell & Co., 727 F.2d 873, 877 (9th Cir. 1984) cert. denied 469 U.S. 932 (1984). The allegations in the FAC and the SAC (taken together) clearly state: 1) Grafa received a letter in February 1993 indicating involvement by the Securities and Exchange Commission; 2) Grafa learned of the

12

Towers bankruptcy at the end of March or beginning of April 1993; 3) Grafa thereafter communicated often with his broker who stated his investment was secure and never indicated he was suspicious of any fraudulent misconduct; and 4) Grafa did not learn of fraudulent claims alleged against Towers until, at the earliest, the fall of 1993, or at the latest, February, 1994. While not compelling, these averments at the least put in controversy when Grafa learned of or had inquiry notice of the alleged fraud.

Defendant cites Kramas v. Security Gas & Oil, Inc., 672 F.2d 766 (9th Cir. 1982) for the proposition that even if Grafa received reassurances from his broker, he still has a duty to exercise reasonable diligence to investigate possible fraud. However, this Court finds that even if it were to be found that Grafa unjustifiably relied on the information received from his broker from the time of the bankruptcy to June 11, 1993, the facts alleged in the pleadings do not clearly demonstrate that other information, beyond the filing of the bankruptcy, was available to Plaintiffs before June 11, 1993, sufficient to put Plaintiffs on inquiry notice as a matter of law by June 11, 1993.

Based on the facts alleged in the FAC or the proposed SAC, this Court cannot find that the "uncontroverted evidence irrefutably demonstrates plaintiff discovered or should have discovered the fraudulent conduct" by June 11, 1993. With the consideration that this inquiry occurs within a motion to dismiss, and not, for example, within a motion for summary judgment whereby the Court may receive and consider evidence beyond the pleadings, the facts alleged are insufficient to find that as a matter of law Plaintiffs had notice of fraudulent

13

1 misconduct by Towers or by Defendant Signal Securities by June

2 11, 1993. Thus, this Court DENIES Defendant's Motion to Dismiss

3 with regard to Plaintiffs' §§ 10(b), 12(2), 15 and 20 claims, and

4 finds, for purposes of this motion only, that these claims are

5 not barred by the one-year statute of limitations provision.

6 b. **Plaintiffs allege insufficient facts to cause tolling to roll**

7 **back to the March 1, 1993 filing of the Dinsmore action.**

8 On February 9 or 10, 1993, representative plaintiffs who had

9 purchased Towers notes filed a class action, Gold v. Towers Fin.

10 Corp., Inc.,[13] later renamed In re Towers Fin. Corp. Noteholders

11 Litig., in the Southern District of New York. (SAC ¶ 155.) On

12 March 1, 1993, another class action lawsuit, Dinsmore v. Towers

13 Financial Corporation, et al., was filed in the Central District

14 of California.[14] (Id. ¶ 155.) On June 7, 1993, a Consolidated

15 Amended Class Action Complaint ("CACAC") was filed in New York,

16 consolidating the Gold and Dinsmore cases and naming several

17 brokerage houses as representative defendants.[14] (Id. ¶ 158.)

18 On June 10, 1994, the class filed the Second Consolidated Amended

19 Class Action Complaint ("SCACAC"), and Signal Securities was

20 specifically named as one of the defendants in the SCACAC. (Id.

21 ¶ 159.) In December 1996, the class action plaintiffs

22 voluntarily dismissed, without prejudice, the SCACAC against the

23 brokerage house defendants. (Id. ¶ 162.)

24

25 [13]Plaintiffs allege that they were members of the Gold class but did not

26 hear about this suit until substantially later. (SAC ¶ 155.)

27 [14]Plaintiffs do not allege that they were members of the Dinsmore class
and do not state when they became aware of this lawsuit. However, by class

28 definition they would have been included in the plaintiffs class.

[15]Defendant Signal Securities was not a named defendant in the CACAC.

37ff6b54

---

1 This Court's April 9, 1998 Order held that Plaintiffs were

2 entitled to some equitable tolling. However, this Court also

3 found that the facts alleged in the original complaint were

4 insufficient to conclude that Defendants were reasonably put on

5 notice of the pendency of claims against them by the filing of

6 the CACAC on June 7, 1993. (April Order p. 10.) This Court held

7 that tolling of the statutes of limitations applicable to this

8 case occurred when the SCACAC was filed on June 10, 1994, when

9 the individual defendants were named and received actual notice.

10 (Id.) Plaintiffs were granted leave to amend the complaint, and

11 although the Court's discussion regarding amendment focused on

12 the allegations of when Plaintiffs discovered fraudulent

13 misconduct by the defendants, Plaintiffs argue that the Court's

14 granting leave to amend also leaves open the issue of when

15 Defendants received notice of the earlier class actions so that

16 the statute of limitations might be tolled as early as March 1,

17 1993 when the Dinsmore action was filed.

18 The Dinsmore action was filed in the United States District

19 Court for the Central District of California on March 1, 1993.

20 Plaintiffs allege that the Dinsmore complaint purported to

21 represent the interests of Towers investors against all of the

22 brokerage houses that sold the Towers investments. (SAC ¶ 155.)

23 Dinsmore brought the action on behalf of himself and the class

24 proposed as those individuals who invested in Towers notes from

25 February 15, 1989 to the time the action was filed. (SAC Ex. 50,

26 ¶ 25.) The complaint named Monterey Bay Securities as the

27 representative of a defendant class consisting of all broker-

28 dealers who, pursuant to the "private placement memoranda,"

37ff6b55

1 participated in the offer and sale of Towers notes from February
2 15, 1989 to the time the complaint was filed. (SAC Ex. 50, ¶
3 27.) Plaintiffs here argue that notwithstanding this Court's
4 April 9, 1998 Order, tolling should extend back to March 1, 1993,
5 the date the Pinsonn action was filed.
6 In American Pipe and Construction Co. v. Utah, 414 U.S. 538,
7 554 (1974), the Supreme Court held that in the context of a
8 plaintiffs' class action "the commencement of a class action
9 suspends the applicable statute of limitations as to all asserted
10 members of the class who would have been parties had the suit
11 been permitted to continue as a class action." The Supreme Court
12 has stated that a tolling rule for class actions is consistent
13 with the purposes served by statutes of limitations:

14 Limitations periods are intended to put defendants on
15 notice of adverse claims and to prevent plaintiffs from
16 sleeping on their rights, but these ends are met when a
   class action is commenced. ... class action
   "notifies the defendants not only of the substantive
   claims being brought against them, but also of the
17 number and generic identities of the potential
   plaintiffs who may participate in the judgment."

