USDC SCAN INDEX SHEET

















ANDY   6/8/99   13:34

3:96-CV-01023   BRADLEY V. HOFFENBERG

*319*

*BR.*

1 | Timothy C. Karen SBN: 117071
Law Offices of Timothy C. Karen
2 | 12702 Via Cortina, Suite 100
Del Mar, California 92014
3 |
Attorneys for Plaintiffs
4 |



5 |

6 |

7 | **UNITED STATES DISTRICT COURT**

8 | **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

9 |

10 | PAUL F. CLARK, SR., et al.,    ) Case No. 96-1023-JM (JFS)
                                  )
11 |            Plaintiffs,        ) **ADDITIONAL BRIEF IN SUPPORT OF**
         v.                       ) **REQUEST FOR DEFAULT JUDGMENT**
12 |                              )
     ANDOVER SECURITIES, INC., et al.  ) Courtroom: 6 - The Honorable Jeffrey
13 |                              )                T. Miller
             Defendants.          )
14 |                              )
                                  )
15 | _____  )

16 |        Plaintiffs submit the following additional brief in support of the request for default judgment:

17 |                                      **I.**
                                 **INTRODUCTION**

18 |
         Set forth below, Plaintiffs explain why the allegations of the second amended complaint
19 |
["SAC"] in this case are adequate to establish the liability of the defaulted defendants as to each of the
20 |
causes of action contained in the SAC for which entry of judgment is now sought.[1]  At this time,
21 |
Plaintiffs are seeking entry of judgment on their claims under Section 10(b) and Rule 10b-5 [second
22 |
cause of action, Section 12(2) [fourth cause of action], control person liability under the federal
23 |
securities laws [fifth and sixth causes of action], breach of fiduciary duty/trust [seventh cause of action],
24 |
the California Corporate Securities anti-fraud laws [tenth cause of action], and professional and ordinary
25 |
negligence [eleventh cause of action].
26 |

27 | _____

28 |        [1] Plaintiffs originally did not seek judgment on their first cause of action for declaratory relief.
They now voluntarily withdraw the request for judgment as to the third [Section 12(1)], eighth
[California unregistered securities], and ninth causes of action [breach of written contract].



1    Plaintiffs set forth the elements of each of these causes of action and match the allegations of

2    the complaint to these elements to show that Plaintiffs have properly met their pleading obligation.

3    Plaintiffs then show the proper measures of damages and why they are entitled to prejudgment interest.

**II.**
## PLAINTIFFS HAVE PROPERLY ALLEGED THE ELEMENTS OF EACH CAUSE OF ACTION FOR WHICH ENTRY OF JUDGMENT IS SOUGHT

**A.    The Second Cause of Action - Violations of Section 10(b) of the Exchange Act and Rule 10b-5(a), (b) and (c) is Sufficient.**

In order for a plaintiff to state a claim of securities fraud under § 10(b) of the Securities

Exchange Act of 1934, the following four elements must be established:    (1) defendant's

misrepresentation or ***omission of a material fact*** in connection with the purchase or sale of a security,

(2) plaintiffs detrimental reliance, (3) scienter, and (4) employment of the mails, an instrumentality of

interstate commerce, or a national security exchange in furtherance of the fraud.[2]  Richter v. Ach

(S.D.N.Y 1997) 962 F.Supp. 31, 33 (quoting Keenan v. D.H. Blair & Co., 838 F.Supp. 82, 85- 86

---

[2]  The statute of limitation is an affirmative defense that must be raised by way of an answer under Fed.R.Civ.P. 8(c) [which specifically lists the statute of limitations as an affirmative defense]. Affirmative defenses listed in Rule 8(c) which are not raised in an answer are waived.  Taylor v. United States (9th Cir.1987) 821 F.2d 1428, 1432;  U.S. v. Hitachi (Fed. Cir. 1999) 1999 W.L. 173695; Ivera-puig v. Garcia-Rosario (1st Cir. 1992) 983 F.2d 311, 319 fn.12;  McFarland v. Leyh (In the Matter of Tex. Gen. Petroleum Corp.) (5th Cir.1995) 52 F.3d 1330, 1337-38;  United States v. Carter (9th Cir. 1990) 906 F. 2d 1375, 1378;  999 v. C.I.T. Corp. (9th Cir. 1985)776 F.2d 866, 870. Because the Defendants against whom default is sought did not file an answer, it follows that they have waived the statute of limitations as a defense in this case.

Plaintiffs were ***not required*** to allege compliance with the statute of limitations in order to plead a claim for violations of Section 10(b)-5. Sperber Adams Assocs. v. JEM Management Assocs. Corp., 1992 U.S. Dist. LEXIS 8301, 90 Civ. 7405, 1992 WL 138344, at 2 (S.D.N.Y. June 4, 1992). Nonetheless, Plaintiffs have alleged that they did not discover the misconduct of Defendants until after Towers filed bankruptcy and that the Towers federal class action tolled the statute of limitations from February 9 or 10, 1993 through the fall of 1996. [SAC paragraph 115 on page 44 an d paragraph 121 on page 45 to paragraph 47 on page 128]. Plaintiffs have therefore alleged compliance with the statute. Additionally, there have been several rulings concerning the tolling effect of the class action and the triggering effect of the Towers bankruptcy.  In one ruling, the Court held the federal class action tolled the statute of limitations from June 10,1 994 through December 11, 1996 as to the Defendant class of brokerage houses.  In another ruling,  the Court found that the Towers Chapter 11 bankruptcy did not trigger the statute of limitations as a matter of law.  See, orders dated February 17, 1999 [pages 1 through 14] and April 9, 1999 [pages 5 through 11]in Meadows, et al. v. Pacific Inland Securities, et al., United States District Court case number  97-0358-JM (JFS).

1  (S.D.N.Y.1993);   Bischoff v. G.K. Scott & Co., Inc. (E.D.N.Y.1986) 687 F.Supp. 746, 749;  Savino

2  v. E.F. Hutton & Co., Inc., 507 F.Supp. 1225, 1231 (S.D.N.Y.1981).

3       In this case, Plaintiffs have alleged that the Defendants were stockbrokers who served as

4  financial advisors and who recommended Towers Promissory Notes to Plaintiffs.   Under these

5  circumstances,  it is not necessary for  Plaintiffs to allege particular affirmative misrepresentations by

6  the Defendants in order to state a claim for violations of 10b-5.  This is because it is possible to state

7  a claim based on omissions [See, Washington v. Baenziger, 673 F. Supp. 1478, 1482 (N.D. Cal.

8  1987)], lack of due diligence [See, Keenan v. D.H. Blair & Company Inc. (S.D. N.Y. 1993) 838 F.

9  Supp. 82], and recommendation of an unsuitable security [See, O'Connor v. R.F. Lafferty & Company,

10  Inc. (10th Cir. 1992) 965 F. 2d 893].  In this sense, a claim against a stockbroker who gives financial

11  advice may be somewhat different than the garden variety Section 10(b)-5 claim and  while Plaintiffs

12  may not have stated a claim under Section 10(b)-5 for affirmative misrepresentations in the SAC [due

13  to lack of particularity under Rule 9], Plaintiffs have sufficiently alleged a violation of Section 10(b)-5

14  in the Second Amended Complaint ["SAC"] based upon material omissions, lack of due diligence and

15  recommendation of an unsuitable security.    The authorities for this proposition are set forth below,

16  followed by references to the paragraphs in the SAC which support the claim.

17       **1.    A Claim for Violations of Section 10(b)-5 Can Be Based Upon Material Omissions.**

18

19       When the claim is based upon affirmative misrepresentations, Plaintiffs must allege the

20  circumstances of the fraud with particularity, including such matters as the time, place and contents of

21  false representations, as well as the identity of the person making the misrepresentation and what was

22  obtained or given up thereby.   Conclusory allegations that a defendant's conduct was fraudulent and

23  deceptive are not sufficient to satisfy the rule. Commercial Property Invs., Inc. v. Quality Inns Int'l, Inc.,

24  61 F.3d 639, 644 (8th Cir. 1995).  However, a broker-dealer owes investors an independent and non-

25  delegable duty to discover and disclose those facts that are reasonably ascertainable.  Sanders v. John

26  Nuveen & Co. (7th Cir. 1980) 619 F.2d 1222, 1227, cert. denied, 450 U.S. 1005 (1981).   Where a

27  fraud consists of omissions, and not affirmative misrepresentations, courts are more lenient with

28  their enforcement of Rule 9(b), and will allow a plaintiff to "find alternative ways to plead the

1 particular circumstances of the fraud." <u>Washington v. Baenziger</u>, 673 F. Supp. 1478, 1482 (N.D.