18 Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 352-53 (1983)
19 (citations omitted). However, American Pipe and Crown, Cork &
20 Seal involve plaintiffs' classes, and the parties have not cited
21 to any Supreme Court or Ninth Circuit appellate case that has
22 applied this rule to an action involving a defendants' class.
23 This Court's April 9, 1998 decision finding that tolling did
24 not occur until the filing of the SCNMC relied on the reasoning
25 of In Chevalier v. Baird Savings Ass'n, 72 F.R.D. 140, 155 (E.D.
26 Pa. 1976) which held that the statute of limitations is not
27 tolled against unnamed members of a defendant class unless and
28 until they are specifically named in an amended complaint. The

16

1 Chevalier court stated, "otherwise, defendants would be required
2 to defend against actions of which they had no knowledge
3 whatsoever until after the statute of limitations had run." Id.
4 Plaintiffs rely on, and this Court has considered, the case
5 of In re Activision Securities Litigation, 1986 WL 15339 at *5
6 (N.D. Cal. Oct. 20, 1986) where the court held that the statute
7 of limitations was tolled from the date the original class
8 complaint was filed, as defendants were members of the defendant
9 class even though they were not individually named. However, as
10 this Court noted in its April 9, 1998 decision, in In re
11 Activision, the defendants conceded that they had actual notice
12 both that the suit was filed and that they were included as
13 defendant class members. Id. at *3. The In re Activision court
14 relied heavily on the fact that defendants had notice of the
15 action and specifically stated, "the broad, dual purposes of
16 statutes of limitations, notice and repose, are satisfied. Class
17 members were on notice of this action and that they [were]
18 unnamed members of the class well before the statute of
19 limitations expired." Id. at *5.
20 Plaintiffs also rely on Appleton Electric Co. v. Graves
21 Truck Line, Inc., 635 F.2d 603 (7th Cir. 1980). There, the court
22 held that where the defendant class is ultimately certified the
23 statute is tolled as to each defendant class member from the time
24 the complaint was filed until such time as the defendant is
25 notified of the suit and chooses to opt out.[18] The Appleton
26 court stated that they were confronted with a true conflict
27
28 [18]The Seventh Circuit in Appleton cited and ultimately disagreed with
   the Chevalier court.

17

which is a principal purpose of the [class action] procedure."

In re Activision, 1986 WL 15339 at *2 (citing American Pipe).[14] Accordingly, and consistent with its prior ruling, this Court holds that there can be no tolling back to March 1, 1993 unless the moving defendant here had actual notice of the pendency of the Dinsmore action.

Plaintiffs argue that the Defendant in fact did have actual notice of the Dinsmore action. Plaintiffs allege that all of the defendants named in the SAC are headquartered in Los Angeles," and "Plaintiffs are informed and believe that [a newspaper] article, and others like it referring to the Towers class action, were read by management level officials at Defendants and that through news reports and other sources, management level officials of Defendants had actual notice that defendants was the target of class action litigation on the part of Towers investors within several months of the filing of the Dinsmore action." (SAC ¶ 156, emphasis added.)

This Court finds that the facts as presently alleged in the

[13] "The court in In re Activision, 1986 WL 15339 at *2, also cited to a treatise by Professor Newberg, 1 Herbert Newberg, Class Actions § 4.52, 388-393 (2d ed. 1985), stating:

[Any potential unfairness created by applying the class action tolling rule to [a] defendant class can be eliminated by ensuring that the defendant class members receive some sort of individual or other reasonable notice soon after the action is filed.

Professor Newberg has maintained this position in more recent versions of his class action treatise. See 1 Herbert Newberg & Alba Conte, Class Actions § 4.52, 205-206 (3d ed. 1992).

[14]In a motion to dismiss, a court should accept all factual allegations in the complaint as true. This Court must assume that the blanket allegations in the SAC apply to all defendants. However, Defendant argues in their reply papers that, as a matter of fact, Signal Securities is a Texas broker dealer, and thus argues that it did not receive notice from a Los Angeles newspaper.

---

between the operation of the statute of limitations and Rule 23. In concluding to toll the statute of limitations from the time the class action was filed, even though defendants argued they had not received notice of the suit, the court stated:

This conflict can be resolved only by the promotion of one rule at the expense of the other, unless due Our reading of the cases convinces us that due process is not offended by the tolling doctrine, even where a defendant has no notice of a suit until after the limitations period had run. The Supreme Court specifically rejected the contention that due process was abridged by the tolling doctrine in American Pipe.

Id. at 609 (citations omitted).

This Court disagrees with the rationale on which the Appleton court relied in reaching this conclusion. The Appleton court noted that of those circuits that have considered the question of whether notice is necessary to invoke the tolling doctrine, the courts have uniformly held that the filing of a complaint is sufficient to interrupt the running of a federal statute of limitations. However, in those cases, as in American Pipe, the courts were dealing with either individual plaintiffs or a plaintiffs' class where the defendants were individually named. Also, the tolling rule has been applied to a plaintiffs class action regardless of whether class certification ultimately is granted or denied. Tosti v. City of Los Angeles, 754 F.2d 1485 (9th Cir. 1985). However, there are no similar decisions involving a defendant class.