2 Cal. 1987). Obviously, when omissions are the basis of the claim, plaintiff cannot plead either

3 the specific time of the omission or the place, as he is not alleging an act, but a failure to act.

4 <u>Lindemuth v. Shannon Fin. Corp.</u>, 637 F.Supp. 991, 994 (N.D.Cal.1986). In <u>Lindemuth</u>, the

5 Court noted:

6    Plaintiffs cannot state the "time" of an omission. They specify that defendants
     Shannon, SFC and McCune had the specified information prior to the time
7    plaintiffs entered into the purchase agreement. This specifies the relevant time
     within two and a half months. There is no "place" where the omission occurred,
8    because plaintiffs are not alleging an act, they are alleging a failure to act. The
     manner of the omission is set forth in sufficient detail.
9
       In <u>Kramer v. Scientific Control Corp.</u> (E. D. Penn. 1973) 365 F. Supp. 780, the Court
10
   applied this rule, stating:
11
       Upon reading the amended complaint, it is easy to see that the bulk of the
12    allegations of the complaint are set forth in a form style which is suitable, upon
      substitution of names, places and dates, for almost any claim under the Federal
13    securities anti-fraud statutes initiated by a purchaser of securities. However, in
      paragraph 30 of the amended complaint, it is averred that some of the omissions
14    of material facts in the prospectus include, but are not limited to, those set forth.
      Two of the omissions are said to be the failure to include in the supporting
15    financial data a liability of $500,000 incurred by Scientific before the date of the
      prospectus and the fact that all accounts receivable had been pledged as collateral
16    for obligations incurred by Scientific. Admittedly, the averment mentioning the
      $500,000 item does not describe it as having been borrowed by Scientific from the
17    Republic National Bank of Dallas, Texas, nor does  the averment as to the
      pledging of assets describe what the "obligations" were for which the receivables
18    were pledged. Nevertheless, in my view, these two items are stated with sufficient
      particularity to satisfy Rule 9(b). See, <u>Gottlieb v. Sandia American Corporation</u>,
19    35 F.R.D. 223 (E.D.Pa.1964). [Footnote Omitted].

20    365 F. Supp. 780 at 788.

21       As can be seen from the above authorities, even when allegations concerning affirmative

22 misrepresentations are insufficient, a claim may be stated by reference to omissions, which by definition

23 include fewer contextual facts. The rule that a claim may be based entirely upon omissions, which

24 constitute a failure to act which by definition cannot be pleaded particularly, is well established. For

25 instance, in <u>Globus, Inc. v Jaroff</u> (1967, DC NY) 266 F Supp 524, the Court held that the listing of eight

26 material facts omitted from a notice of meeting and request for proxy ratification of a stock option

27 agreement was sufficient to state a cause of action.  In <u>Cadillac v. Cadillac</u> (1973, DC NY) 58 Fed.

28 Rules Dec. 534, the Court denied a motion to dismiss a complaint which charged that the individual

1  defendant corporate officers purchased securities from the corporation for a wholly inadequate

2  consideration, and failed to fully inform plaintiff of the financial facts when he was offered the

3  securities. The court said that the complaint was specific, containing more than conclusory allegations,

4  and was plainly sufficient to apprise defendants as to what activities were relied upon as constituting the

5  basis of the action. Importantly, the Court noted that the particularity necessary in averring fraud varied

6  with the type of fraud alleged, and that the degree of particularization required in a complaint sounding

7  in active fraud may be totally inappropriate in an action involving constructive fraud.  And in Securities

8  & Exchange Com. v Cable/Tel Corp. (1982, SD NY) 532 F Supp 873, CCH Fed. Sec. L. Rep ¶ 98464,

9  the Court held that the complaint would comply with Rule 9(b) where it identified specific statements

10 and omissions that were alleged to have been fraudulent, where it identified documents and passages in

11 such documents in which statements and omissions were made, and where it identified alleged role of

12 defendants in fraud.  As will be shown below, the SAC sufficiently details factual omissions by the

13 Defendants to state a claim under Section 10(b)-5.

14                    **2.    A Claim for Violations of Section 10(b)-5 Can Be Based Upon Lack of Due**
                         **Diligence by a stockbroker or Brokerage House.**
15
16              In Hanley v. SEC (2d Cir. 1969) 415 F.2d 589, the Court held that a broker's failure to conduct

    due diligence violated Rule 10b-5 and stated:
17
18            [The broker] cannot recommend a security unless there is an adequate and reasonable
              basis for such recommendation. He must disclose facts which he knows and those which
              are reasonably ascertainable. By his recommendation he implies that a reasonable
19            investigation has been made and that his recommendation rests on the conclusions based
              on that investigation. Where the salesman lacks essential information about a security,
20            he should disclose this as well as the risks which arise from his lack of information.

21 Hanley, 415 F.2d at 597.

22              A broker/dealer owes investors an independent and non-delegable duty to discover and disclose

23 those facts that are reasonably ascertainable. Sanders v. John Nuveen & Co. (7th Cir. 1980) 619 F.2d

24 1222, 1227, cert. denied, 450 U.S. 1005 (1981).  In Keenan v. D.H. Blair & Company Inc. (S.D. N.Y.

25 1993) 838 F. Supp. 82, the Court described this rule as follows:

26            By virtue of his position, a dealer 'implicitly represents he has an adequate basis for the
              opinions he renders.' Thus, a securities dealer must have an adequate and reasonable
27            basis in order to recommend a security, and must disclose facts of which he has
              knowledge or that are easily ascertainable.  In addition, a dealer implies that his
28            conclusions are the result of a reasonable investigation.  If essential information about

1    a security is not available to the dealer, he must disclose this and identify the risks
     associated with the absence of this information. The investigation undertaken by the
2    dealer will vary with the type of security involved. These duties have been described as
     implicit warranties of the soundness of the stock, in terms of value, earning capacity, and
3    the like. ***Failure to disclose information in contravention of the warranty is
     tantamount to an omission of a material fact.*** Dealers are under a special duty due to
4    their expertise, as well as their advisory activities. [Citations and footnotes omitted,
     emphasis added].

5    838 F. Supp. 82 at 89.

6
7        **3.    A Claim for Violations of Section 10(b)-5 Can Be Based Upon The
              Recommendation of an Unsuitable Security By a Stockbroker or Brokerage
              House Even Without Control Where a Fiduciary Duty to Disclose Exists.**
8
9        In addition to the requirement that a brokerage house conduct due diligence into an investment

10   before recommending it to a client, brokerage houses also have an obligation to take reasonable steps

11   to ensure that investment recommendations are suitable for a customer. The intentional or reckless

12   recommendation of an unsuitable security can violate § 10(b) and Rule 10b-5, even without control of

13   the account by the stockbroker, if a fiduciary duty exists whereby there is a duty to disclose.[3]  Clark v.

14   John Lamula Investors, Inc. (2d Cir.1978) 583 F.2d 594, 599-600; Cohen v. Prudential-Bache Securities,

15   Inc. (S.D.N.Y.1989) 714 F.Supp. 653; Arlington Heights Police Pension Fund v. Poder (N.D. Ill.1988)

16   700 F.Supp. 405;  Board of Trustees of the Fire Fighters Pension Fund v. Poder  (N.D.Ill.1989) 712

17   F.Supp. 135, 138;  Platsis v. E.F. Hutton & Co. Securities Litigation  (W.D.Mich.1985) Fed. Sec. L.

18   Rep. (CCH) 91,963 ["An allegation that a broker knew or reasonably believed certain investments were

19   unsuitable, but recommended them to plaintiff anyway is more than an allegation of 'puffing' and states

20   a violation of section 10(b).  Mauriber v. Shearson/American Express, Inc., 567 F.Supp. 1231, 1237

21   (S.D. N.Y. 1983)"].

22       In O'Connor v. R.F. Lafferty & Company, Inc. (10th Cir. 1992) 965 F. 2d 893, the Court

23   explained this rule as follows:

24
     _____

25       [3] Fraud by conduct is a violation of Rule 10b-5(a) and (c) and is analogous to a churning claim.
     O'Connor v. R.F. Lafferty & Company, Inc. (10th Cir. 1992) 965 F. 2d 893, 898. See, e.g., Trujillo, at
26   *61; ¶Woodruff v. Merrill Lynch, Pierce, Fenner, & Smith, Inc., Fed.Sec.L.Rep. (CCH) 95,386, 1989
     WL 224581 at *3 1989 U.S.Dist.Lexis 17196 at *9 (D.Neb. July 14, 1989). Churning is excessive
27   trading on an account by a broker in light of the investor's objectives. Hotmar v. Lowell H. Listrom &
     Co., 808 F.2d 1384, 1385-86 (10th Cir.1987).
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

O'Connor claims Defendants bought securities which were unsuitable for her investment needs. Federal courts recognize such a claim as a violation of § 10(b) and Rule 10b-5. The unsuitability doctrine is premised on New York Stock Exchange Rule 405-- Know Your Customer Rule and the National Association of Securities Dealers Rules of Fair Practice. Unsuitability claims can be analyzed as omission cases or fraudulent practices cases. This rule provides: "Every member organization is required ... to (1) Use due diligence to learn the essential facts relative to every customer, every order, every cash or margin account accepted or carried by such organization."