In conclusion, this Court believes it must balance the needs of the defendant to be "notified of the substantive claims brought against them" with ensuring that Rule 23 class actions are not deprived of the efficiency and economy of litigation

```
 1  SAC are insufficient to persuade this Court to change its prior
 2  ruling and toll the statute of limitations from the time the
 3  Dinsmore action was filed, rather than from June 1994 when the
 4  SCACAC was filed and Signal Securities was named as a defendant.
 5  In asserting a violation of the securities laws, the plaintiff
 6  must affirmatively plead sufficient facts in his complaint to
 7  demonstrate conformity with the statute of limitations. Toombs
 8  v. Leone et al, 777 F.2d 465, 468 (9th Cir. 1985) (citations
 9  omitted). The allegations in the SAC are conclusory at best.
10  Plaintiffs fail to allege specific facts that as of a certain
11  date, Defendant Signal Securities had actual notice of the
12  Dinsmore action. Even with the presumption in ruling on a motion
13  to dismiss that all facts alleged in a complaint are deemed true,
14  this Court finds that these allegations state conclusions, not
15  facts, that Defendant Signal Securities had actual notice of the
16  Dinsmore action. Under those circumstances, allowing the
17  statutes of limitations to be tolled as of the date the Dinsmore
18  action was filed provides no balance between the defendant's need
19  to be "notified of the substantive claims brought against them"
20  and the goals of efficiency for which Rule 23 strives.
21      Based on the allegations in the SAC, which fail to plead
22  adequate facts that Signal Securities had actual notice of the
23  pendency of the Dinsmore action, this Court affirms its previous
24  finding that the statutes of limitations are tolled as of the
25  filing of the SCACAC on June 10, 1994. However, if Plaintiffs
26  believe the effort would not be futile, the Court grants
27  Plaintiffs leave to amend only paragraph 110 of the proposed SAC
28  for the sole purpose of alleging sufficient facts that Defendant
```

```
 1  Signal Securities had actual notice of the Dinsmore action as of
 2  a certain date. If Plaintiffs can allege these additional facts,
 3  this Court may reconsider, without any further briefing or
 4  argument, its prior finding that the statute of limitations are
 5  tolled as of June 10, 1994, when the SCACAC was filed and Signal
 6  Securities was a named defendant. If Plaintiff alleges
 7  sufficient facts causing this Court to modify its prior rulings
 8  and permit tolling from March 1, 1993, Plaintiffs' claims would
 9  not be barred by the one-year statute of limitations.
10  E.  Plaintiffs' § 12(1) claims are barred because equitable
11      tolling does not apply to these claims.
12      Plaintiffs also seek recovery against Defendant under
13  Section 12(1) of the Securities Act of 1933 (15 U.S.C. §
14  77(l)(1)) (sale of unregistered securities). Section 13 of the
15  Securities Act of 1933 (15 U.S.C. § 77(m)) states:
16      No action shall be maintained to enforce any liability
17      created under 77(a) or 77(l)(2) of this title unless
18      brought within one year after the discovery of the
19      untrue statement or the omission, or after such
            discovery should have been made, or, ... to
        enforce a liability created under Section 77(l)(1) of
        this title, unless brought within one year after the
        violation upon which it is based.
20      The violations on which this action is based allegedly
21  occurred through "sales" of the Towers notes in March and April
22  1992. Subject to the discussion above, this Court has found that
23  the statute of limitations is not tolled by the filing of the
24  Dinsmore action, but is tolled only from June 10, 1994. Thus,
25  Plaintiffs' § 12(1) claims against Defendant are barred by the
26  one-year statute of limitations as the suit was not filed before
27  March 30 or April 28, 1993, respectively, for the transactions at
```

**[Page 21]**

1  securities were registered, an item which can be checked by the
2  public record, and in the present claim, the defendants claimed
3  that the securities were exempt from registration. However, this
4  Court does not find that this issue was a determinative fact when
5  the courts reached their conclusions, and in any event, this
6  Court feels that if a reasonable investor is going to check
7  whether or not the security he has purchased has been registered,
8  that investor can determine with only some minimal extra effort
9  whether the security is properly exempt from registration.
10     Plaintiffs cite Hudson v. Capital Management Int'l, Inc.,
11  1982 WL 1385 (N.D.Cal. Aug. 24, 1982) (stating "since [section
12  12[1]] reads like any normal statute of limitations, the
13  [equitable] tolling doctrine should apply") and In re National
14  Mortgage Equity Corp. Mortgage Pool, 636 F.Supp. 1138, 1167
15  (C.D.Cal. 1986) (finding that the statute could be tolled
16  "because no sound reason has been advanced why the tolling
17  doctrine should not apply"). This Court disagrees with these
18  propositions. First, this statute of limitation does not read
19  like any other statute, as the statute provides for accrual upon
20  discovery for section 12(2) claims, but does not so provide for
21  12(1) claims. Second, this Court finds that the actual language
22  of the statute is a sound reason for finding that the equitable
23  tolling doctrine should not apply. Equitable tolling, though
24  generally read into every federal statute of limitations, cannot
25  be applied in the face of contrary congressional intent. Barton
26  v. Peterson, 733 F.Supp. 1482, 1490 (N.D.Ga. 1990) citing Hill v.
27  Texaco, 825 F.2d 333, 334 (11th Cir. 1987). Thus, as Plaintiffs'
28  claims were not filed before April 26, 1993, this Court finds

21

**[Page 22]**

1  issue in this complaint." In light of this bar, Plaintiffs
2  argue that the statute of limitations applied to the § 12(1)
3  claims should be equitably tolled as a result of Defendant's
4  alleged fraudulent concealment of the cause of action.[19]
5  Courts within the Ninth Circuit as well as throughout the
6  other circuits are split on whether equitable tolling applies to
7  the one-year limitation for 12(1) claims. In Rubin v. Sybedon
8  Corp., 688 F.Supp. 1425, 1451 (S.D.Cal. 1988) the court relied on
9  reasoning developed in In re Explore, Inc. Sec. Litig., 671
10  F.Supp. 679, 687 (N.D.Cal. 1987) (finding that the one-year
11  statute of limitations is absolute with regard to 12(1) claims:
12      [There is] persuasive reasoning for holding that the
13      one-year aspect is absolute. In the opinion of this
14      Court, the statutory language compels the conclusion
15      that the equitable tolling doctrine was not intended to
16      apply to section 12(1) claims. The statute
17      specifically provides for accrual upon discovery for
18      section 12(2) claims, but does not include similar
19      language as to section 12(1) claims. A reasonable
20      construction of this language is that Congress intended
21      the one-year limitations period of section 12(1) claims
22      to be absolute. Additionally, since the registration,
23      or lack thereof, of securities is a public record and
24      easily discovered, it is inappropriate to apply the
25      equitable tolling doctrine to a claim brought for
26      failure to register securities.

20  Plaintiffs argue these cases are distinguishable from the
21  present action because the courts discussed whether or not the

22  [19]As noted above and below however, if by amendment facts are alleged to
    permit tolling to begin March 1, 1993, the § 12(1) claim would not be barred.