Some courts examining a § 10(b), Rule 10b-5 unsuitability claim have analyzed it simply as a misrepresentation or failure to disclose a material fact. In such a case, the broker has omitted telling the investor the recommendation is unsuitable for the investor's interests. The court may then use traditional laws concerning omission to examine the claim.

Under a misrepresentation or omission theory, a plaintiff can establish § 10(b), Rule 10b-5 liability by showing that in connection with the purchase or sale of a security--the broker made an untrue statement of a material fact, or failed to state a material fact, that in so doing, the broker acted knowingly with intent to deceive or defraud, and that plaintiff relied on the misrepresentations, and sustained damages as a proximate result of the misrepresentations. [Citations omitted].

965 F. 2d at 897.

In City of San Jose v. Paine, Webber, Jackson & Curtis Inc. (N. D. Cal. June 6, 1991) 1991 WL 352485, 1, 1991 U. S. Dist. LEXIS 8318, at 1, the Court stated:

The City's unsuitability claim can arguably be viewed as falling under either of two theories that derive from Rule 10b-5. Under the first theory, it could be said that the knowing recommendation of unsuitable trading is actionable because the dealer-defendants failed to disclose that the trading was unsuited to the City's objectives. 17 C.F.R. § 240.10b-5(b). For convenience, we shall refer to this as the "omission" theory. Under the second theory, the knowing recommendation of unsuitable trading could be said to be actionable because it constitutes fraud by conduct. 17 C.F.R. § 240.10b-5(a),(c). For convenience, we shall refer to this as the "fraudulent practice" theory.

* * *

Under this theory, it would appear that a suitability claim is merely a specialized form of an ordinary omission claim. A general omission claim exist & when a defendant omit[s] to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." §17 C.F.R. 240.10b-5. An unsuitability claim, then, would arise where a defendant, knowing of plaintiff's investment objectives, recommends a course of trading that is at odds with those objectives. In such a case, the defendant has omitted the fact that the recommendation is unsuitable.

In order for a failure to disclose certain facts to be actionable, however, the defendant must first have a duty to disclose the information; "such liability is premised on a duty to disclose arising from a relationship of trust and confidence between parties to a transaction." Chiarella v. United States, 445 U.S. 222, 230 1980). Subsequently, the Court held that the duty arises from the existence of a fiduciary relationship. Not to require such a fiduciary relationship, we recognized, would 'depar[t] radically from the established doctrine that duty arises from a specific relationship between two parties' and would amount to 'recognizing a general -duty between all participants in market

-7-

transactions.' <u>Dirks v. SEC</u>, 463 U.S. 646, 654-55 (1983) (quoting <u>Chiarella</u>, 445 U.S. at 232).

> Based on this reasoning, it would seem that the defendants' mere failure to disclose that the recommendation is unsuitable--by itself--is insufficient to impose liability. To impose liability for non-disclosure, the City must first show that its relationship with the dealer defendants was such that a duty to disclose should be imposed. The critical question, therefore, would seem to be the source of that duty. In the typical case, the duty arises from the fiduciary relationship between the broker and the customer. <u>Reason v. Rosary</u>, 811 F.2d 1322 (9th Cir.1987). [Footnotes omitted].

As can be seen, when a duty to disclose exists because of a fiduciary relationship, the *recommendation of an unsuitable security can violate § 10(b) and Rule 10b-5.* Further, the recommendation of a security as suitable when there is *no basis* for the recommendation is a form of actionable fraud, because a stockbroker implicitly represents he has an adequate basis for the opinions he renders and must have an adequate and reasonable basis in order to recommend a security. See, <u>Keenan v. D.H. Blair & Company Inc.</u> (S.D. N.Y. 1993) 838 F. Supp. 82; <u>Sanders v. John Nuveen & Co.</u> (7th Cir. 1980) 619 F.2d 1222, 1227, cert. denied, 450 U.S. 1005 (1981); <u>Hanley v. SEC</u> (2d Cir. 1969) 415 F.2d 589. This can be viewed as the species of common law fraud whereby the defendant asserts a fact as true without any reasonable basis for the assertion in order to induce action by the plaintiff. Restatement of Torts Third §526, Conditions under Which Misrepresentation Is Fraudulent (Scienter), provides: That a misrepresentation is fraudulent if the maker (a) knows or believes that the matter is not as he represents it to be, or (b) does not have the confidence in the accuracy of his representation that he states or implies, or (c) knows that he does not have the basis for his representation that he states or implies. Thus, scienter can be established by allegations that a stockbroker recommended an investment as suitable for an investor without knowing whether the recommendation is in fact suitable. This is a "reckless disregard of truth" standard. See <u>Nelson v. Serwold</u>, 576 F.2d 1332, 1337 (9th Cir.), cert. den. 439 U.S. 970 (1978). <u>Rolf v. Blyth, Eastman Dillon & Co.</u> (2d Cir.1978) 570 F.2d 38, 45.

Plaintiffs contend that the heightened pleading requirements of the Private Securities Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737 (the "Reform Act") do not apply to this action because it is based on conduct that occurred long before the statute was enacted and a class action was filed against the brokerage house defendants on March 1, 1993 and remained pending until December 1, 1996. This

1 action is merely a continuation of that class action, and the Reform Act was not made law until 1995.

2 Under these circumstances, the Reform Act does not apply to this case. In re Stratosphere Corporation

3 Securities Litigation (D. Nevada 1998) 1 F.Supp.2d 1096, *1105.

4   But even if the Reform Act does apply to this case, it did not abrogate the *recklessness* standard

5 upon which Plaintiffs' rely to establish scienter, except where the statute provides otherwise, as in the

6 safe harbor provisions. In re Stratosphere Corporation Securities Litigation (D. Nevada 1998) 1

7 F.Supp.2d 1096, *1106. See also, Baesa Securities Litigation (S.D.N.Y. 1997) 969 F. Supp. 238; In

8 re Health Management, Inc. Securities Litigation (E.D.N.Y 1997) 970 F.Supp. 192, 201. Under the

9 Reform Act, the complaint must now "state with particularity facts giving rise to a strong inference that

10 the defendant acted with the requisite state of mind." §15 U.S.C. 78u-4(b)(2), Pub.L. No. 104-67 §

11 21D(b)(2). However, it is possible to make this showing based upon reckless behavior. Marksman

12 Partners, L.P. v. Chantal Pharmaceutical Corp. 927 F.Supp. 1297, 1310 (C.D.Cal.1996). There are two

13 distinct ways in which a plaintiff may plead scienter without direct knowledge of Defendant's state of

14 mind. First, a plaintiff can allege "facts constituting circumstantial evidence of either reckless or

15 conscious behavior." Second, a plaintiff can allege facts "establishing a motive to commit fraud and

16 an opportunity to do so." Zeid v. Kimberley, 930 F.Supp. 431, 437 (N.D.Cal.1996) [citing In re Time

17 Warner Inc. Securities Litigation (2nd Cir. 1993) 9 F.3d, 259, 269]. See also, Powers v. Eichen (S.D. Cal.

18 1997) 977 F.Supp. 1031, 1038. Fugman v. Aprogenex (N.D. Ill. 1997) 961 F.Supp. 1190, 1195.

19 Further, circumstantial evidence sufficient to prove scienter because of the difficulty inherent in proving

20 state of mind. Gray v. First Winthrop Corp. (9th Cir.1996) 82 F.3d 877, 884. As will be seen, Plaintiffs

21 have met the pleading standards necessary to state a 10b-5 claim.

22   Plaintiffs cite the specific allegations in the SAC below which make out a cause of action for

23 violations of Section 10(b)-5 by reckless behavior and omissions, in light of Defendants' duty of due

24 diligence, fiduciary duty and a duty to make suitable recommendations.

25    **4.** **The SAC States a Sufficiently Pleaded Claim for Violation of Section 10(b)-5**

26     **Because It Sets forth Particular Omissions, Alleges Lack of Due Diligence and the Recommendation of Unsuitable Securities**.