23  [20]Specifically, Grais alleges that none of the paperwork he received in
24  association with the purchase of the Towers notes included a "Confidential
25  Investor Questionnaire" which stated that the Towers notes were being sold in
    accordance with the Securities Act of 1933, and the offering was being made
26  "in reliance upon the exemption for private offerings contained in Section
    4(2) of the Act. Plaintiffs allege that Defendant expressly or impliedly
27  represented that all materials provided to investors were correct and that
    therefore the securities were being legally offered and that Plaintiffs
28  allege that they reasonably relied upon this inaction in refraining from
    initiating legal action under Section 12(1). [SAC ¶¶ 35 - 45.]

22

that Plaintiffs' § 12(2) claims are barred by the statute of limitations and as such are DISMISSED WITHOUT PREJUDICE."

V. Additional arguments affecting the date for tolling the statute of limitations."

1. The SCAC Dismissal.

The SCAC was voluntarily dismissed without prejudice as to the brokerage house respondents, including Defendant, on December 11, 1996. Plaintiffs argue that the statute of limitations should be tolled until January 10, 1997 as the dismissal became final only 30 days after the dismissal of the action. This Court briefly addressed this issue in its September 8, 1998 Order, finding that the New York class action dismissal was voluntary, and without prejudice, and thus it is not clear the plaintiffs could appeal. See Concha v. London, 62 F.3d 1493, 1507 (9th Cir. 1995); Courson v. A.H. Robbins Co., Inc., 164 F.2d 1329, 1342 (9th Cir. 1985), corrected, 773 F.2d 1049 (9th Cir. 1985). (Sept. Order, p. 8 n. 10.) Plaintiffs have cited no authority to persuade this Court that the statute of limitations should be tolled for 30 days beyond the date of the dismissal). Accordingly, this Court affirms (ten prior finding that the

[20]As discussed in Section O above, it by amendment to the SAC, Plaintiffs state facts sufficient to justify the Court finding that tolling began as of the filing of the Plummer action on March 1, 1993, Plaintiffs' § 12(1) claims would not be barred by the statute of limitations and this Order of Dismissal would be withdrawn.

[21]Since this Court ruled that the March and April 1992 transactions are separate actionable transactions, extension of the tolling period by 30 days beyond the dismissal of the SCAC by re-registering tolling with the filing of the Garibaldi action will not affect whether these claims are barred by the unequal statutes of limitations. The additional 30 days could affect Plaintiffs' claims under the one-year inquiry notice statute, or the one-year statute for § 12(1) claims. However, as discussion below, the Court finds that the filing of the state action tolls most of Plaintiffs' federal claims and thus the Court's conclusions are not affected by those additional 30 days.

24

statute of limitations commenced running again on the date the SCAC was dismissed.

2. The Garibaldi Action

On January 6, 1997, a lawsuit alleging fraud in the sale of the Towers securities was filed in California Superior Court as Garibaldi, et al. v. Certified Equities, Inc., et al. The Garibaldi action and the instant action involve the same operative set of facts; Grais is one of the many named plaintiffs and Signal Securities is one of the many named defendants. The Garibaldi action is still pending subject to a Court ordered stay in state Superior Court. Plaintiffs argue that the filing of this action on January 6, 1997 tolled the statute of limitations until this action was filed in federal court on March 3, 1997. (SAC ¶ 163.) This Court finds that the Garibaldi action tolls the statute of limitations for only some of Plaintiffs' claims.[21]

Plaintiffs rely on Cervantes v. City of San Diego, 5 F.3d 1273 (9th Cir. 1993) to support the allegation that the Garibaldi action tolls the statute of limitations applicable to the claims in the instant case. The Cervantes case is inapposite as it involved a § 1983 claim whereby the Court applied California's statute of limitations, and determined whether the statute should be tolled in that case pursuant to California law. In this case however, the applicable limitations period is derived from federal, not state, law.[22]

[21]For the same reasons as stated in footnote 20, tolling from either January 6, 1997 or March 7, 1997 does not materially affect the Court's conclusions under the facts presently alleged.

[22]See 15 U.S.C. § 78u-2(a); Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350 64 (1991).

25

In Pace Industries v. Three Phoenix Co., 813 F.2d 234 (9th Cir. 1987), the Ninth Circuit held that a prior state action asserting state antitrust claims did not toll the statute of limitations for federal antitrust claims subsequently filed in federal court. The court stated:

> Prior judicial actions ... "do not toll the statute of limitations, no matter how close their relationship to the one at bar." Ramirez de Arellano v. Alvarez de [__] Cardinal Corp., 383 U.S. 696, 708 (1966) (where the Supreme Court refused to toll a six year Indiana statute of limitations when the federal lawsuit was filed seven years after the cause of action accrued and three years after the state court action was dismissed.) In Ramirez, the First Circuit reversed a lower court holding that the statute of limitations was tolled during a prior state court mandamus action brought by the same plaintiff against the same defendant and based on the same constitutional right. The court found that "[t]o toll the action must be the case at bar, not merely a somewhat related action arising from the same facts." Id. at 320.

Pace Industries, 813 F.2d at 240-41 (emphasis added).

Accordingly, this Court concludes that for actions over which the federal courts exercise exclusive jurisdiction, prior state actions may not toll the statute of limitations for subsequent claims filed in federal court. Federal courts have exclusive jurisdiction over claims asserted under the Securities Exchange Act of 1934 pursuant to 15 U.S.C. § 78aa, and therefore Plaintiffs were unable to bring these actions in the Garibaldi case. When Plaintiffs then presented these additional federal claims in this subsequent federal case, this case became an action that is closely related to the prior state action, but is in fact different from the case presented in the state court. Also, by allowing a plaintiff to toll these federal claims by filing the equivalent state claim in state court, the federal

---

statute of limitations would be subject to the variations of the different state statutes of limitations. The court in Eichman v. Fotomat Corp., 880 F.2d 149, 156 (9th Cir. 1989), another case involving antitrust laws, reached the same conclusion, stating:

> When a plaintiff has both state and federal law antitrust claims, he has the discretion to pursue a remedy in state or federal court. If the plaintiff chooses to pursue an antitrust remedy first, the plaintiff may, of course, avoid the problem ... the filing of a state antitrust claim could equitably toll the federal antitrust statute of limitations, this would result in a judicially mandated tacking of state limitations periods onto the federal limits. [Citation omitted.] The result would be capricious because of the different state limitations periods.[]

Accordingly, this Court finds that the filing of the Garibaldi action does not toll the statute of limitations applicable to claims arising under the Securities Act of 1934.