27   Plaintiffs have met the standard of pleading a cause of action for violations of Section 10(b)-5

28 based upon omissions, lack of due diligence, and unsuitable recommendations by the stockbrokers and

1   brokerage houses who served as financial advisors to Plaintiffs and recommended the Towers Notes to

2   Plaintiffs.  Plaintiffs have alleged that they retained the Defendants to provide expert financial advice

3   in the capacity of either a brokerage house or a stockbroker and that a fiduciary relationship arose in this

4   context.  [SAC at paragraph 3 on page 2 through paragraph 8 on pages 3 and 4 and paragraph 40 on

5   pages 27 through 28].  In the context of this relationship, the Defendants recommended that Plaintiffs

6   purchase the Towers investment, and Plaintiffs followed this recommendation.  [See SAC paragraph 39

7   on pages 26 through 27, paragraphs 113 and 114 on pages 49 and 50; and for BRADLEY, paragraph 12,

8   page 6;  for KRILL, LOCKLAR and URWILLER, paragraph 32 on pages 20 and 21; for JOHNSON,

9   paragraph 26 on page 17].  Defendants knew or should have known of many adverse facts regarding the

10  Towers Notes which were not disclosed to plaintiffs.  Plaintiffs allege these adverse facts particularly

11  and in detail.  [SAC  paragraph 42 on page 28 through paragraph 104 on page 47, and  paragraph 108

12  on page 48].  For instance, at paragraph 104 on page 46 and 47,  Plaintiffs allege that Defendants knew

13  or should have known, inter alia:

14          (a)     that, in fact, Towers had an extensive history of fraud, securities law violations,

15  consumer fraud allegations, persistent allegations of past diversions of funds from affiliates and

16  subsidiaries, unpaid court judgments, prior bankruptcies and other conduct inconsistent with a

17  creditworthy company, and that state and federal investigations and prosecutions were then underway

18  involving Hoffenberg, Towers, and/or its affiliates;

19          (b)     that Hoffenberg had previously caused at least four companies he had led to seek

20  bankruptcy protection and that Moody's Investors, Service had declined on this basis to issue a rating

21  for one of the issues of securities when approached to do so by Towers in 1991;

22          (c)     that Towers as servicer had failed to provide detailed financial reports describing

23  the receivables on a monthly basis as would otherwise have been done if the operation was legitimate;

24          (d)     that Towers was improperly purchasing from providers receivables which served

25  as collateral for the bonds but were not owned by the providers free from any prior sale, lien,

26  encumbrance or security interest, and, thus, not of adequate strength; and

27          (e)     that in fact Towers was insolvent and that Towers had abrogated the terms of the

28  indenture agreement with the bond trustee, Shawmut National Bank, a result of which was the genuine

-10-

1    and material risk of default on the bonds.

2             (f)    that Towers was being investigated by the SEC for violations of the federal

3    securities laws as of the fall of 1991.

4             (g)    that Hoffenberg had a long history of improper and or illegal conduct.

5        None of these facts were disclosed to Plaintiffs. Had Plaintiffs known of the material adverse

6    information not disclosed by the Defendants, they would not have purchased the Notes.    [SAC

7    paragraphs 113 through 116 on pages 50-51]. Defendants failed to disclose these facts as part of a

8    scheme to defraud Plaintiffs. [SAC at paragraphs 135 through 141on page 58]. Plaintiffs were not

9    aware of these adverse facts. [SAC at paragraph 113 on page 49 and paragraph  116 on page 50].

10   Plaintiffs would not have purchased the investments if they had known these adverse facts. [SAC

11   paragraph 113 on page 49]. Defendants acted to further their own financial interests, with knowledge

12   that injury would result to Plaintiffs. [SAC paragraph 111 on page 48 and paragraph 116 on page 50].

13   As a result, Plaintiffs suffered the loss of their funds. [SAC paragraph 117 on page 51].   Defendants

14   used means or instruments of transportation or communication in interstate commerce or of the mails

15   in committing the fraud.  [SAC paragraph 148, page 59].  Defendants had a duty to conduct due

16   diligence into the Towers Notes and Defendants failed to do so. [SAC paragraph 40 on page 27-28 and

17   paragraph 100 (f) on page 43].  The Towers Notes were unsuitable for Plaintiffs and Defendants knew

18   when they recommended the  investments to Plaintiffs that they were unsuitable for Plaintiffs.  [SAC

19   paragraph 116 on pages 50-51].

20       In light of the above allegations, and considering the authorities cited above, Plaintiffs have

21   clearly alleged the elements of a claim based upon non-disclosure, lack of due diligence and

22   recommendation of unsuitable investment  under Section 10(b) and Rule 10b-5 in the SAC.

23   **B.    The Fourth Cause of Action For Violations of §12(2) of the Securities Act of 1933
     (15 U.S.C. §771(2) is Sufficient.**

24

25       Section  12(2)  provides that any person who "offers or sells a security . . . by means of a

26   prospectus or oral communication, which includes an untrue statement of a material fact or omits to state

27   a material fact" may be liable to an unknowing purchaser. Under §12(2) defendants may be held liable

28   for negligent misrepresentation or omission. Richards v. Lloyd's of London (9th Cir. 1998) 135 F.3d

1  1289, 1299; <u>Ballay v. Legg Mason WoodWalker, Inc.</u>, 925 F.2d 682, 687-88 (3d Cir. 1991).  Section

2  12(2) has no requirement of justifiable reliance on the part of a purchaser.  Because of this, a purchaser's

3  investment sophistication is immaterial to a section 12(2) claim.  A purchaser has no duty to investigate

4  a seller's possible fraud and need not verify a statement's accuracy.  <u>Wright v. National Warranty Co.</u> (6th

5  Cir. 1992) 953 F. 2d 256, 261-262.  Plaintiffs were not required to allege the existence of oral

6  misrepresentations as they are entitled to sue under §12(2) based on fraudulent statements in the offering

7  memorandum.  A Section 12(2) claim may be based on misrepresentations in a prospectus, which is

8  defined as "documents related to public offerings by an issuer or its controlling shareholders." <u>Dietrich</u>

9  <u>v. Bauer</u> 1999 WL 126438, *11 (S.D.N.Y.).  Plaintiffs have alleged that the Towers Notes were a public

10  offering and have explained by Regulation D did not apply. [SAC paragraph 101 and 102 on page 40].

11  Accordingly, the Offering Memorandum constituted "a prospectus" under §12(2).

12  As to the statute of limitations issue, a plaintiff under § 12(2) is not required to prove due

13  diligence.  All that is required is ignorance of the untruth or omission.  <u>Casella v. Webb</u>, (1989) 883

14  F. 2d 805, 809.  The doctrine of fraudulent concealment applies to the one-year limitations period under

15  Section 13 for 12(2) claims. <u>Lentz v. Woolley</u> (C.D. Cal. 1989) Fed. Sec. L. Rep. (CCH) ¶94,498, at

16  93,181.  In support of their Section 12(2) claim, Plaintiffs have alleged that Defendants misrepresented

17  or omitted numerous material facts regarding the economic features of Towers and omitted to state that

18  was actually sold in violation of federal and state registration laws.  Plaintiffs have also alleged facts

19  constituting fraudulent concealment  justifying equitable tolling under Section 12(2).

20  The statute of limitations may be tolled by the reassurances of a broker to a client regarding

21  matters relevant to possible misrepresentation.  <u>Vucinich v. Paine, Webber, Jackson & Curtis, Inc.</u> (9th

22  Cir. 1986) 803 F.2d 454, 459-461 ("<u>Vucinich</u> II").  This type of conduct has been held to constitute

23  fraudulent concealment in this type of case.  <u>Katz v. Amos Treat & Co.</u> (2d Cir. 1969) 411 F.2d 1046,

24  at 1055; <u>Washington, v. Baenziger</u> (N.D. Cal. 1987) 673 F. Supp. 1478, 1485.

25  Plaintiffs have alleged that they retained the Defendants to provide expert financial advice in

26  the capacity of either a brokerage house or a stockbroker and that a fiduciary relationship arose in this

27  context. [SAC at paragraph 3 on page 2 through paragraph 8 on pages 3 and 4 and paragraph 40 on

28  pages 27 through 28].  In the context of this relationship, the Defendants recommended that Plaintiffs

-12-

1   purchase the Towers investment, and Plaintiffs followed this recommendation. [See SAC paragraph 39

2   on pages 26 through 27, paragraphs 113 and 114 on pages 49 and 50; and for BRADLEY, paragraph 12,

3   page 6; for KRILL, LOCKLAR and URWILLER, paragraph 32 on pages 20 and 21; for JOHNSON,

4   paragraph 26 on page 17]. Defendants knew or should have known of many adverse facts regarding the

5   Towers Notes which were not disclosed to plaintiffs. Plaintiffs allege these adverse facts particularly

6   and in detail. These facts included the fact that the Towers Notes were sold in violation of state and

7   federal registration and qualification laws and that the financial statements provided were fraudulent.