However, this Court finds that with regard to the federal claims Plaintiffs did file as part of the state action, the case presented in federal court was in fact the same case presented in state court. In the Garibaldi action, Plaintiffs filed claims under §§ 12(1), 12(2), and 15 of the 1933 Securities Act. These claims are identical to the claims presently before this Court. The Court recognizes that there was no bar to Plaintiffs filing their claims in federal court. However, as these claims were already before the state court, filing the action in this court was unnecessary to preserve these claims. Once Plaintiffs elected to refile in Federal Court, it required a stay of the state court proceeding so as to prevent duplicative proceedings. Also, finding that the statute of limitations for these identical federal claims are tolled when presented in prior state actions under concurrent jurisdiction is consistent with the

1. In this Court's April 9, 1998 Order, this Court determined
2. that Plaintiffs' original complaint failed to specify the time,
3. place, and content of the false representations allegedly made by
4. the various defendants. This Court stated that Plaintiffs must
5. state allegations "specific enough to give defendants notice of
6. the particular misconduct which is alleged to constitute the
7. fraud charged so that they can defend against the charge and not
8. just deny they have done anything wrong." Semegen v. Weidner,
9. 780 F.2d 727, 731 (9th Cir. 1985) (citation omitted).
10. The Court finds that Plaintiffs' claims in both the FAC and
11. the proposed SAC meet the particularity requirements of Rule
12. 9(b). See FAC ¶¶ 57, 58-61, 64-66, 93-97, 106-110; SAC ¶¶ 18-21,
13. 25-28, 30-32, 36, 39, 40, 43-44, 110, and 113. In the April
14. Order (p. 13), this Court stated, "If . . . Plaintiffs are able
15. to allege facts to support a finding that discovery of
16. Defendants' fraud did not reasonably occur until after a date
17. less than one year before tolling began, then the amendment would
18. not be futile." Defendant argues that Plaintiffs fail to allege
19. the date on which Plaintiffs discovered fraud, and thus the
20. amended complaints fail to satisfy this Court's orders. However,
21. as Plaintiffs have alleged sufficient facts such that this Court
22. could not determine, as a matter of law, that Plaintiffs had
23. inquiry notice of Defendant's alleged fraud before the one-year
24. statute of limitations ran, this Court finds that the FAC and the
25. SAC satisfy the Court's order for particularity in that regard.
26. **H.  Cause of Action Under State Law.**
27. Courts may exercise power of supplemental jurisdiction over
28. state claims when the state and federal claims derive from a

---

1. purposes served by statutes of limitations as stated by the
2. Supreme Court. The Defendant was on notice that Plaintiffs were
3. pursuing their claims under the 1933 Securities Act, Plaintiffs
4. were not "sleeping on their rights", and the defendant knew of
5. the substantive claims being brought against them, and by whom.
6. Crown Cork & Seal Co., 462 U.S. at 352-53.
7. Accordingly, this Court finds that the Garibaldi action did
8. not toll the statute of limitations for claims brought under the
9. 1934 Securities Exchange Act, but the statute of limitations were
10. tolled with regard to the claims Plaintiffs presented pursuant to
11. the 1933 Securities Act, specifically, Plaintiffs' §§ 12(1),
12. 12(2) and 15 claims."
13. **G.  Pleading Requirements for Fraud under Rule 9(b).**
14. In all averments of fraud or mistake, "the circumstances
15. constituting fraud or mistake shall be stated with particularity.
16. . . ." Fed. R. Civ. Pro. 9(b). The particularity requirement is
17. satisfied if the pleading "identifies the circumstances
18. constituting fraud so that a defendant can prepare an adequate
19. answer from the allegations. While statements of time, place
20. and nature of the alleged fraudulent activities are sufficient,
21. mere conclusory allegations of fraud are insufficient." Moore v.
22. Kayport Package Express, Inc., 885 F.2d 531, 540 (9th Cir. 1989).
23. ²This Court does not believe that tolling the statute of limitations
24. for Plaintiffs' § 12(1) claims by the filing of the Garibaldi action is
25. inconsistent with this Court's finding that equitable tolling for fraudulent
    concealment does not apply to § 12(1) claims. By filing an action in state
26. court, Plaintiffs have preserved their 12(1) claims, albeit in another forum.
    this is distinct from an allegation that Plaintiffs could not have filed due
27. to a defendant's alleged fraudulent conduct, a scenario that is specifically
    excluded in 15 U.S.C. § 77m for 12(1) claims. Regardless, as discussed
28. above, Plaintiffs' 12(1) claims are barred the statute of limitations unless
    sufficient facts can be alleged to justify tolling the statute of limitations
    from the time the Garibaldi action was filed.

1 common nucleus of operative facts. 28 U.S.C. § 1367(a). United
2 Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966). Plaintiffs
3 contend the facts underlying the federal claims and the state
4 claims are the same. In view of the Court's finding that some of
5 Plaintiffs' federal claims cannot be dismissed on statutes of
6 limitations grounds, and Plaintiffs have alleged sufficient facts
7 of fraudulent conduct pursuant to Rule 9(b), the Court DENIES the
8 motion to dismiss Plaintiffs' pendant state law claims.[?]
9 \\\\\
10                III. CONCLUSION
11    In view of the foregoing, Defendant's Motion to Dismiss is
12 GRANTED IN PART, without prejudice, with regard to the § 12(1)
13 claims, and DENIED IN PART as to the other statutes of
14 limitations defenses. Plaintiffs' motion to amend the complaint
15 and file the proposed Second Amended Complaint is GRANTED. If
16 Plaintiffs file a Second Amended Complaint, Plaintiffs are hereby
17 ordered to file the proposed Second Amended Complaint as it now
18 exists, except that Plaintiffs may amend only Paragraph 156
19 should Plaintiffs feel it would not be futile. Plaintiffs are
20 hereby ordered to file any amended complaint no later than March
21 1, 1999. If Plaintiffs fail to file an amended complaint by that
22 time, Plaintiffs § 12(1) claims will be DISMISSED WITH PREJUDICE.
23    IT IS SO ORDERED.
24
25
26    [?] Defendant did not move to dismiss Plaintiffs' state claims on the
27 grounds that they may be barred by the state statute of limitations, this
28 Court does not make any determination regarding whether any state claims are
barred by the respective state statutes of limitations.