8   [SAC paragraph 42 on page 28 through paragraph 104 on page 47, and paragraph 108 on page 48].

9   Defendants failed to disclose these facts as part of a scheme to defraud Plaintiffs. [SAC at paragraphs

10   135 through 141on page 58]. Plaintiffs were not aware of these adverse facts. [SAC at paragraph 113

11   on page 49 and paragraph 116 on page 50]. Plaintiffs would not have purchased the investments if they

12   had known these adverse facts. [SAC paragraph 113 on page 49]. The SAC alleges that the sale of the

13   investment was accompanied by an Offering Memorandum and that there were many material

14   misrepresentations contained in the Offering Memorandum for the Towers Notes. [SAC paragraph 52

15   on pages 30-31, paragraph 56 on page 31-32, paragraph 63 on page 33 through paragraph 69 on page

16   35-36]. The SAC also lists material omissions from the Offering Memorandum, including the fact that

17   Towers was a criminal ponzi scheme with fraudulent financial statements and the Towers Notes were

18   sold in violation of State and Federal registration and qualification requirements. Plaintiffs were not

19   aware of these adverse facts. Plaintiffs have alleged delayed discovery of the fraud in the context of a

20   fiduciary relationship with Defendants. [SAC paragraph 115 on page 50]. As a result, Plaintiffs

21   suffered the loss of their funds. [SAC paragraph 117 on page 51]. Defendants used means or

22   instruments of transportation or communication in interstate commerce or of the mails in committing

23   the fraud. [SAC paragraph 148, page 59]. These allegations are sufficient to state a claim under Section

24   12(2) of the Securities Act of 1933 (15 U.S.C. §77l(2).

25       C.   **The Fifth and Sixth Causes of Action For Controlling Person Liability are Sufficient**.

26

27         As Plaintiffs have shown, Plaintiffs have made out an underlying violation of Sections 10(b)

  and 12(2). The only Defendants against whom controlling person liability is sought on the Section 12(2)

28

1  claim in this case are the brokerage houses that employed the stockbrokers who sold the Towers Notes

2  to Plaintiffs.   As a matter of law, brokerage houses are controlling persons of the stockbrokers they

3  employ for transactions conducted within the course and scope of the employment.  Hollinger v. Titan

4  Capital Corporation (Ninth Cir. 1990) 914 F. 2d 1564.  Plaintiffs have alleged that the stockbrokers who

5  recommended and sold the Towers Notes were acting as employees of these brokerage house Defendants

6  and acting within the course and scope of their employment at the time of the transactions.   [See SAC

7  paragraph 38 on pages 23 and 24, paragraph 114 on page 43, and for  BRADLEY, paragraph 12, pages

8  5 and 6; KRILL, LOCKLAR and URWILLER, paragraph 32 on pages 18 and 19; JOHNSON, paragraph

9  26 on page 15].  Accordingly, Plaintiffs have stated a claim under Section 15 for vicarious liability.

10
11

    **C.**    **The Seventh  Cause of Action For Breach of Fiduciary Duty and Breach of**
        **Trust Relationship is  Sufficient**.

12          The elements of a cause of action for breach of fiduciary duty are: (1) the existence of a

13  fiduciary duty;  (2) the breach of that duty;  and (3) damage proximately caused by that breach.  For

14  causation to be established, there must be a nexus between the compensatory damages assessed and the

15  breaches of fiduciary.  Stanley v. Richmond (1995) 35 Cal.App.4th 1070. 1086.  When the breach

16  involves non-disclosure of facts, intent and motive are irrelevant.  Quintilliani v. Mannerino (1998) 62

17  Cal.App.4th 54, 69;  Koebig v. Southern Pacific Co. (1895) 108 Cal. 235, 239-240;  Byrum v. Brand

18  (1990) 219 Cal. App. 3d 926, 938.

19          Plaintiffs have alleged that they retained the Defendants to provide expert financial advice in the

20  capacity of either a brokerage house or a stockbroker and that a fiduciary relationship arose in this

21  context. [SAC at paragraph 3 on page 2 through paragraph 8 on pages 3 and 4 and paragraph 40 on

22  pages 27 through 28].   In the context of this relationship, the Defendants recommended that Plaintiffs

23  purchase the Towers investment, and Plaintiffs followed this recommendation. [See SAC paragraph 39

24  on pages 26 through 27, paragraphs 113 and 114 on pages 49 and 50; and for BRADLEY, paragraph 12,

25  page 6;  for KRILL, LOCKLAR and URWILLER, paragraph 32 on pages 20 and 21; for JOHNSON,

26  paragraph 26 on page 17].  Defendants knew or should have known of many adverse facts regarding the

27  Towers Notes which were not disclosed to plaintiffs.  Plaintiffs allege these adverse facts particularly

28  and in detail.  These facts included the fact that the Towers Notes were sold in violation of state and

1   federal registration and qualification laws and that the financial statements provided were fraudulent.

2   [SAC paragraph 42 on page 28 through paragraph 104 on page 47, and paragraph 108 on page 48].

3   Defendants failed to disclose these facts as part of a scheme to defraud Plaintiffs. [SAC at paragraphs

4   135 through 141on page 58]. Plaintiffs were not aware of these adverse facts. [SAC at paragraph 113

5   on page 49 and paragraph 116 on page 50]. Plaintiffs would not have purchased the investments if they

6   had known these adverse facts. [SAC paragraph 113 on page 49]. Defendants acted to further their own

7   financial interests, with knowledge that injury would result to Plaintiffs. [SAC paragraph 111 on page

8   48 and paragraph 116 on page 50]. As a result, Plaintiffs suffered the loss of their funds. [SAC

9   paragraph 117 on page 51]. Defendants used means or instruments of transportation or communication

10  in interstate commerce or of the mails in committing the fraud. [SAC paragraph 148, page 59].

11  Defendants had a duty to conduct due diligence into the Towers Notes and Defendants failed to do so.

12  [SAC paragraph 40 on page 27-28 and paragraph 100 (f) on page 43]. The Towers Notes were

13  unsuitable for Plaintiffs and Defendants knew when they recommended the investments to Plaintiffs

14  that they were unsuitable for Plaintiffs. [SAC paragraph 116 on pages 50-51].

15      In light of the above allegations, Plaintiffs have clearly alleged breach of fiduciary duty and trust

16  relationship. See, Hobbs v. Eichler (1985) 164 Cal. App. 3d 174, 193. In Pusateri v. E. F. Hutton &

17  Co. (1986) 180 Cal. App.3d 247, 253, the court stated: "It is undisputed that during the relevant period

18  Nee was acting as an authorized officer or managing agent of E. F. Hutton and that Johnson, as plaintiffs'

19  broker, was a fiduciary owing a high duty to act in good faith and to render a full and fair disclosure of

20  all facts affecting their rights and interests." Thus, when a fiduciary duty exists, an actual representation

21  is not a required element of a cause of action for breach of fiduciary duty or constructive fraud. Byrum

22  v. Brand (1990) 219 Cal. App. 3d at 941.

23      The law is well settled in California that the relationship between a stockbroker and his customer

24  is fiduciary in nature, imposing on the former the duty to act in the highest good faith toward his

25  customer. Blankenheim v. E.F. Hutton (1990) 217 Cal. App.3d 1463, 1475, rev. denied, May 3, 1990;

26  Hobbs v. Eichler (1985) 164 Cal. App. 3d 174, 193. In Pusateri v. E. F. Hutton & Co. (1986) 180 Cal.

27  App.3d 247, 253, the court stated: "It is undisputed that during the relevant period Nee was acting as

28  an authorized officer or managing agent of E. F. Hutton and that Johnson, as plaintiffs' broker, was a

1  fiduciary owing a high duty to act in good faith and to render a full and fair disclosure of all facts

2  affecting their rights and interests."  In Twomey v. Mitchum, Jones & Templeton (1969) 262 Cal. App.

3  2d 690, the Court stated:  "The relationship between broker and principal is fiduciary in nature and

4  imposes on the broker the duty of acting in the highest good faith toward the principal."  The fiduciary

5  duty rule is thoroughly established under California law.  In the case of  Hobbs v. Eichler (1985) 164

6  Cal. App. 3d 174, 193, the Court noted that often times the financial interests of a broker may conflict

7  with the duties owed to an investor:

8       This is a classic example of the conflict of interest which exists in the securities industry
         and is at the heart of the circumstances which resulted in the "hobbling" of Mrs. Hobbs.
9       On the one hand, brokers act as investment advisors to their clients.  On the other hand,
         they are salespersons, dependent upon their brokerage commissions for a livelihood.
10      Commissions are received only when customers engage in transactions.  Individual
         brokers employed by a brokerage firm normally obtain their sole compensation between
11      30 and 40 percent of the commissions they produce.