30

DATED: _1-17-99_

[signature]
Hon. James F. Stiven
United States Magistrate Judge

cc:  Hon. Thomas Whelan
U.S. District Court Judge
All parties and counsel

31

FILED

99 APR -8 PM 3:30

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| I. GREGORY MEADOWS, et al., | ) | Civil No. 97-cv-0358-TM(JFS) |
| Plaintiffs, | ) | ORDER DENYING DEFENDANT'S |
| | ) | MOTION FOR RECONSIDERATION |
| v. | ) | [185-1]; AMENDING PRIOR ORDER |
| | ) | [183-1] |
| PACIFIC INLAND SECURITIES | ) | |
| CORPORATION, et al., | ) | |
| Defendants. | ) | |

## I.  INTRODUCTION

The present action was filed on March 3, 1997, naming dozens of defendants, including Signal Securities, the Moving Defendants herein. The claims against Defendant Signal Securities are brought by Plaintiffs Carroll B. Grafa III, Grafa Management, Inc., Grafa Partnership, Ltd., and B.J. Grafa, Ltd. (hereinafter "Grafa" or "plaintiffs"). These plaintiffs, along with approximately twenty-five other plaintiffs in this action, are individual investors in Towers Financial Corporation promissory notes ("Towers notes"). They allege that they purchased the Towers notes based upon recommendations of various brokers, advisors, and brokerage houses named as defendants in this action. Plaintiffs allege that Towers was a sham operation from the outset, and that despite the existence of numerous red flags, the defendants recommended investments in the Towers notes, and that Plaintiffs relied on those recommendations in deciding to purchase the notes.

On February 17, 1999, this Court issued an Order granting in part and denying in part Defendant's motion to dismiss Plaintiffs' First Amended Complaint, and granted Plaintiffs' motion to file a Second Amended Complaint.[1] In this Order, this Court held the following: 1) the one-year statute of limitations based on inquiry notice did not, as a matter of law, bar Plaintiffs' claims; 2) the statute of limitations would be tolled from June 10, 1994 (the date the SCACC in the Gold class action was filed), not from March 1, 1993 (the date the Dinsmore action was filed); 3) Plaintiffs' § 12(1) claims are barred because equitable tolling does not apply to these claims; 4) the statute of limitations was tolled from January 6, 1997, to the date this action was filed on March 3, 1997, with the filing of the state Garibaldi action.[2]

---

[1] The February 1999 Order addresses the second round of motions to dismiss filed by Defendant in this case. On April 9, 1998 this Court granted in part and denied in part Defendant's motion to dismiss Plaintiffs' original complaint. At that time, this Court granted Plaintiffs' motion to file a First Amended Complaint. Defendant then filed a motion for reconsideration, which this Court granted in part and denied in part in an Order dated September 8, 1998. Defendant then filed a motion to dismiss Plaintiffs' First Amended Complaint, which was granted in part and denied in part by this February 17, 1999 Order. All of these motions were heard before this Court pursuant to consent by the parties and order by District Judge Miller, on December 9, 1997, that all motions to dismiss for this case were referred to Magistrate Judge Stiven for determination under 28 U.S.C. § 636(c).

[2] This Court made additional findings in the February 17, 1999 Order, but those determinations are not relevant to the present motion.

2

On March 1, 1999, Defendant Signal Securities, Inc. filed the present Motion for Reconsideration. Defendant presents three main concerns with this Court's February 17, 1999 Order. First, Defendant requests this Court to clarify its latest order to indicate that the court only assumed that Defendant was properly served with the second consolidated amended complaint in the Gold class action filed June 10, 1994. Second, Defendant requests that this Court acknowledge that Signal Securities is and was a Texas corporation. Third, Defendant requests this Court to acknowledge that the court has made no finding as to whether Signal Securities received actual notice of the Garibaldi lawsuit, filed in California state court on January 6, 1997.

Upon reviewing Defendant's papers, this Court finds that Defendant has in some measure misunderstood both the findings and effects of this Court's three orders. Defendant's Motion for Reconsideration is DENIED, but due to the apparent misunderstanding, this Court finds it is necessary to clarify its three prior Orders with the following comments.

## II. DISCUSSION

### A. Standard of Review

Reconsideration under either Rule 59(e) (motion to alter or amend judgment) or Rule 60(b) (motion for relief from final judgment or order) is appropriate if the district court: (1) is presented with newly discovered evidence; (2) committed clear error or the initial decision was manifestly unjust; or (3) if there is an intervening change in controlling law. School Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993). The Ninth Circuit has instructed that "[i]n

3

determining whether Rule 60(b) applies, courts should be mindful that the rules are to be construed to achieve the just determination of every action." Rodgers v. Watt, 722 F.2d 456, 459 (9th Cir. 1983). However, there is a compelling interest in the finality of judgments that should not be disregarded lightly. Id. Motions for relief from judgment pursuant to Rule 60(b) are addressed to the sound discretion of the district court and will not be reversed absent some abuse of discretion. Export Group v. Reef Indus., Inc., 54 F.3d 1466, 1469 (9th Cir. 1995); Blair v. Shanahan, 38 F.3d 1514, 1519 (9th Cir. 1994).

However, because Defendants request reconsideration of an interlocutory order, which granted in part and denied in part Defendants' motion to dismiss, reconsideration in the present matter is more appropriate under Rule 54(b).[3] Federal Rule of Civil Procedure 54(b) states in relevant part, "[A]ny order . . . which adjudicates fewer than all the claims . . . is subject to revision at any time before the entry of judgment adjudicating all the claims . . . ." Fed. R. Civ. P. 54(b). The Court has discretion to reconsider interlocutory orders at any time prior to final judgment. Balla v. Idaho State Bd. of Corrections, 869 F.2d 461, 465 (9th Cir. 1989) (noting a district court may reconsider an interlocutory order under either its inherent authority to reconsider orders or under Fed. R. Civ. P. 54(b)); California v. Summer Del Caribe, Inc., 821 F.Supp. 574, 577)

[3] In the Ninth Circuit, the standards for reconsideration under Rule 60(b) and Rule 59(e) have been recognized as substantially similar. Compare School Dist. No. 1J, 5 F.3d at 1263 with Frederick S. Wyle Prof'l Corp. v. Texaco, Inc., 882 F.2d 364, 369 n.5 (9th Cir. 1989); and California v. Summer Del Caribe, Inc., 821 F.Supp. 574, 577-70 (N.D.Cal. 1993).