12      "Under this compensation system, few brokers are immune to the temptation to consider
         their financial interest from time to time while they are advising their clients.  Being at
13      once a salesman and a counselor is too much of a burden for most mortals.'"

14      Sadly, the Securities and Exchange Commission, while prosecuting numerous churning
         cases, has not seen its way to correct the abuse.  Under these circumstances, it is our view
15      that the imposition of substantial punitive damages against a predatory broker will serve
         to curb the appetite of others similarly inclined.

16
    164 Cal. App. 3d at 204.
17
         The fiduciary obligations owed by a stockbroker or a brokerage house providing investment
18
    advice require these professionals to carefully guard against transactions which are not in the best
19
    interests of investors, even when this means the loss of substantial sales commissions which could have
20
    been generated by inappropriate transactions. Under California's law of stockbroker fiduciary duty, a
21
    stockbroker has a duty to look after the best interests of both unsophisticated and sophisticated investors.
22
    It is the fiduciary relationship between the customer and the stockbroker which determines the duty of
23
    care owed by the stockbroker, not the relative sophistication of the customer.  As noted in Duffy v.
24
    Cavalier (1989) 215 Cal. App. 3d 1517, a stockbroker's duty to protect a client against improvident
25
    transactions is not limited simply to fulfilling the client's desires for large profits or a high rate of return.
26
    The Court stated:
27
         The [Twomey] Court concluded that where an apparently unsophisticated investor
28       expresses a desire to engage in speculative investments with the objection of making

                                              -16-

large profits, the stockbroker cannot simply carry out the customer's wishes. Rather, the stockbroker has a fiduciary duty (1) to ascertain that the investor understands the investment risks in the light of his or her actual financial situation; (2) to inform the customer that no speculative investments are suitable if the customer persists in wanting to engage in such speculative transactions without the stockbroker's being persuaded that the customer is able to bear the financial risks involved; and (3) to refrain completely from soliciting the customer's purchase of any speculative securities which the stockbroker considers to be beyond the customer's risk threshold.

215 Cal. App. 3d at 1532.

As can be seen, under California law, a stockbroker or brokerage house that renders financial advisory services has a duty to protect the client's best interests and this is the fiduciary duty referred to in the complaint. Under the above authorities Plaintiffs have clearly stated a breach of fiduciary duty claim.

**E.    The Tenth Cause of Action For Direct and Vicarious Liability Under Corporations Code §§ 25401, 25501, 25504, 25504.1 and 25504.2 is Sufficient.**

Plaintiffs' claims direct and vicarious liability for violations of the State Securities Laws are sufficient for the same reasons that the Sections 10(b) and 12(2) claims are sufficient, but more so, since liability can be established under Corporations Code §§ 25401 and 25501 without proof of reliance or scienter. Bowden v. Robinson (1977) 67 Cal. App.3d 705, 715. Witkin, SUMMARY OF CALIFORNIA LAW (9th Ed. 1995) Corporations §299, p. 774 ["Witkin on Corporations"].  In Bowden, the Court stated: "Sections 25401 and 25501 differ from common law negligent misrepresentation in that: (1) proof of reliance is not required, (2) although the fact misrepresented or omitted must be "material," no proof of causation is required, and (3) plaintiff need not plead defendant's negligence." 67 Cal. 3d at 715.      Plaintiffs have alleged that they retained the Defendants to provide expert financial advice in the capacity of either a brokerage house or a stockbroker and that a fiduciary relationship arose in this context.  [SAC at paragraph 3 on page 2 through paragraph 8 on pages 3 and 4 and paragraph 40 on pages 27 through 28].  *In the context of this relationship, the Defendants recommended that Plaintiffs purchase the Towers investment, and Plaintiffs followed this recommendation.* [See SAC paragraph 39 on pages 26 through 27, paragraphs 113 and 114 on pages 49 and 50; and for BRADLEY, paragraph 12, page 6;  for KRILL, LOCKLAR and URWILLER, paragraph 32 on pages 20 and 21; for JOHNSON, paragraph 26 on page 17]. Defendants knew or should have known of many adverse facts regarding the

-17-

1  Towers Notes which were not disclosed to plaintiffs.  Plaintiffs allege these adverse facts particularly

2  and in detail.  These facts included the fact that the Towers Notes were sold in violation of state and

3  federal registration and qualification laws and that the financial statements provided were fraudulent.

4  [SAC  paragraph 42 on page 28 through paragraph 104 on page 47, and  paragraph 108 on page 48].

5  Defendants failed to disclose these facts as part of a scheme to defraud Plaintiffs.  [SAC at paragraphs

6  135 through 141on page 58].  Plaintiffs were not aware of these adverse facts.  [SAC at paragraph 113

7  on page 49 and paragraph  116 on page 50].  Plaintiffs would not have purchased the investments if they

8  had known these adverse facts.  [SAC paragraph 113 on page 49].  Defendants acted to further their own

9  financial interests, with knowledge that injury would result to Plaintiffs.  [SAC paragraph 111 on page

10  48 and paragraph 116 on page 50].  As a result, Plaintiffs suffered the loss of their funds.  [SAC

11  paragraph 117 on page 51].  Defendants used means or instruments of transportation or communication

12  in interstate commerce or of the mails in committing the fraud.  [SAC paragraph 148, page 59].

13  Defendants had a duty to conduct due diligence into the Towers Notes and Defendants failed to do so.

14  [SAC paragraph 40 on page 27-28 and paragraph 100 (f) on page 43].    The Towers Notes were

15  unsuitable for Plaintiffs and Defendants knew when they recommended the  investments to Plaintiffs

16  that they were unsuitable for Plaintiffs.  [SAC paragraph 116 on pages 50-51].

17        As Plaintiffs have shown, Plaintiffs have made out an underlying violation of Sections 25401

18  and 25501.  The only Defendants against whom controlling person liability is sought on the Section

19  25504 claim in this case are the brokerage houses that employed the stockbrokers who sold the Towers

20  Notes to Plaintiffs.   Section 25504, which provides:

21        Every person who directly or indirectly controls a person liable under Section 25501 or
        25503, every partner in a firm so liable, every principal executive officer or director of
22        a corporation so liable, every person occupying a similar status or performing similar
        functions, every employee of a person so  liable who materially aids in the act or
23        transaction constituting the violation, and every broker-dealer or agent who materially
        aids in the act or transaction constituting the violation, are also liable jointly and
24        severally with and to the same extent as such person, unless the other person who is so
        liable had no knowledge of or reasonable grounds to believe in the existence of the facts
25        by reason of which the liability is alleged to exist.

26        As a matter of law, brokerage houses are controlling persons of the stockbrokers they employ

27  for transactions conducted within the course and scope of the employment.  Hollinger v. Titan Capital

28  Corporation (Ninth Cir. 1990) 914 F. 2d 1564.  Plaintiffs have alleged that the stockbrokers who

1  recommended and sold the Towers Notes were acting as employees of these brokerage house Defendants

2  and acting within the course and scope of their employment at the time of the transactions.    [See SAC

3  paragraph 38 on pages 23 and 24, paragraph 114 on page 43, and for BRADLEY, paragraph 12, pages

4  5 and 6; KRILL, LOCKLAR and URWILLER, paragraph 32 on pages 18 and 19; JOHNSON, paragraph

5  26 on page 15].   Accordingly, Plaintiffs have stated a claim under Section 25504 against the brokerage

6  houses.

7

8  **F.    The Eleventh Cause of Action For Professional and Ordinary Negligence is Sufficient**.

9

10  Plaintiffs have sufficiently alleged a claim for negligence.  The rules and regulations of the

various self-regulatory organizations to which Defendants belong, including the National Association

11

of Securities Dealers ["NASD"] and the New York Stock Exchange ["NYSE"] establish a standard of

12

care for Defendants. These standards were discussed in Komanoff v. Mabon, Nugent & Co. (1995) 884

13

F.Supp. 848, where the Court stated:

14

15  Plaintiffs bring claims stemming from defendants' alleged violations of certain "Customers' Agreements" executed by the parties, which required defendants "to comply with the bylaw, rules and regulations" of the National Association of Securities Dealers

16  ("NASD") and New York Stock Exchange ("NYSE"). Amended Complaint P 66. In particular, plaintiffs argue that defendants breached these Customers' Agreements by

17  violating NYSE Rule 405, sometimes referred to as the "know your customer" rule, n17 and Article III, Section 2 of the  NASD's Rules of Fair Practice, also known as the

18  "suitability" rule. n18

19  n17 Rule 405 provides, in relevant part:

20  "Every member organization is required . . . to

21  (1) Use due diligence to learn the essential facts relative to every customer, every order, every cash or margin account accepted or carried by such organization and every person

22  holding power of attorney over any account accepted or carried by such organization.