4

1  (N.D.Cal. 1993) (citations omitted). "Such motions may be
2  justified on the basis of an intervening change in the law, or
3  the need to correct a clear error or prevent manifest injustice."
4  *Summer Del Caribe*, 821 F. Supp. at 577-78 (citing *Pyramid Lake*
5  *Paiute Tribe of Indians v. Hodel*, 882 F.2d 364, 369 n.5 (9th Cir.
6  1989)). "To succeed in a motion to reconsider, a party must set
7  forth facts of a strongly convincing nature to induce the
8  court to reverse its prior decision." *Id.* (citations omitted).
9      In this motion for reconsideration, Defendant does not point
10 to any intervening changes in controlling law or newly discovered
11 evidence. Defendant also does not assert that the February 19,
12 1999 Order was clearly erroneous or "manifestly unjust." *Pyramid*
13 *Lake*, 882 F.2d at 369 n.5; *Summer Del Caribe*, 821 F. Supp. at
14 577. However, Defendant seeks clarification arguing that this
15 Court's prior Orders only assumed certain facts and thus did not
16 determine whether class action tolling should apply.
17     Defendant misunderstands this Court's holdings. As
18 discussed below, this Court *did not* assume the facts with which
19 Defendant is concerned, but in fact did find, in both the April
20 9, 1998 and February 19, 1999 Orders, that *as a matter of law*,
21 class action tolling applied when Defendant was named in the
22 SCACAC. This Court only considered the issue of "actual notice"
23 to determine whether class action tolling should apply *before*
24 Defendant was named in the complaint. As "any order . . . which
25 adjudicates fewer than all the claims . . . is subject to
26 revision at any time before the entry of judgment adjudicating
27 all the claims." (Fed. R. Civ. P. 54(b)), this Court amends its
28 February 19, 1999 Order to clarify the following issues.

5

B.  **Finding that Signal Securities is a Texas Corporation**

1      Defendant requests this Court to modify its February 1999
2  Order to acknowledge that Signal Securities "is and was a *Texas*
3  corporation, and that all activities alleged by plaintiffs
4  occurred in Texas. That is established by way of admissions of
5  plaintiff of Signal's Texas origins and the Texas transactions
6  contained within the proposed second amended complaint."
7  (Defendant's Reply, p. 2.) Defendant is concerned with this
8  issue because the Court allowed Plaintiffs to amend one paragraph
9  of their complaint to allege facts to show whether Defendant
10 received actual notice of the *Dinsmore* complaint, filed on March
11 1, 1993. As discussed below, this Court was concerned with
12 whether Defendant received actual notice of the *Dinsmore* action
13 because Signal Securities was *not* named as a Defendant in that
14 complaint.
15
16     In the Second Amended Complaint (SAC), Plaintiffs allege
17 that the class defendants should have had notice of the *Dinsmore*
18 complaint because they were headquartered in the Los Angeles area
19 and a "[newspaper] article, and others like it referring to the
20 Towers class action, were read by management level officials at
21 Defendants and that through news reports and other sources,
22 management level officials of Defendants had actual notice that
23 Defendants was the target of class action litigation on the part
24 of Towers investors within several months of the filing of the
25 *Dinsmore* action." (SAC ¶ 156.)
26     This Court found that these allegations were conclusory and
27 insufficient to show that Defendant, *which this Court*
28 specifically noted was alleged by Defendant to be a Texas

6

1  corporation (Feb. 19, 1999 Order, p. 19 fn.17), had actual notice
2  of the Dinsmore action. Accordingly, this Court granted
3  Plaintiffs the opportunity to amend only paragraph 156, to allege
4  sufficient facts to show that Defendant had actual notice of the
5  Dinsmore action. Plaintiff failed to file such amendment.
6        Defendant recognizes that this Court was considering the
7  arguments presented before it in the context of a motion to
8  dismiss under Fed. R. Civ. P. 12(b)(6), and as such, the Court
9  was to accept all factual allegations in the complaint as true,
10 for the purposes of that motion. This Court fails to see how its
11 February 19, 1999 Order stated any sort of factual or legal
12 finding that Defendant was/is a California Corporation, or
13 conversely, was/is a Texas Corporation. If anything, this Court
14 expressed its concerns with accepting the general allegations in
15 the First and Second Amended Complaints as true, and requested an
16 amendment to the complaint to address those concerns. Further,
17 should this issue arise again in a setting other than a motion to
18 dismiss, both parties will have the ability to submit evidence
19 regarding where Defendant resides.
20       Accordingly, Defendant's request for this Court to issue any
21 sort of finding that Defendant was/is a Texas corporation is both
22 unnecessary and improper, and as such is DENIED.
23 C.   Service of the SCACAC and the Garibaldi Complaint
24       Defendant's first and third request in its motion for
25 reconsideration suggests that this Court should clarify its
26 Orders to indicate that it only assumed Defendant was properly
27 served with the second consolidated amended complaint in the Gold
28

7

1  class action and with the complaint in the Garibaldi action.
2  This Court never assumed such service occurred, nor did this
3  Court find then, nor does it find now, that such service was
4  necessary for the statute of limitations to be tolled.
5        Defendant's papers indicate that it believes the issue of
6  whether class action tolling applies from June 10, 1994 is still
7  an issue to be decided. Defendant cites to this Court's April 9,
8  1999 Order, p. 6, L. 7-9 which stated, "Assuming class action
9  tolling is proper, Plaintiff's action was tolled from June 10,
10 1994, until December 11, 1996." Defendant reads this to mean
11 that the Court only assumed, without deciding, for all three
12 decisions, that class action tolling is proper. However,
13 Defendant must have failed to read the rest of this Order, which
14 states, "This Court holds that the class action tolling does
15 apply with regard to the surviving claims and the statue of
16 limitations defense raised herein." (April 9, 1998 Order, p. 8.)
17 The Court later stated, "there are insufficient facts alleged to
18 allow the Court to conclude that the Defendants herein were
19 reasonably put on notice of the pendency of claims against them
20 by the filing of the CACAC on June 7, 1993, and therefore rules
21 that tolling does not begin until the filing of the SCACAC on
22 June 10, 1994." (Id. at 10, emphasis added.)
23       Upon review of the April 1998 Order, this Court recognizes
24 that perhaps the reasoning of why class action tolling is proper
25 as of June 10, 1994 may not be perfectly clear. However, this
26 Court does feel that the Court's holding that class action
27 tolling was proper from June 10, 1994, was clear. This Court
28 then reiterated this holding, several times, in its February 19,