23  Supervision of Accounts

24  (2) Supervise diligently all accounts handled by registered representatives of the organization.

25

26  n18 Article III, section 2 of the NASD Rules of Fair Practice provides, in relevant part:

In recommending to a customer the purchase, sale or exchange of any security, a member

27  shall have reasonable grounds for believing that the recommendation is suitable for such customer upon the basis of the facts, if any, disclosed by such customer as to his other

28  security holdings and as to his financial situation and needs.

-19-

1    Defendants move this Court to dismiss these claims, pursuant to F.R.C.P. 12(b)(6),
      because "the Courts have repeatedly held there is no private right of action" for violations
2    of either Rule 405 or Article III, Section 2. Defendants' Memorandum Dated Jan. 5,
      1994 ("Defendants' Mem.") at 83-87. We agree that the trend in this Circuit has been to
3    find no such implied right. [Citations and footnotes omitted].

4    However, we need not reach this issue because we read plaintiff's complaint not as
      asserting an implied right of action under Rule 405 or Article III, but rather as asserting
5    a breach of contract claim. The Amended Complaint states that "Plaintiffs and Defendant
      Mabon executed Customers' Agreements which required that Defendant Mabon comply
6    with [Rule 405 and Article III], and the failure of Defendant Mabon to comply with those
      by-laws, rules and regulations constitutes a material breach of the contractual agreement
7    . . . ." Amended Complaint P 66. Assuming these allegations to be true, as we must for
      purposes of Rule 12(b)(6), plaintiffs have a breach of contract claim entirely independent
8    from any possible claim existing under Rule 405 or Article III. See Hofmayer v. Dean
      Witter & Co., 459 F. Supp. 733, 739 (N.D. Cal. 1978) (where plaintiff alleged violations
9    by defendant of certain rules of the Chicago Board of Trade and the Chicago Mercantile
      Exchange, plaintiff's claim "should properly have been separated into two counts, for it
10   alleged both a breach of contract, resulting from a provision in the contract requiring
      [defendant] to abide by the rules of any exchange or market where transactions are
11   executed, and an independent claim arising from the violation of the rules."). Therefore,
      we deny defendants' motion, pursuant to Rule 12(b)(6), to dismiss the claim in Count VI
12   of plaintiffs' Amended Complaint.

13   884 F. Supp. 859-860.

14          In Ferritto, v. Olde & Co., Inc. (1989) 62 Ohio App. 3d 582, the Court explained this as

15   follows:

16   Strictly speaking, the appellant may not be found negligent per se under Ohio law on a
      finding that its agent violated Rule 405 of the New York Stock Exchange ("NYSE"). See
17   Silverberg, supra. *However, this does not preclude a finding of negligence where a
      stockbroker is found to have violated the standard of due care which has been
18   incorporated into the stock exchange rule and explained by an expert witness.*
      [Emphasis added].

19
      62 Ohio App. 3d at 594.
20          The California legislature has recognized that stockbrokers who provide investment advice for

21   compensation are professionals who are liable for failing to meet the necessary standard of professional

22   care. The California Investment Advisor Act, Civil Code § 3372, provides in pertinent part as follows:

23   (a)    Any person engaged in the business of advising others for compensation as to the
      advisability of purchasing, holding or selling property for investment and who represents
24   himself or herself to be an expert with respect to investment decisions in such property,
      or any class of such property, shall be liable to any person to whom such advisory
25   services are furnished for compensation and who is damaged by reason of such person's
      reliance upon such services, for the amount of such compensation and for such damages,
26   unless the person rendering such services proves that such services were performed with
      the due care and skill reasonably to be expected of a person who is such an expert.

27   (b)    For the purposes of this section, the following apply:

28

-20-

(1) A person represents that such person is an "expert" within the meaning of this section if such person represents that he or she is a "financial planner," "financial adviser," "financial counselor," "financial consultant" or an "investment adviser," "investment counselor" or "investment consultant" or that such person renders "financial planning services," "financial advisory services," "financial counseling services," "financial consulting services" or "investment advisory services," "investment counseling services" or "investment consulting services" or makes substantially equivalent representations with respect to such person's business or qualifications.

When applied as a cause of action for malpractice against an Investment Advisor as defined in the Act, this statute shifts the burden of proof from the Plaintiff to the Defendant, who must prove that he or she used due care in making the investment recommendations.  Byrum v. Brand (1990) 219 Cal. App. 3d 926.

Negligence allegations must be *liberally construed*, with a view to substantial justice between the parties.  In Tietke v. Forrest (1993) 64 Cal.App. 364, the Court explained this rule:

The objection that a complaint does not state facts sufficient to constitute a cause of action is not waived by failure to demur, but may be raised for the first time on appeal, but the pleading will then be liberally construed, and if the necessary facts appear by implication only, or as a conclusion of law, it will be upheld. It has repeatedly been held to be the rule in this state that, while it must appear from the facts averred that the negligence caused or contributed to the injury, and that a complaint is not sufficient if no fact is stated which shows how the injury was caused, or that it was not caused through a patent defect, yet an averment of the facts constituting the negligence, in general terms, is sufficient; the more specific facts being generally more largely within the knowledge of the defendant than  that of the plaintiff. It is sufficient to call attention to the rule frequently announced by the Supreme Court that it is necessary only to  allege negligence by general averment that defendant negligently did the particular act which resulted in the damage to plaintiff.  [Citations omitted].

64 Cal.App. 364 at 366.

Plaintiffs have alleged that they retained the Defendants to provide expert financial advice in the capacity of either a brokerage house or a stockbroker and that a fiduciary relationship arose in this context. [SAC at paragraph 3 on page 2 through paragraph 8 on pages 3 and 4 and paragraph 40 on pages 27 through 28].  In the context of this relationship, the Defendants recommended that Plaintiffs purchase the Towers investment, and Plaintiffs followed this recommendation. [See SAC paragraph 39 on pages 26 through 27, paragraphs 113 and 114 on pages 49 and 50; and for BRADLEY, paragraph 12, page 6;  for KRILL, LOCKLAR and URWILLER, paragraph 32 on pages 20 and 21; for JOHNSON, paragraph 26 on page 17].  Defendants knew or should have known of many adverse facts regarding the Towers Notes which were not disclosed to plaintiffs.  Plaintiffs allege these adverse facts particularly

-21-

and in detail. These facts included the fact that the Towers Notes were sold in violation of state and federal registration and qualification laws and that the financial statements provided were fraudulent. [SAC paragraph 42 on page 28 through paragraph 104 on page 47, and paragraph 108 on page 48]. Defendants failed to disclose these facts as part of a scheme to defraud Plaintiffs. [SAC at paragraphs 135 through 141on page 58]. Plaintiffs were not aware of these adverse facts. [SAC at paragraph 113 on page 49 and paragraph 116 on page 50]. Plaintiffs would not have purchased the investments if they had known these adverse facts. [SAC paragraph 113 on page 49]. Defendants acted to further their own financial interests, with knowledge that injury would result to Plaintiffs. [SAC paragraph 111 on page 48 and paragraph 116 on page 50]. As a result, Plaintiffs suffered the loss of their funds. [SAC paragraph 117 on page 51]. Defendants used means or instruments of transportation or communication in interstate commerce or of the mails in committing the fraud. [SAC paragraph 148, page 59]. Defendants had a duty to conduct due diligence into the Towers Notes and Defendants failed to do so. [SAC paragraph 40 on page 27-28 and paragraph 100 (f) on page 43]. The Towers Notes were unsuitable for Plaintiffs and Defendants knew when they recommended the investments to Plaintiffs that they were unsuitable for Plaintiffs. [SAC paragraph 116 on pages 50-51].

In addition to the above allegations, Plaintiffs have alleged duty, breach of duty, proximate cause and injury. [SAC paragraph 175 on page 64 through paragraph 180 on page 65]. These are the elements of a cause of action for negligence. This is all that is legally required for a negligence cause of action. Johnson v. Mead (1987) 191 Cal. App. 3d 156, 160.

### III.
### CLAIMANTS ARE ENTITLED TO STATUTORY SECURITIES LAWDAMAGES AND THE "ALL DETRIMENT" STANDARD OF RECOVERY AS WELL AS PREJUDGMENT INTEREST

Claimants are seeking the maximum economic damages available to them under the law. Plaintiffs are not seeking emotional distress damages or punitive damages. However, Plaintiffs are requesting that the Court award them prejudgment interest.