8

1 1999 Order ("[T]his Court affirms its previous finding that the

2 statutes of limitations are tolled as of the filing of the SCACAC

3 on June 10, 1994," p. 20). However, since Defendant appears

4 uncertain, it is necessary for the Court to clarify its holding

5 that the class action tolling is proper as of June 10, 1994, when

6 Defendant was expressly named, regardless of whether Defendant

7 was served with the complaint.

8     2.  Class Action Tolling is Proper as of June 10, 1994

9     In American Pipe and Construction Co. v. Utah, 414 U.S. 538,

10 554 (1974), the Supreme Court held that in the context of a

11 plaintiffs' class action "the commencement of a class action

12 suspends the applicable statute of limitations as to all asserted

13 members of the class who would have been parties had the suit

14 been permitted to continue as a class action." The Supreme Court

15 has stated that a tolling rule for class actions is consistent

16 with the purposes served by statutes of limitations:

17     Limitations periods are intended to put defendants on

18     notice of adverse claims and to prevent plaintiffs from

19     sleeping on their rights, but these ends are met when a

20     class action is commenced. . . . [A] class complaint

    "notifies the defendants not only of the substantive

    claims being brought against them, but also of the

    number and generic identities of the potential

    plaintiffs who may participate in the judgment."

21 Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 352-53 (1983)

22 (citations omitted). However, American Pipe and Crown, Cork &

23 Seal involve plaintiffs' classes, and the parties have not cited

24 to any Supreme Court or Ninth Circuit appellate case that has

25 applied this rule to an action involving a defendants' class.

26     This Court's April 9, 1998 decision finding that tolling did

27 not occur until the filing of the SCACAC relied on the reasoning

28 of In Chevalier v. Baird Savings Ass'n, 72 F.R.D. 140, 155 (E.D.

9

---

1 Pa. 1976) which held that the statute of limitations is not

2 tolled against unnamed members of a defendant class unless and

3 until they are specifically named in an amended complaint.

4     This Court determined that Plaintiffs could not toll the

5 statute of limitations when a defendant has not specifically been

6 named, and has not received any sort of actual notice of the case

7 pending against it. This Court held, in both its April 1998 and

8 February 1999 Orders, that the present case is distinguished from

9 In re Activision Securities Litigation, 1986 WL 15339 at *5 (N.D.

10 Cal. Oct. 20, 1986) (tolling the statute of limitations as of the

11 date the original class complaint was filed where defendants were

12 members of the defendant class, but were not individually named)

13 because the defendants in that case conceded that they had actual

14 notice both that the suit was filed and that they were included

15 as defendant class members. Id. at *3.

16     In the February 19, 1999 Order, this Court held that it must

17 balance the needs of the defendant to be "notified of the

18 substantive claims brought against them" with ensuring that Rule

19 23 class actions are not deprived "of the efficiency and economy

20 of litigation which is a principal purpose of the [class action]

21 procedure." In re Activision, 1986 WL 15339 at *2 (citing

22 American Pipe). Accordingly, this Court affirms its prior

23 decisions and finds that tolling is proper as of June 10, 1994,

24 when Defendant Signal Securities was specifically named as a

25 member of the defendant class in the SCACAC. Because Defendant

26 then was named, this Court does not find it necessary for Signal

27 Securities to have been served with this complaint in order for

28 the statute of limitations to be tolled as of that date. The

10

1 judgment, this Court hopes that this issue be recognized as
2 previously adjudicated under the doctrine of the law of the case.
3 III. CONCLUSION
4 In view of the foregoing, Defendant's Motion for
5 Reconsideration is DENIED. To the extent this Order changes this
6 Court's February 19, 1999 Order, that Order is amended to reflect
7 these changes.
8 IT IS SO ORDERED.
9
10
11 DATED: 4-7-99
12
13                                    Hon. James F. Stiven
                                      United States Magistrate Judge
14 cc: Hon. Thomas Whelan
15     U.S. District Court Judge
       All parties and counsel
16
17

12

1 balancing test is satisfied when a defendant is specifically
2 named in a complaint, and actual notice is no longer an issue.
3 On the other hand, in order for Plaintiffs to have tolled
4 the statute of limitations as of March 1993, when the Dinamote
5 and Gold CACAC were filed, but Signal Securities was not named as
6 a Defendant, Plaintiffs must show that Defendant received some
7 sort of actual notice of the action. Since Plaintiff was unable
8 to allege facts showing that Defendant had actual notice of the
9 suit, this Court finds that tolling as of March 1993 is improper.
10 3. Tolling is proper as of January 6, 1997, with the filing
11 of the Garibaldi action.
12 For the reasons stated above, this Court finds that tolling
13 the statute of limitations from January 6, 1997, when the
14 Garibaldi action was filed, to March 3, 1997, when this action
15 was filed, is also proper. Defendant was a named defendant in
16 the Garibaldi action and this Court finds that this is sufficient
17 notice to toll the statute of limitations; it was not necessary
18 for Signal Securities to have been served with the complaint.[footnote]
19 In conclusion, this Court affirms its prior decisions and
20 finds that tolling the applicable statute of limitations is
21 proper from June 10, 1994 to December 11, 1996, and for some of
22 Plaintiff's claims, from January 6, 1997 to March 3, 1997, by
23 virtue of the Gold and Garibaldi actions respectively. This
24 Court finds that whether or not Defendant was served with these
25 complaints would not affect this decision. Should Defendant
26 attempt to relitigate this issue in a future motion for summary
27
28 [footnote] This Court notes and affirms its ruling in the February 19, 1999 Order that the Garibaldi action did not toll Plaintiffs' claims arising under the Securities Act of 1934.

11