Federal Section 12(2) Claim

The measures of damages under Section 12 of the 1933 Securities Act, §15 U.S.C. 77l is the recessional measure. Intel Securities Litigation (N.D. Cal. 1981) 89 Fed. Rules Dec. 104, 115. In such

a case a plaintiff may recover the difference between the value of the consideration paid and the value of the securities received, plus consequential damages that can be proven with reasonable certainty to have resulted from the fraud. The trial judge has the discretion to apply a rescission remedy which entitles a plaintiff to a return of his consideration less any value received on the investment. <u>Arrington v. Merrill Lynch, Pierce, Fenner & Smith</u> (9th Cir. 1981) 651 F.2d 615, 621. Plaintiffs have provided calculations for the Court to review showing the date and amount of their Towers Note investments, plus distributions paid by Towers Financial Corporation at the rate set forth in the promissory notes through January of 1993, when all distributions stopped. Plaintiffs have also submitted the declaration of Timothy C. Karen to the effect that the distributions from the class action and bankruptcy equal roughly a total of 10% on the dollar to date, with no substantial additional sums expected. Thus, Plaintiffs have now submitted all information needed for the Court to enter judgment in this case under Section 12(2).[4]

Section 12(2) permits this Court to award interest on the consideration rescinded. Whether interest will be awarded is a question of fairness, lying within the Court's sound discretion, to be answered by a balancing of equities. <u>Wessel v. Buhler</u> (9th Cir.1971) 437 F.2d 279, 284. In light of the fact that the defendants violated the securities laws and that the plaintiffs have been deprived of the full use of the amounts paid and Defendants have chosen not to respond to this action, plaintiffs are entitled to recover prejudgment interest. <u>Western Federal Corp. v. Davis</u> (D. Ariz. 1982) 553 F. Supp. 818. Plaintiffs suggest that the proper rate of interest is that set forth in the promissory notes sued upon. This rate is the rate that Plaintiffs would have obtained if the Towers Notes had been legitimate. The Court can award interest at the money market rate in an effort to compensate the plaintiffs for the loss of the use of their money. See <u>Johns Hopkins University v. Hutton</u> (D.C.Md.1968) 297 F.Supp. 1165, 1228, affirmed in part, reversed in part, 422 F.2d 1124 (4th Cir.1970), cert. denied, 416 U.S. 916, 94 S.Ct. 1622, 40 L.Ed.2d 118 (1974). Although other statutes prescribe a legal rate of interest, Section 12 of the Securities Act of 1933 does not and, accordingly, it has been ruled that the rate of interest imposed

---

[4] This information was not submitted earlier because counsel mistakenly believed that the defendant had the burden of showing offsetting income or dividends in such a case. Since no answer had been filed, the offset was waived. However, further research indicates that apparently Plaintiffs may carry this burden.

should "compensate fairly the defrauded purchaser for the loss of the use of his money." Id. See also Collier v. Granger(S.D.N.Y.1966) 258 F.Supp. 717. It cannot be stated that the rate which the Defendants represented would be paid is somehow unfair. Plaintiffs have furnished the Court with calculations of interest based upon a rate equal to the rates set forth in the Towers Notes, and request that the Court enter judgment at that rate on the Section 12(2) claim.

### Federal Section 10(b) Claim

The general rule allows plaintiffs defrauded in violation of Section 10(b) and rule 10b-5 to recover the difference between the value of the consideration they gave and the value of the security they received, plus consequential damages that can be proved with reasonable certainty to have resulted from the fraud. Foster v. Financial Technology Inc. (9th Cir. 1975) 517 F.2d 1068, 1071. In this case, this amount is essentially the difference between the amount paid for the Towers Notes and all of the amounts received from any source in connection with the Towers Notes. As noted above, Plaintiffs have now presented the Court with this information for each Plaintiff. Under federal law, the award of prejudgment interest on an award pursuant to Section 10(b) is within the trial court's discretion. Commercial Union Assurance Co. v. Milken (2d Cir.1994) 17 F.3d 608, 614. The measure of interest rates prescribed for post-judgment interest is also appropriate for fixing the rate for pre-judgment interest in cases such as this, where pre-judgment interest may be awarded, unless the trial judge finds, on substantial evidence, that the equities of the particular case require a different rate. See, Western Pacific v. S.S. President Grant (Ninth Cir. 1984) 730 F.2d 1280, *1289 and SEC v. Cross Financial (C.D. Cal. 1995) 908 F.Supp. 718, *734. Under California law, the post judgment rate of interest is 10%. Cal. Civ. Code §685.010. Plaintiffs request that if the Court fails to award interest at the rate of the promissory notes under Section 12(2), it award interest at the rate of 10% under Section 10(b). Plaintiffs have provided the calculations for this alternative rate of interest.

### State Securities Law Claims

Claimants have alleged statutory securities fraud. Under Corporations Code §25501, a claimant who still owns a fraudulently sold security may rescind the transaction and recover "the consideration paid for the security, plus interest at the legal rate, less the amount of any income received on the security..." A claimant who has sold the security may recover "an amount equal to the difference

1   between (a) the price at which the security was bought plus interest at the legal rate from the date of

2   purchase and (b) the value of the security at the time it was disposed of by the plaintiff plus the amount

3   of any income received on the security by the plaintiff.   The amount created by this formulation is

4   essentially the same as the federal recessional amount discussed for Plaintiffs claims under Section 12(2)

5   and Section 10(b), above.  However, the rate of prejudgment interest permitted under California law is

6   limited to 7%.  Lund v. Albrecht (Ninth Cir. 1991) 936 F.2d 459, 465.  Plaintiffs have provided these

7   calculations in the alternative.

8           State Common Law Claims

9           In Twomey v. Mitchum, Jones & Templeton (1969) 262 Cal. App. 2d 690, the Court found that

10  acts of fraud and breach of fiduciary duty through the recommendation of unsuitable securities by a

11  stockbroker gives rise to an action for damages measured by the "all detriment suffered" standard set

12  forth in California Civil Code § 3333. This is also the standard measure in a negligence case.  Plaintiffs

13  have limited their damage claim to their economic losses, an of this, simply the difference between what

14  they invested in Towers Notes, minus what they received back.  In other words, the measure which has

15  been discussed above.  Plaintiffs are also asking the Court to award them interest at the legal rate.

16  California Civil Code §§ 3287 and 3288 authorize awards of pre-judgment interest for common law

17  claims.  Section 3288 provides: "In an action for the breach of an obligation not arising from contract

18  ... interest may be given, in the discretion of the jury." California also grants this right to the trial judge.

19  Unies v. Kroll (Ninth Cir. 1992) 957 F.2d 707, 714. Civil Code §3287(a)  provides a separate basis for

20  interest on damages, and provides:

21          (a) Every person who is entitled to recover damages certain, or capable of being made
            certain by calculation, and the right to recover which is vested in him upon a particular
22          day, is entitled also to recover interest thereon from that day, except during such time as
            the debtor is prevented by law, or by the act of the creditor from paying the debt.  This
23          section is applicable to recovery of damages and interest from any such debtor, including
            the state or any county, city, city and county, municipal corporation, public district, public
24          agency, or any political subdivision of the state.

25          If the Court declines to award interest under the Federal and State securities laws, Plaintiffs are

26  requesting in the alternative that the Court award interest under the Civil Code Sections quoted above.

27  Interest under these sections accrues from the time the plaintiff parted with the money or property on the

28  basis of the defendant's fraud. Michelson v. Hamada (1994) 29 Cal.App.4th 1566, 1588, Rev. denied,

Jan. 19, 1995; <u>Nordahl v. Department of Real Estate</u> (1975) 48 Cal.App.3d 657, 665. Plaintiffs request under these authorities that the Court award Plaintiffs an amount equal to the face amount of their investments, plus interest at the rate of 7% from the date of their investments.

## V.
## <u>CONCLUSION</u>

As has been shown above, Plaintiffs have met their pleading burden to establish the liability of the Defendants in this case under the rule that in a default prove up, all well pleaded allegations must be accepted as true, except those dealing with damages. Plaintiffs have offered their own declarations to prove up damages and have attempted to clarify and explain their request for prejudgment interest. In light of the above, Plaintiffs respectfully request that the Court enter judgment in the amounts requested, plus interest at the rate the Court in its discretion deems appropriate to fairly compensate Plaintiffs.

Dated: 6/7/99                    By: _____
                                      Timothy C. Karen, Attorney for Plaintiffs